Steve W. Berman (*pro hac vice*)
  steve@hbsslaw.com
Thomas E. Loeser (SBN 202724)
  toml@hbsslaw.com
Jessica Thompson (*pro hac vice*)
  jessicat@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Interim Lead Counsel for Plaintiffs
and the Proposed Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BARRY BRAVERMAN, JOEL GREEN, CHEVAY JONES, DR. GLYNDA ROBERSON, EDO TSOAR, PETER BERNARD, LAWRENCE CURCIO, ROBERT DESATNIK, JOHN LINGSWEILER, THOMAS MUNK, CHARLES OLSEN, NAVEEN PARMESHWAR, BRANDON REDMOND, STEVE RIDGES, ADEEL SIDDIQUI, PETER WEINSTEIN, and ERIC WONDERLY,<br><br>                    Plaintiffs,<br><br>        v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company, and BMW AG, a corporation organized under the laws of Germany,<br><br>                    Defendants. | No. 8:16-cv-00966-BRO-SS<br><br>Hon. Beverly Reid O'Connell<br><br>**PLAINTIFFS' OPPOSITION TO BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:    February 6, 2017<br>Time:    1:30 p.m.<br>Place:   Courtroom 7C |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................... 1

II.  ARGUMENT ................................................................................ 4

    A.   Standard of Review ............................................................... 4

    B.   Plaintiffs Sufficiently Allege Article III Standing ................... 5

        1.   BMW's false statements deprived Plaintiffs of the benefit of their bargain .................................................. 5

        2.   BMW's conduct presents an ongoing threat to consumers, conferring standing to pursue injunctive relief. ......................................................... 9

    C.   Plaintiffs Satisfy Rule 9(b) Pleading Requirements ............... 10

    D.   Plaintiffs Properly Plead Express Warranty Claims ............... 11

        1.   Plaintiffs properly plead express warranty claims arising from representations made by BMW to consumers. .................................................................. 11

        2.   Plaintiffs properly plead express warranty claims arising from the new vehicle limited warranty. .............. 13

    E.   Plaintiffs Properly Plead Implied Warranty Claims ............... 14

        1.   Georgia, Florida, Illinois, and Ohio Plaintiffs have sufficient direct contacts with BMW to establish privity. ........................................................................ 14

            a.   Georgia Plaintiff sufficiently alleges privity. ............... 15

            b.   Florida Plaintiff sufficiently alleges privity. ............... 16

            c.   Illinois Plaintiff sufficiently alleges privity. ............... 16

            d.   Ohio Plaintiff sufficiently alleges privity. ............... 16

        2.   California, Florida, Ohio, Utah, and Washington Plaintiffs may bring implied-warranty-of-merchantability claims even if they lack privity with BMW. ................................................................. 17

            a.   California Plaintiffs may bring implied-warranty-of-merchantability claims even if they lack privity with BMW .............................. 17

            b.   Florida Plaintiff adequately alleges that he is an intended third-party beneficiary. ................... 19

c.    Ohio Plaintiff is an intended third-party beneficiary of the warranty between the dealership and BMW. ........................................ 20

d.    Utah Plaintiff is an intended third-party beneficiary of the warranty between the dealership and BMW. ........................................ 21

e.    Washington Plaintiff is an intended third-party beneficiary of the warranty between the dealership and BMW. ................................. 21

F.    Plaintiffs Adequately Plead Magnuson-Moss Claims ........................... 22

G.    Plaintiffs Adequately Plead Unjust Enrichment .................................... 22

H.    California Exemplary Damages are Warranted Because of Defendants' Malicious and Fraudulent Conduct ............................... 24

III.    CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
    390 F. Supp. 2d 1170 (M.D. Fla. 2005) ................................................................. 23

*Annunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005).................................................................. 17

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011).................................................................. 23

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ................................................................................. 10

*Arndell v. Robison, Belaustegui, Sharp & Low*,
    2012 U.S. Dist. LEXIS 126570 (D. Nev. Sept. 6, 2012) ....................................... 25

*Arnold v. Dow Chemical Co.*,
    91 Cal. App. 4th 698 (2001) .................................................................................. 18

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ................................................................................. 22

*Barakezyan v. BMW of N. Am., LLC*,
    2016 U.S. Dist. LEXIS 68839 (C.D. Cal. Apr. 7, 2016).......................................... 8

*Baxter v. Intelius, Inc.*,
    2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ........................................................ 4

*BK Trucking Co. v. PACCAR, Inc.*,
    2016 U.S. Dist. LEXIS 85149 (D.N.J. June 30, 2016) ........................................... 11

*Bobb Forest Prods. v. Morbark Indus.*,
    783 N.E.2d 560 (Ohio Ct. App. 2002) ................................................................... 20

*Carriuolo v. General Motors Co.*,
    823 F.3d 977 (11th Cir. 2016)................................................................................... 7

*Cartwright v. Viking Indus., Inc.*,
    249 F.R.D. 351 (E.D. Cal. 2008)............................................................................ 18

*Cedars of Lebanon Hospital Corp. v. European X-Ray Distribs., Inc.*,
    444 So. 2d 1068 (Fla. Dist. Ct. App. 1984) ........................................ 15, 16

*Cerdant, Inc. v. DHL Express (USA), Inc.*,
    2009 WL 723149 (S.D. Ohio Mar. 30, 2009) .................................... 24

*Chaffin v. Atlanta Coca Cola Bottling Co.*,
    194 S.E.2d 513 (Ga. Ct. App. 1972) ...................................................... 15

*Chapman v. Pier 1 Imps. (U.S.), Inc.*,
    631 F.3d 939 (9th Cir. 2011) ................................................................ 9

*Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*,
    2011 U.S. Dist. LEXIS 41378 (N.D. Ohio Apr. 6, 2011) ...................... 20

*Chrysler Corp. v. Wilson Plumbing Co.*,
    208 S.E.2d 321 (Ga. Ct. App. 1974) ................................................ 14, 15

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................ 9

*Clark v. Baca*,
    2008 WL 5114953 (C.D. Cal. Dec. 1, 2008)........................................ 4

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ............................................................ 19

*Coal. for a Sustainable Delta v. FEMA*,
    711 F. Supp. 2d 1152 (E.D. Cal. 2010) ................................................ 4

*Coghlan v. Wellcraft Marine Corp.*,
    240 F.3d 449 (5th Cir. 2001) ................................................................ 7

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints
    v. Cavanaugh*,
    217 Cal. App. 2d 492 (1963) ................................................................ 11

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ............................................................ 13

*Danvers Motor Co. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005) ................................................................ 7

- iv -

*DigaComm, LLC v. Vehicle Safety & Compliance, LLC,*
    2009 WL 509736 (N.D. Ill. Mar. 2, 2009) .............................................................. 24

*In re Gerber Probiotic Sales Practices Litig.,*
    2013 WL 4517994 (D.N.J. Aug 23, 2013) ............................................................. 7

*Gilbert Fin. Corp. v. Steelform Contracting Co.,*
    82 Cal. App. 3d 65 (1978) ...................................................................................... 18

*Gladstone, Realtors v. Bellwood,*
    441 U.S. 91 (1979) ................................................................................................... 7

*Ham v. Hain Celestial Grp., Inc.,*
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................... 10

*Harris Grp. v. Robinson,*
    209 P.3d 1188 (Colo. App. 2009) ........................................................................... 23

*Harris v. Las Vegas Sands L.L.C.,*
    2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) ....................................................... 9

*Henderson v. Gruma Corp.,*
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ....................................................... 9

*Hinojos v. Kohl's Corp.,*
    718 F.3d 1098 (9th Cir. 2013) ............................................................................. 6, 7

*Kadiak Fisheries Co. v. Murphy Diesel Co.,*
    422 P.2d 496 (Wash. 1967) .................................................................................... 22

*In Re Katz Interactive Call Processing Patent Litig.,*
    2009 U.S. Dist. LEXIS 132099 (C.D. Cal. Oct. 26, 2009) .................................. 10

*Kwikset Corp. v. Superior Ct.,*
    51 Cal. 4th 310 (2011) .................................................................................... 6, 7, 9

*Law v. Bioheart, Inc.,*
    2009 WL 693149 (W.D. Tenn. Mar. 13, 2009) ..................................................... 24

*Lee v. Toyota Motor Sales, U.S.A., Inc.,*
    992 F. Supp. 2d 962 (C.D. Cal. 2014) .................................................................... 8

*Lozano v. AT&T Wireless Servs.,*
    504 F.3d 718 (9th Cir. 2007) ................................................................................... 7

PLAINTIFFS' OPPOSITION TO BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

010616-11  921692 V1

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................... 5

*Maloney v. Indymac Mortg. Servs.*,
  2014 WL 6453777 (C.D. Cal. Nov. 17, 2014) ....................................... 23

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .............................................................. 7

*McGlashan v. Snowden*,
  738 S.E.2d 619 (2013) ........................................................................ 24

*Mickens v. Ford Motor Co.*,
  900 F. Supp. 2d 427 (D.N.J. 2012) ....................................................... 9

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
  79 F. Supp. 2d 494 (D.N.J. 1999) ....................................................... 11

*Ockey v. Lehmer*,
  189 P.3d 51 (Utah 2008) ...................................................................... 23

*Pacheco v. Boar's Head Provisions Co.*,
  2010 WL 1323785 (W.D. Mich. Mar. 30, 2010) ................................... 24

*Peel v. BrooksAmerica Mortg. Corp.*,
  788 F. Supp. 2d 1149 (C.D. Cal. 2011) ................................................ 11

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2410 (2016) .......... 6

*Rahman v. Mott's LLP*,
  2014 U.S. Dist. LEXIS 11767 (N.D. Cal. Jan. 29, 2014) ...................... 10

*Rhynes v. Stryker Corp.*,
  2011 WL 2149095 (N.D. Cal. May 31, 2011) ....................................... 23

*Risner v. Regal Marine Indus.*,
  2013 U.S. Dist. LEXIS 58690 (S.D. Ohio Apr. 24, 2013) ............ 15, 16, 20

*Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*,
  2007 WL 1264008 (Mich. Ct. App. May 1, 2007) ................................. 24

010616-11  921692 V1

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir.
   2010) ............................................................................................................. 9

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .................................................................... 4

*Sanchez-Knutson v. Ford Motor Co.*,
   52 F. Supp. 3d 1223 (S.D. Fla. 2014) ................................................. 19, 20

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
   655 N.E.2d 1065 (Ill. App. Ct. Sept. 6, 1995)......................................... 24

*Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*,
   991 P.2d 1126 (Wash. 2000) .................................................................... 23

*Shoop v. DaimlerChrysler Corp.*,
   864 N.E.2d 785 (Ill. App. Ct. 2007) .................................................. 14, 16

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ....................................................... 7

*In re Sony VAIO Computer Notebook Trackpad Litig.*,
   2010 U.S. Dist. LEXIS 115142 (S.D. Cal. Oct. 28, 2010).................... 18

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)............................................................................... 5

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .................................................................. 6

*Stembridge v. Nat'l Feeds, Inc.*,
   2013 U.S. Dist. LEXIS 136789 (D. Utah 2013)...................................... 21

*Touchet Valley Grain Growers v. Opp & Seibold Gen. Constr.*,
   831 P.2d 724 (Wash. 1992) ...................................................................... 21

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011)................................................ 5, 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
   Practices, & Prods. Liab. Litig. ("Toyota Unintended
   Acceleration MDL")*,
   54 F. Supp. 2d 1145 (C.D. Cal. 2010)................................. 18, 19, 20, 23

010616-11  921692 V1

*Trazo v. Nestlé USA, Inc.*,
    113 F. Supp. 3d 1047 (N.D. Cal. 2015) ........................................................ 23

*Tsonev v. Kia Motors America, Inc.*,
    No. 16-cv-01020-CJC (C.D. Cal. Nov. 9, 2016) ........................................ 13

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ...................................................................... 4

### STATUTES

Cal. Com. Code § 2314 .......................................................................... 17, 18

Cal. Civ. Code § 3294 .................................................................................. 25

Ga. Code Ann. § 109A-2 .............................................................................. 15

Utah Code Ann. § 70A-2-104(1) .................................................................. 21

Utah Code Ann. § 70A-2-318 ...................................................................... 21

### OTHER AUTHORITIES

Fed. R. Civ. P. 8(d)(2). ............................................................................... 22

## I.     INTRODUCTION

Recognizing the importance of range in its messaging to consumers, and recognizing its inability to develop battery technology to meet its customers' needs, BMW developed an i3 electric car that uses an optional "Range Extender" ("REx") engine. ¶¶ 13-19.[1] Rather than marketing this engine as an emergency-only "limp home" feature, BMW broadly boasted about the performance of the i3 coupled with the Range Extender, claiming that it can "double" the range beyond the purely electric BMW i3. ¶¶ 2, 29-30, 32. And for this doubled range, BMW i3 customers paid a premium of close to $4,000. But these representations are deceptive, incomplete, and false. Based on the real-world driving experiences of Plaintiffs and other BMW i3 REx owners, the Complaint alleges that as soon as the Range Extender is activated, the vehicle suddenly drops to an unsafe speed resulting from a sudden, severe, and dangerous loss in power. ¶¶ 5-7, 33-40. The result is that these so-called range extended vehicles cannot safely reach the promised "double" range, or even safely take the driver beyond the purely electric range as advertised. The BMW i3 REx is simply not the extended-range vehicle that BMW promised. And as a result, consumers purchasing these vehicles have suffered economic loss. Now, instead of fixing the defect or offering to compensate consumers who paid extra for a useless and unsafe feature, BMW moves to dismiss.

BMW's arguments in support of dismissal fail for the following reasons:[2]

***Plaintiffs have Article III standing***. Plaintiffs plausibly allege that BMW's misrepresentations and omissions have caused Plaintiffs an injury in fact that is fairly traceable to BMW's unlawful conduct and likely to be redressed by a favorable judicial decision. Plaintiffs plead a concrete and particularized injury in the form of economic loss arising from overpayment and diminished value due to a safety defect,

---

[1] Unless otherwise indicated, all "¶" references are to paragraphs in the Consolidated Class Action Complaint (Dkt. No. 37) ("Complaint").

[2] Plaintiffs do not oppose dismissal of their common law breach of contract claims.

which courts recognize are recoverable to remedy false, deceptive, and misleading conduct. Plaintiffs here were promised extended-range vehicles, but were delivered vehicles equipped with ineffective and unsafe "range extenders." As a result, Plaintiffs did not receive what they were promised, and have Article III standing to pursue their claims. *See* Section II(B)(1). Moreover, because Plaintiffs allege an ongoing safety concern unremedied by BMW, Plaintiffs have also plausibly alleged standing to request injunctive relief. *See* Section II(B)(2).

***Plaintiffs satisfy 9(b)***. Courts recognize that defendants are on notice of their particular conduct under Rule 9(b) when common allegations are made against all of the defendants, and when these allegations are coupled with some separate paragraphs making more specific allegations about each defendant. Plaintiffs specifically plead separate paragraphs alleging the conduct by each Defendant at issue, coupled with common allegations against both BMW AG and BMW of North America, LLC ("BMW NA"). This is sufficient to put Defendants here on notice of the particular conduct alleged. Indeed, Defendants themselves are in a unique position to parse their particular conduct as they are not diverse entities—they are parent and wholly-owned subsidiary—and discovery has not yet begun. Plaintiffs therefore satisfy Rule 9(b)'s requirement to put Defendants on notice of their conduct. *See* Section II(C).

***Plaintiffs properly plead express warranty claims***. A manufacturer can create an express warranty with a consumer by making any affirmation of fact or any promise relating to the goods. Plaintiffs allege that BMW promised vehicles that extend the range of the BMW i3 by activating the Range Extender, but that instead Plaintiffs received defective vehicles that cannot safely reach the promised range, and at least sometimes cannot safely exceed the purely-electric range at all. *See* Section II(D)(1). Plaintiffs further plausibly allege that the New Vehicle Limited Warranty is not, as BMW contends, limited to materials and workmanship. *See* Section II(D)(2). Plaintiffs have therefore properly pled express warranty claims arising from both BMW's representations as well as its New Vehicle Limited Warranty.

- 2 -

***Plaintiffs properly allege privity and exceptions thereto in support of implied warranty claims***. In Georgia, Florida, Illinois, and Ohio, an exception to the privity requirement for Breach of Implied Warranty lies where Plaintiffs can allege that they have direct contacts with a manufacturer. In these states, Plaintiffs allege that they reviewed and relied on statements made directly by BMW in purchasing or leasing their vehicles, and that BMW issues an express warranty to purchasers of new vehicles. *See* Section II(E)(1).

In California, Florida, Ohio, and Utah, an exception to the privity requirement for Breach of Implied Warranty lies where Plaintiffs can allege that they are intended third-party beneficiaries of the sale from BMW to its dealerships. The Plaintiffs from these states allege that they are intended third-party beneficiaries of the contracts between BMW and its dealers, and specifically of BMW's implied warranties. Dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles. The warranties are therefore designed for and intended to benefit consumers only. *See* Section II(E)(2).

***Plaintiffs' Magnuson-Moss claims survive***. Plaintiffs' Magnuson-Moss claims rise and fall with their warranty claims. Plaintiffs' warranty claims survive, and, therefore, so do their Magnuson-Moss claims. *See* Section II(F).

***Plaintiffs may plead unjust enrichment claims in the alternative***. Fed. R. Civ. P. 8 permits Plaintiffs to plead unjust enrichment claims in the alternative. None of BMW's cases applying Rule 8 dismiss these claims at the pleadings stage. Those cases that do dismiss unjust enrichment claims at the pleadings stage rely on state-level civil procedure rules, not on the Federal Rules of Civil Procedure.

***Plaintiffs properly plead exemplary damages***. BMW takes issue not with the substance but with the formatting of Plaintiffs' exemplary damages allegations under Cal. Civ. Code § 3294. It is of no moment to Plaintiffs whether these allegations exist in a separate section or are incorporated in Plaintiffs' respective prayers for relief. If

- 3 -

granted leave to amend, Plaintiffs will format these allegations any way the Court prefers.

## II.    ARGUMENT

### A.    Standard of Review

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Coal. for a Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152, 1158 (E.D. Cal. 2010). By contrast, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Id.* BMW's attack on the Complaint is a facial one such that Plaintiffs' allegations are presumed true. *See White*, 227 F.3d at 1242.

A motion to dismiss under Rule 12(b)(6) "must be considered in light of the liberal pleading standard of Rule 8(a)(2), which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Clark v. Baca*, 2008 WL 5114953, at *2 (C.D. Cal. Dec. 1, 2008) (Guilford, J.) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "[T]he statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* "Determination of the sufficiency of a claim must be made 'on the assumption that *all allegations in the complaint are true* (even if doubtful in fact).'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 589 (2007)) (emphasis added). The complaint is to be "constru[ed] … in the light most favorable to the plaintiff." *Baxter v. Intelius, Inc.*,

2010 WL 3791487, at *2 (C.D. Cal. Sept. 16, 2010) (Guilford, J.) (citing *Pollard v. GEO Grp., Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010)).

## B.    Plaintiffs Sufficiently Allege Article III Standing

BMW argues that Plaintiffs have not alleged an injury-in-fact sufficient to satisfy Article III. Br. at 1. At the pleadings stage, courts presume that general allegations embrace those specific facts that are necessary to support the claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Injury in fact requires that the plaintiff suffered "an invasion of a legally protected interest" that is "concrete and particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). "A concrete injury must be de facto; that is, it must actually exist." *Id.* (citation and quotation marks omitted). Risk of real harm can "satisfy the requirement of concreteness," and "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.* at 1549. Plaintiffs satisfy these standards and have standing to pursue their claims.

Plaintiffs satisfy the injury-in-fact test because they have suffered actual and personal injury as a result of BMW's conduct. These allegations satisfy the injury-in-fact requirement in two distinct ways: (1) economic loss, including lost benefit-of-the-bargain, loss of usefulness, and diminished value; and (2) injunctive relief.

### 1.    BMW's false statements deprived Plaintiffs of the benefit of their bargain.

Both purchaser and lessee Plaintiffs bargained for safe, defect-free vehicles, but instead received unsafe, defective vehicles. The overpayment for the defective, unsafe vehicle constitutes an economic-loss injury that is sufficient to confer standing. *See In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1167 (C.D. Cal. 2011). Here, Plaintiffs allege throughout the Complaint that BMW charges a premium for BMW i3 vehicles

- 5 -

equipped with the optional Range Extender.[3] *See, e.g.*, ¶¶ 4, 12, 49. And contrary to BMW's assertion that no Plaintiffs allege that they paid this premium, the Complaint is replete with allegations that Plaintiffs and Class members—purchasers and lessees both—overpaid for the defective feature. *See, e.g.*, ¶¶ 12, 50, 56, 131, 144, 157, 225, 297, 369, 441, 513, 580, 652, 727, 799, 874. BMW cannot make these allegations go away simply by ignoring them. This is classic economic injury for overpayment that is recoverable to remedy false, deceptive, and misleading representations. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013). In the words of the Ninth Circuit, "[t]here is no difficulty" regarding Article III injury where the plaintiffs "contend that class members paid more for [a product] than they otherwise would have paid." *Id.* at 1104 n.3 (citation omitted).

Plaintiffs may also allege economic injury by alleging that they would not have purchased the vehicle but for the fraudulent representations. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (2011). In *Kwikset*, the plaintiffs alleged that "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." *Id.* at 327-28. The court found that plaintiffs had standing, observing that there were "innumerable ways in which economic injury from unfair competition may be shown," including paying more in a transaction than otherwise would have been paid but for the misrepresentation. *Id.* at 323; *see also id.* at 312, 317. The court also found that plaintiffs sufficiently alleged both injury and causation by pleading that they would not have purchased a product but for the misrepresentation. *Id.* at 330.[4]

---

[3] Contrary to BMW's assertions in its brief, Br. at 9, the premium is not limited to purchasers of the vehicle. The approximate $4,000 paid is merely one example of a premium charged for the REx feature. This example enhances the plausibility of allegations that both purchasers and lessees overpaid for their vehicles.

[4] *See also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (restitution focuses on the difference between what was paid and what a reasonable consumer would have paid at the time of the purchase had the fraudulent or omitted information been known), *cert. denied*, 136 S. Ct. 2410 (2016); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013,

Likewise, both purchaser and lessee Plaintiffs here allege that they would not have purchased or leased their "Range Extender" vehicles or would have paid less had they known the truth behind BMW's misrepresentations and omissions. ¶¶ 63, 131, 144, 157, 225, 297, 369, 441, 513, 580, 652, 727, 799, 874. Plaintiffs therefore plausibly allege an injury-in-fact.

And many other courts outside the Ninth Circuit agree with *Hinojos* and *Kwikset*, recognizing that economic loss damages are recoverable for overpayment and confer standing in a wide variety of circumstances involving misrepresentations and omissions. *See, e.g.*, *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 115 (1979) (decline in economic value of home "as a result of the conduct of another certainly is sufficient under Art. III to allow standing to contest the legality of that conduct"); *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291, 294 (3d Cir. 2005) (noting that "[i]njury-in-fact is not Mount Everest" and that economic harm in the form of damages is a "paradigmatic" form of injury in fact and will generally support standing unless such a theory is "totally fanciful"); *In re Gerber Probiotic Sales Practices Litig.*, 2013 WL 4517994, at *5 (D.N.J. Aug 23, 2013) (holding that the plaintiffs "sufficiently allege[d] an actual injury which is concrete and particularized" based on a "claim that they paid a premium for the [p]roducts at issue based on false, deceptive, and misleading representations").[5]

---

1021 n.13 (9th Cir. 2011) (there is a "conclusive presumption" of injury under the California UCL; "when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury"). Other district courts in the Ninth Circuit have also held that economic loss based on false advertising is compensable fraud. *Maya v. Centex Corp.*, 658 F.3d 1060, 1069-71 (9th Cir. 2011) (overpayment caused by a wrongful conduct is "a quintessential injury-in-fact"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 733 (9th Cir. 2007) (injury in fact under UCL and FAL satisfied where the plaintiff alleged that "as a result of the inadequacies of the disclosures, he did not receive the full benefit of his contract"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 987-88 (S.D. Cal. 2014) (denying motion to dismiss UCL, FAL, and CLRA claims for lack of standing and explaining that *Kwikset*'s "reasoning holds true whether the plaintiff's claim is based on affirmative misrepresentations or omissions").

[5] *See also Carriuolo v. General Motors Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016) (the false or omitted statement allows the seller "to command a price premium and to overcharge customers systematically"); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452-53 (5th Cir. 2001) (benefit of the bargain damages recoverable where plaintiffs were promised an all

- 7 -

BMW's cases are inapposite. In *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014), the Court held that "Plaintiffs have not alleged an actual economic injury because they have not had any negative experience with the [pre-collision braking feature] and have not identified any false representations about the automatic pre-collision braking feature made by Toyota." And in *Barakezyan v. BMW of N. Am., LLC*, 2016 U.S. Dist. LEXIS 68839, at *13 (C.D. Cal. Apr. 7, 2016), the plaintiff similarly did not allege that the subject vehicle failed to perform as advertised, or that that BMW made false representations about the noise of the carbon ceramic brakes. To the contrary, Plaintiffs here have plausibly alleged both experience with the defect (¶¶ 7, 36, 62, 63) ***and*** false representations about the REx feature (¶¶ 1-5, 19-40, 42-57, 60-76).

And *In Re Toyota Motor Corp.* offers no help to BMW—indeed in that case, as here, the plaintiffs satisfied Article III by alleging that they would have made a different purchasing decision but for Toyota's misrepresentations. *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1168. *In Re Toyota Motor Corp.* goes on to explain that once the safety defect is sufficiently and plausibly pled by all plaintiffs, the economic losses resulting from the defect are readily established—"defective cars are simply not worth as much." *Id.* at 1163. As in *In Re Toyota Motor Corp.*, Plaintiffs here have plausibly alleged a safety defect, citing not only their own near-miss experiences while driving, but also numerous complaints from the NHTSA database describing unintended—and unexpected—deceleration on high-speed roads with no safe place to stop or pull over. *See, e.g.*, ¶¶ 7, 36, 38-40.

And Defendant's argument that lessees cannot allege diminished value ignores the effect that diminished value has on lessees. BMW asserts, without citation to the Complaint, that "[w]hen the lease expires, the vehicles will be returned to BMW." Br.

---

fiberglass boat but received a hybrid wood-fiberglass boat; measure of damage is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered") (citation omitted).

at 10. Not only is this assertion unsupported by any allegation in the Complaint, it is factually incorrect. Lease payments are in part calculated by the estimated residual vehicle value. *See* ¶ 53. As Plaintiffs allege, the diminished vehicle value under these circumstances puts the leaseholder underwater, and therefore still impact Plaintiffs' economic losses. *Id.* And even if the Court credits BMW's baseless speculation that lessees will return their vehicles, lessee Plaintiffs nevertheless allege that they would not have leased the vehicles or would have paid less for them but for BMW's deception. This allegation alone satisfies the multitude of cases analyzing economic loss as an injury-in-fact for Article III standing.

### 2. BMW's conduct presents an ongoing threat to consumers, conferring standing to pursue injunctive relief.

Plaintiffs also have standing to pursue injunctive relief on behalf of consumers in the proposed class, since Plaintiffs allege that they were injured and that BMW's conduct continues to threaten consumers. *See Henderson v. Gruma Corp.*, 2011 WL 1362188, at *2-3 (C.D. Cal. Apr. 11, 2011); *see also Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at *3-4 (C.D. Cal. Aug. 16, 2013). To have standing to obtain injunctive relief, a plaintiff must allege that a "real or immediate threat" exists that he will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("[T]o establish standing to pursue injunctive relief, … [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future.").

Here, in addition to Plaintiffs' actual economic injuries, the Complaint details Plaintiffs' "near-miss" experiences and, more broadly, describes the dangerous consequences resulting from the defect. *See, e.g.*, ¶¶ 7, 36, 38-40.[6] The injunctive relief sought here includes a "free replacement program" and "buyback of the

---

[6] Because Plaintiffs have sufficiently alleged injury-in-fact for Article III standing, they also have standing under the various state consumer protection laws. *See, e.g.*, *Kwikset Corp.*, 51 Cal. 4th at 324; *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 304 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 446 (D.N.J. 2012).

Affected Vehicles," not merely an injunction against future sales. ¶¶ C & D of Prayer for Relief. Plaintiffs thus adequately allege an ongoing harm—threat to their safety—redressable by an injunction to replace or buy back the vehicles. These allegations satisfy Article III's requirement that Plaintiffs are realistically threatened by the continuation of BMW's fraudulent contact (its failure to replace or buy back the vehicles).

Whereas in *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001), the plaintiff had not sufficiently alleged an ongoing threat to his safety redressable by injunctive relief, Plaintiffs have done so here. And none of BMW's remaining cases address an *ongoing* product safety issue that threatens the safety of current owners as well as future purchasers. *See Rahman v. Mott's LLP*, 2014 U.S. Dist. LEXIS 11767, at *2 (N.D. Cal. Jan. 29, 2014) ('No Sugar Added' labeling); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014) ('All Natural' labeling).

**C.     Plaintiffs Satisfy Rule 9(b) Pleading Requirements**

In a footnote, BMW argues that Plaintiffs' claims fail because the Complaint does not differentiate between the Defendants. Br. at 3-4 n.2. Though it is well-settled that a footnote is not the place for substantive arguments, *In Re Katz Interactive Call Processing Patent Litig.*, 2009 U.S. Dist. LEXIS 132099, at *131 (C.D. Cal. Oct. 26, 2009), Plaintiffs will address BMW's argument as though it were properly raised. Plaintiffs took great care in drafting the Complaint and identifying the involved entities. Each of the BMW defendants acted toward one unified goal: selling the BMW i3 REx vehicles. BMW AG was the master: it "controls and communicates with BMW of North America, LLC concerning virtually all aspects of the Affected Vehicles distributed in the United States" (¶ 81), and supplies the vehicles and controls its marketing and distribution through its U.S. subsidiary, BMW of North America, LLC, which sold them to Plaintiffs (¶ 80).

While the Complaint contains paragraphs directed at each individual Defendant, because it is impossible to differentiate between that which cannot be separated,

Plaintiffs' use of "BMW" to commonly refer to both entities engaging in the **same misconduct** is proper throughout the Complaint. *See Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1160 (C.D. Cal. 2011) (Rule 9(b) satisfied where general common allegations were made against all of the defendants, coupled with some separate paragraphs making more specific allegations about each); *BK Trucking Co. v. PACCAR, Inc.*, 2016 U.S. Dist. LEXIS 85149, at *19 (D.N.J. June 30, 2016) (naming defendants together in one action permitted when repair of specific component systems "is uniquely within Defendants' control. The Court cannot expect Plaintiffs to provide more specificity about the ATS without the benefit of discovery.").

The relationship between BMW AG and BMW NA is not complicated, nor is it a relationship of strangers. Unlike BMW's cases (*see* Br. at 3-4 n.2), this is not a case in which multiple, competing defendants across an industry are lumped together in one sweeping complaint—Plaintiffs here do not seek to impute knowledge or concert of action from other, competing automakers. *See, e.g.*, *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (eight different defendants that plaintiff pled together generally as "defendants").

**D.  Plaintiffs Properly Plead Express Warranty Claims**

**1.  Plaintiffs properly plead express warranty claims arising from representations made by BMW to consumers.**

As BMW correctly recognizes, no particular words are necessary to create a warranty. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Cavanaugh*, 217 Cal. App. 2d 492, 512 (1963). Any affirmation of fact or any promise relating to the goods is an express warranty "if the natural tendency of such affirmation or promise is to induce the person to whom it is addressed to act in reliance thereon and that person does so act." *Id.* Plaintiffs allege that BMW makes two such representations: (1) that the Range extender doubles the range of the purely electric vehicles, and (2) that once activated, the Range Extender maintains the battery's state of charge so that the vehicle can operate purely electrically.

- 11 -

Though BMW correctly contends that such an express warranty may be created by its representations to consumers, it mischaracterizes the nature of Plaintiffs' claims and of this lawsuit, claiming that this lawsuit is "not about the vehicles' range." Br. at 13. BMW is mistaken. As demonstrated in the chart below, Plaintiffs purchased these vehicles with the belief—engendered by BMW—that their vehicle's range would double if they purchased the optional REx feature, and that their batteries would maintain a consistent charge when the REx engine activates. But Plaintiffs cannot safely reach the promised range because as soon as the REx engine is activated, the i3 suddenly and dangerously slows:

| BMW Promises: | Drivers experience: |
|---|---|
| REx extends the range from approximately 81 miles per charge to 150 miles per charge. ¶ 30.<br><br>REx "will essentially allow you to double the range of the EV." ¶ 29.<br><br>Range in everyday driving for BMW i3 with REx is between 130 and 140 miles farther than the BMW i3 without the optional REx ¶ 32. | Rather than a safe, reliable range-extended electric vehicle that can maintain battery charge and carry drivers/passengers to their destinations with "plenty of energy left," BMW delivered a vehicle that essentially becomes a golf cart once the REx is activated, suddenly and terrifyingly decelerating in the middle of fast-moving traffic. ¶ 5.<br><br>As soon as the REx is activated, the vehicle enters a dangerous "limp mode," where the vehicle cannot maintain the speed and performance consistent with normal and safe operation. ¶¶ 33-34.<br><br>Plaintiffs do not want to own cars that enter "limp mode" and *cannot safely reach their destination*. ¶ 57. |
| On its website, BMW describes the REx as a two cylinder gas engine that powers a generator, which in turn keeps the battery at a constant level so that the i3 can continue to drive purely electrically. ¶ 3.<br><br>The REx, when activated, "maintains the charge level of the high-voltage battery at a constant level." ¶ 31. | When the REx is activated, the charge level of the battery can drop well below 6.5%—sometimes as low as 1% or 2%. ¶ 33. |

- 12 -

Plaintiffs thus allege that they contracted for safe vehicles that extend the range of the BMW i3 by activating the Range Extender, and that they received defective vehicles subject to dangerous slowing in high-speed traffic once the REx is activated. This means that Range Extenders in Plaintiffs' vehicles do not double the range as promised, and at least sometimes don't extend the range at all (because the vehicle becomes unsafe as soon as the REx is activated). This is a clear breach of BMW's express warranties made by representations.

### 2. Plaintiffs properly plead express warranty claims arising from the new vehicle limited warranty.

BMW argues at length that its limited warranty does not apply to Plaintiffs' claims related to the defective REx. *See* Br. at 11-12. In support of this position, BMW points to language which states that the warranty applies to "defects in materials or workmanship." *Id.* However, the nearly 30-page long "Service and Warranty Information" booklet also provides that, where warranty coverage is needed, BMW will "either repair or replace the defective part(s) using new or authorized remanufactured parts." This reference to warranty coverage for "defective parts" renders BMW's warranty ambiguous as to the issue of whether it is limited to materials or workmanship, or also defective parts and components. Given that the warranty is "without question" a contract of adhesion, this ambiguity must be resolved against the draftsman, BMW. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224-25 (9th Cir. 2015). *See also* Order Granting in Part Defs.' Mot. to Dismiss or Strike, *Tsonev v. Kia Motors America, Inc.*, No. 16-cv-01020-CJC (C.D. Cal. Nov. 9, 2016) (ECF No. 30). Consistent with *Tsonev* and the Ninth Circuit's opinion in *Daniel*, BMW's request to dismiss the express warranty claims on this basis should be rejected. In the alternative, Plaintiffs request the opportunity to replead these claims to include the full breadth of the promises made by BMW to its owners as explained in its Service and Warranty Information Booklet.

- 13 -

**E.      Plaintiffs Properly Plead Implied Warranty Claims**

BMW incorrectly contends that Plaintiffs' implied warranty claims fail for the Plaintiffs' lack of privity with BMW.[7] BMW even goes so far as to say that Plaintiffs can "never satisfy this requirement," Br. at 17, ignoring auto cases around the country and in California permitting recovery by remote consumers for implied warranty claims. Thus, Plaintiffs may pursue these claims in Georgia, Florida, Illinois, and Ohio because Plaintiffs adequately allege privity with BMW. And even in the absence of direct privity, Plaintiffs adequately allege that they are third-party beneficiaries of the contracts between BMW and its authorized dealers, satisfying the requirements of California, Florida, Ohio, Utah, and Washington state law.[8]

**1.      Georgia, Florida, Illinois, and Ohio Plaintiffs have sufficient direct contacts with BMW to establish privity.**

Plaintiffs adequately allege direct contacts with BMW as set forth by Georgia, Florida, Illinois, and Ohio courts to establish those states' recognized exception to the privity requirement for Breach of Implied Warranty claims.[9] As a practical matter, courts recognize that privity is established between a manufacturer and a remote purchaser under circumstances such as those presented in this case. By acting through a dealer and by making the warranties part of the sale between the dealer and purchaser, the manufacturer evinces an intent to contract with the remote purchaser and receives consideration in the form of direct profits from its dealers. *See Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 792 (Ill. App. Ct. 2007); *Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974). The manufacturer therefore bridges the privity gap that would otherwise bar the remote purchaser's

---

[7] BMW does not take issue with the Song Beverly claim brought on behalf of the California subclass.

[8] Plaintiffs concede that Tennessee does not recognize a third-party beneficiary exception or "direct contacts" exception to the privity requirement, and therefore agree to drop implied warranty claims under Tennessee law.

[9] To the extent that this court disagrees, Plaintiffs request an opportunity to amend in further support of the privity relationship between BMW and Plaintiffs.

010616-11  921692 V1

implied warranty claim. *Risner v. Regal Marine Indus.*, 2013 U.S. Dist. LEXIS 58690, at *37 (S.D. Ohio Apr. 24, 2013) ("[W]hen the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer, then the manufacturer and the ultimate consumer are in privity of contract."). The reason for this exception, explains one Florida court, is that when there is direct contact between the manufacturer and the ultimate consumer, "[r]equiring the purchaser to go against the seller, who must proceed in indemnification against the distributor, who must proceed against the manufacturer, is wasteful and inefficient." *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs., Inc.*, 444 So. 2d 1068, 1072 (Fla. Dist. Ct. App. 1984).

### a.   Georgia Plaintiff sufficiently alleges privity.

In Georgia, there is ordinarily no implied warranty existing between a manufacturer and an ultimate consumer. This is due to the fact that no privity of contract exists between the two. *See Chaffin v. Atlanta Coca Cola Bottling Co.*, 194 S.E.2d 513 (Ga. Ct. App. 1972). However, where an automobile manufacturer, through its authorized dealer, issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists and Ga. Code Ann. § 109A-2--314 becomes operative. *Chrysler Corp.*, 208 S.E.2d at 323.

Mr. Parmeshwar alleges that he purchased his vehicle after reviewing BMW's website and speaking with authorized BMW dealer representatives, both of whom told him that the REx feature extended the range of the i3 to 150 miles. ¶ 69. Such allegations support direct privity with BMW and its agents by creating an express warranty by representation. *See supra* Section II(B). Mr. Parmeshwar relied on these representations when purchasing the BMW i3 with the Range Extender option. ¶ 69. And he further alleges that BMW issues an express warranty in connection with the purchase or lease of each one of its new vehicles. ¶¶ 376-377. Mr. Parmeshwar has thus closed the "privity gap" between himself and BMW.

### b.    Florida Plaintiff sufficiently alleges privity.

Likewise, Florida recognizes that there is an exception to the privity requirement where a buyer relies on "direct contacts" with a manufacturer in purchasing a product. In *Cedars of Lebanon Hosp. Corp.*, 444 So. 2d at 1072, the Court of Appeal of Florida found that privity existed between a manufacturer and a buyer, notwithstanding that the seller was a third-party distributor, where the manufacturer's representative made direct contact with the buyer and where the buyer relied on representations directly from the manufacturer's representative in purchasing the product from the distributor. Here, as in *Cedars of Lebanon Hosp. Corp.*, Plaintiffs allege that they made direct contact with the manufacturer by viewing advertisements and statements made by the manufacturer's agents (¶¶ 67-68), and that they relied on representations made directly to them by BMW (*id.*).

### c.    Illinois Plaintiff sufficiently alleges privity.

Similarly, the privity requirement for implied warranty of merchantability claims is relaxed under Illinois law when (1) the manufacturer extended a written warranty with the product, and (2) a consumer brought an action under Magnuson-Moss. *Shoop*, 864 N.E.2d at 792 (holding that buyer was in privity with car manufacturer because the manufacturer issued a written warranty and the buyer brought a Magnuson-Moss claim). Mr. Siddiqui satisfies this requirement by alleging that BMW issues an express warranty in connection with the purchase or lease of each one of its new vehicles (¶ 448), and by bringing an action under the Magnuson-Moss Act (¶¶ 101-114).

### d.    Ohio Plaintiff sufficiently alleges privity.

And Ohio law recognizes that the manufacturer is in privity with the remote purchaser where it is so involved with the sales transaction that the dealer is merely an agent of the manufacturer. *Risner*, 2013 U.S. Dist. LEXIS 58690, at *37. Under these circumstances, the manufacturer and ultimate customer are in privity. *Id.* Mr. Desatnik alleges that he purchased his new vehicle after speaking with authorized BMW dealer

- 16 -

representatives who told him that the REx feature extended the range of the i3 to 150 miles. ¶ 72. Mr. Desatnik relied on these representations when purchasing a new BMW i3 with the Range Extender option. *Id.* Here again, these allegations support direct privity with BMW and its agents by creating an express warranty by representation. *See supra* Section II(D)(2). And like Mr. Parmeshwar, Mr. Desatnik further alleges that BMW issues an express warranty in connection with the purchase or lease of each one of its new vehicles. ¶ 587. Mr. Desatnik has thus also closed the "privity gap" between himself and BMW under Ohio law.

### 2. California, Florida, Ohio, Utah, and Washington Plaintiffs may bring implied-warranty-of-merchantability claims even if they lack privity with BMW.

In California, Florida, Ohio, Utah, and Washington, courts recognize an exception to the privity requirement for claims alleging breach of the implied warranty of merchantability where plaintiffs allege that they are intended third-party beneficiaries. Plaintiffs here allege that they are intended, not merely incidental, beneficiaries of the contracts for sale between BMW and its dealerships. Plaintiffs specifically allege that they are intended beneficiaries of BMW's implied warranties. This is bolstered by allegations that dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles. The warranties are therefore designed for and intended to benefit consumers only, and the third-party beneficiary exception to the privity requirement applies.

#### a. California Plaintiffs may bring implied-warranty-of-merchantability claims even if they lack privity with BMW.

Under Cal. Com. Code § 2314, a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant. *See Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005). However, California courts recognize a well-established exception to the privity requirement where the consumer is a third-party beneficiary of the contract between the manufacturer and a

- 17 -

third-party. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010) ("*Toyota Unintended Acceleration MDL*") ("[W]here a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach."); *In re Sony VAIO Computer Notebook Trackpad Litig.*, 2010 U.S. Dist. LEXIS 115142, at *3 (S.D. Cal. Oct. 28, 2010) (holding that the facts as pled by plaintiffs—that the retailer from which they purchased defective products was manufacturer's authorized retailer and service facility—precluded dismissal of a breach of implied warranty claim for lack of privity); *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008) (concluding that plaintiffs were, as third-party beneficiaries, entitled to maintain a breach of implied warranty claim against the manufacturer where plaintiffs, not the distributors, were the intended consumers); *Arnold v. Dow Chemical Co.*, 91 Cal. App. 4th 698, 720 (2001) (finding, based on the fact that distributors and retailers were not intended to be the ultimate consumers, that plaintiff could maintain breach of implied warranty claim notwithstanding the lack of privity with manufacturer of pesticide).

In California, courts specifically "permit a third party to bring an action even though he is not specifically named as a beneficiary, if he is *more than incidentally benefitted by the contract*." *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69 (1978) (emphasis added). Here, there can be no real dispute that the California Plaintiffs more than incidentally benefitted from the contract between BMW and its authorized dealerships, and, thus, may assert breach of implied warranty claims under Cal. Com. Code § 2314 as third-party beneficiaries. *See Toyota Unintended Acceleration MDL*, 754 F. Supp. 2d at 1185 (holding that consumers were intended third-party beneficiaries where they "pled that they purchased vehicles from a network of dealers who are agents of [Toyota]," that the "dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the

warranty agreements provided with the Defective Vehicles," and "the warranty agreements were designed for and intended to benefit the ultimate consumers only").

As did the plaintiffs in *Toyota Unintended Acceleration MDL*, California Plaintiffs here allege that they purchased their vehicles from a network of dealers who are agents of BMW. ¶ 179. Plaintiffs also allege that they are intended third-party beneficiaries of the contracts between BMW and its dealers, and specifically, of BMW's implied warranties. *Id.* Dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles. *Id.* The warranties are therefore designed for and intended to benefit consumers only. *Id.*

BMW's reliance on *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), in support of its privity argument is misplaced. In *Clemens*, the Ninth Circuit considered an implied warranty claim that a vehicle purchaser asserted against the manufacturer from which he did not directly purchase the vehicle, ultimately affirming the district court's dismissal based on the lack of vertical privity. *Id.* at 1021, 1023-24. The *Clemens* court, however, did not consider the third-party beneficiary exception to the vertical privity requirement. *Id.* at 1023. Instead, after noting various *other* exceptions to the privity requirement, the court went on to note that the plaintiff did not seek applications of any of the established exceptions. *Id.* at 1023. Rather, the plaintiff in *Clemens* invited the creation of a similar exception for his case, an invitation which the court declined, noting that "a federal court sitting in diversity is not free to create new exceptions to it." *Id.* at 1024. Thus, the court had no occasion in *Clemens* to consider the California appellate cases recognizing the third-party beneficiary exception to the vertical privity requirement of implied warranty claims.

### b. Florida Plaintiff adequately alleges that he is an intended third-party beneficiary.

In *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233-34 (S.D. Fla. 2014), a federal district court in Florida, relying on *Toyota Unintended Acceleration*

*MDL*, held that the consumer plaintiffs' implied warranty claims were not precluded based on their lack of privity with the defendant car manufacturer, based on allegations that the plaintiffs were the intended beneficiaries of the warranty agreements. As here, the plaintiff in *Sanchez-Knutson* alleged that the warranties "were designed for and intended to benefit the ultimate consumers." *Id.* at 1234. Plaintiffs here allege that they are intended third-party beneficiaries of the contracts between BMW and its dealers, and specifically, of BMW's implied warranties. ¶ 321. Dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles. *Id.* The warranties are therefore designed for and intended to benefit consumers only. *Id.* The Florida Plaintiffs' implied warranty claims are therefore well pled.

### c.   Ohio Plaintiff is an intended third-party beneficiary of the warranty between the dealership and BMW.

The Ohio Court of Appeals has likewise held that a "consumer may also have privity of contract with the manufacturer if that consumer is an intended third-party beneficiary to a contract." *Bobb Forest Prods. v. Morbark Indus.*, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002).[10] *Bobb Forest Prods.* is instructive. There, the manufacturer knew that it was manufacturing a sawmill for the plaintiff's ultimate use. *Id.* Adopting the "intent to benefit" test to determine whether a party is an intended, or merely an incidental, third-party beneficiary, the Ohio Court of Appeals held that the plaintiff was an intended third-party beneficiary with rights under a sales contract between the manufacturer and distributor. *Id.* Likewise, the Ohio Plaintiffs here have alleged that the "dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles." ¶ 604. The warranties were therefore designed for and intended to benefit the consumers only, and the Ohio Plaintiffs' implied warranty claims are well pled.

---

[10] *See also Risner*, 2013 U.S. Dist. LEXIS 58690, at *37; *Chem. Solvents, Inc. v. Advantage Eng'g, Inc.*, 2011 U.S. Dist. LEXIS 41378, at *29-32 (N.D. Ohio Apr. 6, 2011).

**d.** **Utah Plaintiff is an intended third-party beneficiary of the warranty between the dealership and BMW.**

BMW's implied warranty extends to Plaintiff as a matter of law because he is a third-party beneficiary. *See* Utah Code Ann. §§ 70A-2-104(1), 70A-2-318. The Utah code provides that "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." *Id.* § 70A-2-318. The injury set forth in the Utah statute is not limited to personal injury. *Stembridge v. Nat'l Feeds, Inc.*, 2013 U.S. Dist. LEXIS 136789, at *18 (D. Utah 2013) (applying the statute's third-party beneficiary language to mislabeled agricultural feed that created a vitamin E deficiency in farm animals). In so holding, the *Stembridge* court rightly recognized that "it would be unjust to recognize a rule that would permit manufacturers of goods to represent that goods possess qualities they do not possess, and then deny the customer to recover damages because there is no privity of contract existing between the consumer and the manufacture." *Id.* at *16-17.

Plaintiffs throughout the Complaint allege that BMW intended that its agreements with dealers were for the benefit consumers only. *See, e.g.*, ¶ 676 (incorporated by reference by ¶ 820). Plaintiffs further allege that BMW's REx feature is designed to meet customers' needs, not dealers' needs. *See* ¶ 47 (quoting BMW press release exploring customers' reservations about buying an electric car, not dealers' reservations about ordering them). The Complaint is also replete with allegations that BMW places false advertising on its public-facing website targeting consumers, and not on a dealers-only website. *See, e.g.*, ¶ 30. Thus, Plaintiff exceeds Utah's requirement that he be "reasonably expected" to "use, consume or be affected by" the goods.

**e.** **Washington Plaintiff is an intended third-party beneficiary of the warranty between the dealership and BMW.**

Plaintiffs here also satisfy the Washington state third-party beneficiary exception to privity. *See Touchet Valley Grain Growers v. Opp & Seibold Gen.*

- 21 -

*Constr.*, 831 P.2d 724, 730 (Wash. 1992) (citing *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 422 P.2d 496 (Wash. 1967)). In *Kadiak*, the Supreme Court of Washington held that a purchaser of a specially built marine diesel motor could sue the manufacturer for breach of implied warranties even though the purchaser bought the diesel motor from a retail dealer. The court found that the manufacturer's implied warranties of merchantability and fitness for a particular purpose given to its purchaser (the dealer) extended to the end user. The decision relied on the sum of interaction and expectations between the purchaser and the manufacture, including that the manufacturer knew that the dealer was not the ultimate consumer. As in *Kadiak*, Plaintiffs here allege that they are intended third-party beneficiaries of the contracts between BMW and its dealers, and specifically, of BMW's implied warranties. ¶ 898. Dealers were not intended to be the ultimate consumers of the Affected Vehicles and the warranties are therefore designed for and intended to benefit consumers only. *Id.*

## F.    Plaintiffs Adequately Plead Magnuson-Moss Claims

Defendants contend that Plaintiffs' Magnuson-Moss claims "fail" because the state warranty claims fail. Though Plaintiffs agree that Magnuson-Moss claims rise and fall with warranty claims, as argued *supra*, Plaintiffs have sufficiently pled state warranty claims, and the Magnuson-Moss claims accordingly survive.

## G.    Plaintiffs Adequately Plead Unjust Enrichment

The federal rules provide that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015). In *Astiana*, the Ninth Circuit recently held that a claim for unjust enrichment under California law should not be dismissed just because it is not a "standalone cause of action." *Astiana*, 783 F.3d at 762. The court's "unambiguous" decision in *Astiana* has "settled the long-standing question of whether a court may dismiss a claim for unjust enrichment as merely duplicative of other

statutory or tort claims." *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1049 (N.D. Cal. 2015).[11]

BMW seeks dismissal of Plaintiffs' unjust enrichment claims because, it contends, Plaintiffs have an adequate remedy at law (although they simultaneously seek the dismissal of the legal claims). BMW argues both that (a) Plaintiffs have no legal claim, and (b) Plaintiffs have a legal remedy. This makes no sense. And it ignores Rule 8 and the holdings of the very cases BMW cites, which allow Plaintiffs to plead in the alternative.

The cases cited by BMW primarily hold that a party cannot *prevail* on both unjust enrichment and legal claims. But even cases cited by BMW recognize that a party can *plead* both claims in the first instance. In fact, in the first case cited by BMW, *Harris Grp. v. Robinson*, 209 P.3d 1188, 1206-07 (Colo. App. 2009), the equitable and legal claims went to verdict. The jury found in favor of plaintiffs on both claims, and the appellate court determined that they were only allowed to collect on the legal claims because the damages overlapped with the unjust enrichment claim. But plaintiffs were clearly permitted to litigate both claims, including at trial. *See id.*

Indeed, in all but two[12] of the cases cited by defendants, plaintiffs were deemed to have an adequate remedy of law only after the legal claims survived defendants' motions to dismiss,[13] or the court disposed of the legal claims (at the summary

---

[11] *Cf. Toyota Unintended Acceleration MDL*, 754 F. Supp. 2d at 1193-94 (decided before *Astiana*); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) (same); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (same); *Maloney v. Indymac Mortg. Servs.*, 2014 WL 6453777, at *7 (C.D. Cal. Nov. 17, 2014) (same).

[12] Under Utah state law not applying Fed. R. Civ. P. 8, a plaintiff must allege the lack of an adequate legal remedy on the face of the pleading. *See Ockey v. Lehmer*, 189 P.3d 51, 61 n.42 (Utah 2008). In the Washington case cited by BMW, *Seatle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134 (Wash. 2000), again not applying Fed. R. Civ. P. 8, the Washington Supreme Court ruled that plaintiffs could not pursue their equitable claims when they had an adequate legal remedy, even though plaintiffs had failed to plead it.

[13] *See* Br. at 20-22 (citing *Francis v. Mead Johnson & Co.*, 2010 U.S. Dist. LEXIS 137630, at *27-28 (D. Colo. Dec. 17, 2010)) (unjust enrichment claim is "superfluous" only because court denied motion to dismiss plaintiff's CCPA claim); *Am Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178, 1181 (M.D. Fla. 2005)

- 23 -

1    judgment or post-trial stage) when the unjust enrichment claim was based on the same

2    facts.[14] The survival of the legal claims proved that they were an adequate remedy.

3    Plaintiffs here are pleading in the alternative in the event they do not prevail on the

4    legal claims.

5         Finally, relying on an Ohio federal case applying Georgia law,[15] BMW

6    maintains that Plaintiffs cannot bring both legal and equitable claims because the

7    validity and existence of the express warranty are not in dispute. First, *PCNA*'s

8    apparent holding is flatly inconsistent with all the other cases BMW cites. Second,

9    although asserting that the validity of the warranty is not in dispute, BMW

10   simultaneously denies that the warranty applies at all to Plaintiffs' claims.[16] The

11   validity of the warranty will be at the heart of this case; indeed, nowhere does BMW

12   concede that Plaintiffs' allegations are covered by the warranty. Third, this argument

13   ignores the other legal claims that Plaintiffs brought, including their breach of implied

14   warranty claims, which parallel the unjust enrichment claims.

**H.    California Exemplary Damages are Warranted Because of Defendants'
        Malicious and Fraudulent Conduct**

16        BMW maintains that Plaintiffs' claim (Count B-VIII) must be dismissed

17   because exemplary damages under California law are not an independent cause of

18   action. Plaintiffs agree that exemplary damages under California law are not an

---

19

20   (plaintiffs had adequate remedy at law when court denied motion to dismiss legal claims);
     *McGlashan v. Snowden*, 738 S.E.2d 619, 620-21 (Ga. 2013) ("Since [plaintiff] could recover
21   money damages from the builders in this action, it would be inappropriate for the trial court
     to grant him equitable relief."); *Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*, 2007 WL
22   1264008, at *9 (Mich. Ct. App. May 1, 2007) (same); *Pacheco v. Boar's Head Provisions
     Co.*, 2010 WL 1323785, at *5 (W.D. Mich. Mar. 30, 2010) (same); *Cerdant, Inc. v. DHL
23   Express (USA), Inc.*, 2009 WL 723149 (S.D. Ohio Mar. 30, 2009) (same).

24   [14] *DigaComm, LLC v. Vehicle Safety & Compliance, LLC*, 2009 WL 509736, at *8 (N.D.
     Ill. Mar. 2, 2009); *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1070-
25   71 (Ill. App. Ct. 1995); *Law v. Bioheart, Inc.*, 2009 WL 693149 (W.D. Tenn. Mar. 13, 2009)
     (same).

26   [15] *See* Br. at 22-23 (citing *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods.
     Liab. Litig.*, 880 F. Supp. 2d 801, 847 (S.D. Ohio 2012) ("*PCNA*")).

27   [16] *See* Br. at 11-13; *see also id.* at 13 ("BMW NA could not have breached a warranty that
28   does not cover the type of defect plaintiffs identify in this lawsuit").

PLAINTIFFS' OPPOSITION TO BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

independent cause of action,[17] but maintain that Plaintiffs have adequately alleged facts that, if true, would give rise to exemplary damages under Cal. Civ. Code § 3294. BMW doesn't appear to dispute this. BMW's argument, therefore, that the claim cannot be pleaded separately amounts to a picayune quibble with Plaintiffs' formatting. Indeed, BMW cites no apposite case that prohibits Plaintiffs from placing allegations made under Cal. Civ. Code § 3294 in a separate section of their Complaint.[18] Given that this is simply a formatting issue, Plaintiffs will format these claims however this Court desires. If so requested (and so permitted), Plaintiffs will amend the Complaint to incorporate exemplary damages into the Prayer for Relief for the California counts.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny BMW's motion in its entirety, and that they be given leave to amend as needed to save each claim.

DATED:  December 20, 2016          HAGENS BERMAN SOBOL SHAPIRO LLP

By:  /s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Jessica Thompson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: toml@hbsslaw.com
Email: jessicat@hbsslaw.com

---

[17] *See* Br. at 24 and cases cited therein.

[18] The only case that comes close, *Arndell v. Robison, Belaustegui, Sharp & Low*, 2012 U.S. Dist. LEXIS 126570, at *20 (D. Nev. Sept. 6, 2012), was dismissed for failure of plaintiffs to comply with the court's prior order to consolidate their claims.

Lee M. Gordon (SBN 174168)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: lee@hbsslaw.com

*Interim Lead Counsel for Plaintiffs and the
Proposed Class*

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA  19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
Email: bfj@chimicles.com
Email: awf@chimicles.com

*Plaintiffs' Executive Committee*

Jonathan A Michaels
MLG AUTOMOTIVE LAW APLC
2801 West Coast Highway, Suite 370
Newport, CA  92663
Telephone: (949) 527-6900
Facsimile: (949) 581-6908
Email: jmichaels@mlgautomotivelaw.com

*Plaintiffs' Executive Committee*

PLAINTIFFS' OPPOSITION TO BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

010616-11  921692 V1

1

## **CERTIFICATE OF SERVICE**

2

     I hereby certify that on December 20, 2016, I electronically filed the foregoing

3

document using the CM/ECF system which will send notification of such filing to the

4

e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail

5

Notice List.

6

7

DATED: December 20, 2016          H<small>AGENS</small> B<small>ERMAN</small> S<small>OBOL</small> S<small>HAPIRO</small> LLP

8

                  By:  */s/ Steve W. Berman*

9

                    Steve W. Berman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS

010616-11  921692 V1