# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Steve W. Berman (*pro hac vice*)
      steve@hbsslaw.com
2   Barbara A. Mahoney (*pro hac vice*)
      barbaram@hbsslaw.com
3   HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Second Avenue, Suite 2000
4   Seattle, WA 98101
    Telephone: (206) 623-7292
5   Facsimile: (206) 623-0594

6   Christopher Pitoun (SBN 290235)
      christopherp@hbsslaw.com
7   HAGENS BERMAN SOBOL SHAPIRO LLP
    301 North Lake Avenue, Suite 920
8   Pasadena, CA 91101
    Telephone: (213) 330-7150
9   Facsimile: (213) 330-7152

10  *Interim Lead Counsel for Plaintiffs and
    the Proposed Class*

11

12  *[Additional Counsel on Signature Page]*

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   WESTERN DIVISION

16  BARRY BRAVERMAN, *et al.*,                No. 8:16-cv-00966-TJH-SS

17                         Plaintiffs,         **PLAINTIFFS' NOTICE OF
                                               MOTION AND MOTION FOR
18        vs.                                  CLASS CERTIFICATION,
                                               APPOINTMENT OF CLASS
19  BMW OF NORTH AMERICA, LLC,                 REPRESENTATIVES AND OF
    *et al.*,                                  HAGENS BERMAN SOBOL
20                                             SHAPIRO LLP AS CLASS
                         Defendants.           COUNSEL**
21
                                               Hearing Date: December 2, 2019
22                                             Time: 10:00 a.m.
                                               Judge: Hon. Terry J. Hatter, Jr.
23                                             Courtroom: 9C

24                                             [Filed with Declaration of Steve W.
                                               Berman, and Proposed Order]
25

26

27

28

---

**TO ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 2, 2019, at 10:00 a.m., or as soon thereafter as the matter can be heard, in Courtroom of the Hon. Terry J. Hatter, Jr., located at United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Courtroom 9B, 9th Floor, Plaintiffs Barry Braverman, Hakop Demirchyan, Joel Green, Dr. Glynda Roberson, Edo Tsoar, Peter Weinstein, Lawrence Curcio, Adeel Siddiqui, Charles Olsen, Robert Desatnik, Eric Wonderley, John Lingsweiler, Steve Ridges, and Brandon Cosinteno (née Redmond) ("Plaintiffs"), will and herby do, move for an order a) certifying Plaintiffs' putative class in this litigation; b) appointing Plaintiffs as class representatives; and c) appointing Hagens Berman Sobol Shapiro LLP as class counsel

DATED: March 29, 2019          HAGENS BERMAN SOBOL SHAPIRO LLP


By: */s/ Steve W. Berman*
    Steve W. Berman (*pro hac vice*)
Barbara A. Mahoney (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: barbaram@hbsslaw.com

Christopher Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone:  (213) 330-7150
Facsimile: (213) 330-7150
Email: christopherp@hbsslaw.com

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

-1-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL
010616-11/1111557 V1

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
Email: bfj@chimicles.com
Email: awf@chimicles.com

Jonathan A Michaels
MLG AUTOMOTIVE LAW APLC
2801 West Coast Highway, Suite 370
Newport, CA 92663
Telephone: (949) 527-6900
Facsimile: (949) 581-6908
Email: jmichaels@mlgautomotivelaw.com

Hovanes Margarian (SBN 246359)
THE MARGARIAN LAW FIRM
801 N. Brand Blvd., Suite 210
Glendale, CA 91203
Telephone: (818) 553-1000
Email: hovanes@margarianlaw.com

*Other Plaintiffs' Counsel*

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES .................................................................................. 1

II.   INTRODUCTION .............................................................................................. 2

III.  PROFFER OF EVIDENCE COMMON TO THE CLASS ............................... 3

    A.   BMW knew that the REx design was uniformly defective and adversely impacted driver safety by causing Class Cars to decelerate suddenly on highways and hills. ................................................. 3

    B.   BMW omitted material information about Class Cars that would have revealed the defect. ......................................................................... 7

    C.   BMW's omissions were objectively deceptive. ...................................... 8

    D.   A powerful admission: BMW fixed the defect in later models. ............ 10

IV.   ARGUMENT ................................................................................................... 10

    A.   The Class is ascertainable. ................................................................... 10

    B.   Plaintiffs satisfy all Rule 23(a) requirements. ..................................... 11

        1.   The Class members are so numerous that joinder would be impracticable. .............................................................................. 11

        2.   Numerous common questions of law and fact exist because the focus is on BMW's common course of conduct. ................... 11

        3.   Plaintiffs' claims are typical of Class members' claims because the claims arise from BMW's common course of conduct. ....................................................................................... 14

        4.   Plaintiffs and their counsel will adequately represent the Class. ............................................................................................ 14

    C.   The Class satisfies the Rule 23(b)(3) predominance and superiority requirements. ........................................................................................ 15

        1.   Common questions of fact and law related to implied warranty will predominate over individual inquiries. ................. 17

        2.   Common questions of fact and law related to fraud claims will predominate over individual inquiries. ............................... 18

        3.   Plaintiffs provide a common methodology of proving class-wide impact and damages. ......................................................... 20

        4.   A class action is a superior method of adjudicating this dispute. ......................................................................................... 24

-i-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

V.      CONCLUSION ................................................................................. 25

010616-11/1111557 V1

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

Cᴀsᴇs

4

*Abdullah v. U.S. Sec. Assocs. Inc.*,
5
  731 F.3d 952 (9th Cir. 2013) .................................................................... 16

6

*Alliance Mortgage Co. v. Rothwell*,
7
  10 Cal. 4th 1226 (1995) ........................................................................... 21

8

*Amato v. Gen. Motors Corp.*,
  463 N.E.2d 625 (Ohio Ct. App. 1982) ..................................................... 20
9

*Amchem Prods., Inc. v. Windsor*,
10
  521 U.S. 591 (1997) ................................................................................. 23

11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
12
  568 U.S. 455 (2013) ........................................................................... 11, 16

13

*Bautista v. Valero Mktg. & Supply Co.*,
14
  322 F.R.D. 509 (N.D. Cal. 2017) ............................................................ 19

15

*Boeken v. Philip Morris, Inc.*,
16
  127 Cal. App. 4th 1640 (2005) ................................................................ 20

17

*Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*,
18
  668 P.2d 535 (Utah 1983) ........................................................................ 20

19

*Bridgestone Am.'s, Inc. v. IBM*,
  172 F. Supp. 3d 1007 (M.D. Tenn. 2016) ................................................ 20
20

*Calvert v. Red Robin Int'l, Inc.*,
21
  2012 WL 1668980 (N.D. Cal. May 11, 2012) ......................................... 14

22

*Cannon v. Nationwide Acceptance Corp.*,
23
  1997 U.S. Dist. LEXIS 20019 (N.D. Ill. Dec. 9, 1997) .......................... 19

24

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
25
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ........................................ 17

26

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
27
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................... 17

28

-iii-

Pʟs' Nᴏᴛɪᴄᴇ ᴏғ Mᴛɴ & Mᴛɴ ғᴏʀ Cʟᴀss Cᴇʀᴛ., Aᴘᴘᴏɪɴᴛᴍᴇɴᴛ ᴏғ Cʟᴀss Rᴇᴘs. Aɴᴅ Oғ Hᴀɢᴇɴs
Bᴇʀᴍᴀɴ Sᴏʙᴏʟ Sʜᴀᴘɪʀᴏ Lʟᴘ ᴀs Cʟᴀss Cᴏᴜɴsᴇʟ

010616-11/1111557 V1

*Carriuolo v. Gen. Motors Co.*,
　823 F.3d 977 (11th Cir. 2016) ............................................................. 12, 17, 19, 21

*Cc Carpet v. Loftus*,
　1999 Tex. App. LEXIS 5697 (Tex. App. July 15, 1999) ....................................... 18

*Chamberlan v. Ford Motor Co.*,
　223 F.R.D. 524 (N.D. Cal. 2004) .................................................................. 12, 16

*Chambers v. Gen. Trailer Mfg.*,
　2006 U.S. Dist. LEXIS 45199 (E.D. Mich. July 5, 2006)..................................... 18

*Clay v. Cytosport, Inc.*,
　2018 U.S. Dist. LEXIS 153124 (S.D. Cal. Sept. 7, 2018) .................................... 22

*Comcast Corp. v. Behrend*,
　569 U.S. 27 (2013) ....................................................................................... 11

*In re ConAgra Foods, Inc.*,
　90 F. Supp. 3d 919 (C.D. Cal. 2015)......................................................... 19, 22

*Connick v. Suzuki Motor Co.*,
　675 N.E.2d 584 (Ill. 1996)........................................................................... 18

*Daniel v. Ford Motor Co.*,
　2016 U.S. Dist. LEXIS 65723 (E.D. Cal. May 17, 2016) .................................... 18

*Deegan v. Windermere Real Estate/Center-Isle, Inc.*,
　886, 391 P.3d 582 (Wash. Ct. App. 2017) ............................................... 20

*Diversified Prods. Corp. v. Faxon*,
　514 So. 2d 1161 (Fla. Dist. Ct. App. 1987).............................................. 17

*Dix v. Am. Bankers Life Assur. Co. of Fla.*,
　415 N.W.2d 206 (Mich. 1987) ................................................................ 19

*Dzielak v. Whirlpool Corp.*,
　2017 U.S. Dist. LEXIS 209106 (D.N.J. Dec. 20, 2017) .................................... 19

*Elliott v. Therrien*,
　2010 Mich. App. LEXIS 166 (Mich. Ct. App. Jan. 26, 2010) ............................... 20

-iv-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS
BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL
010616-11/1111557 V1

*Enger v. Richards*,
    2006 Wash. App. LEXIS 2079 (Wash. Ct. App. Sept. 18, 2006) ........................... 21

*Ernest E. Fadler Co. v. Hesser*,
    166 F.2d 904 (10th Cir. 1948) ................................................................... 17

*Everett v. TK-Taito, LLC*,
    178 S.W.2d 844 (Tex. Ct. App. 2005) ...................................................... 21

*First Sec. Bank N.A. v. Banberry Dev. Corp.*,
    786 P.2d 1326 (Utah 1990) ...................................................................... 20

*Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*,
    326 F.R.D. 592 (N.D. Cal. 2018) ............................................................. 22

*In re Ford Motor Co. Spark Plug & 3-Valve Engine Prods. Liab. Litig.*,
    2014 U.S. Dist. LEXIS 103944 (N.D. Ohio July 30, 2014)..................... 19

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs., Inc.*,
    960 S.W.2d 41 (Tex. 1998) ...................................................................... 21

*Gasperoni v. Metabolife*,
    2000 U.S. Dist. LEXIS 20879 (E.D. Mich. Sept. 27, 2000) ................... 20

*Gen. Motors Corp. v. Bryant*,
    285 S.W.3d 634 (Ark. 2008) .................................................................... 17

*Gilliland v. Mt. Vernon Hotel Co.*,
    321 P.2d 558 (Wash. 1958) ...................................................................... 20

*Gregory v. Cincinnati Inc.*,
    538 N.W.2d 325 (Mich. 1995) ................................................................. 17

*Gutierrez v. Komatsu Am. Corp.*,
    2003 U.S. Dist. LEXIS 20944 (N.D. Tex. Nov. 20, 2003) ..................... 17

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018)............................................... 21, 22

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ............................................................. 24

*Helfrich v. Strickland*,
  2009 Ohio App. LEXIS 4055 (Ohio Ct. App. Sept. 11, 2009) ............................... 23

*Johnson v. Welch*,
  2004 Tenn. App. LEXIS 86 (Tenn. Ct. App. Feb. 9, 2004) ................................... 21

*Jones v. Credit Auto Ctr. Inc.*,
  237 Cal. App. 4th Supp. 1 (2015) .......................................................................... 17

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ........................................................ 12, 16, 17, 25

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) .............................................................................. 25

*Kwan v. Mercedes-Benz of N. Am., Inc.*,
  23 Cal. App. 4th 174 (1994) ................................................................................... 18

*Lackowski v. Twinlab Corp.*,
  2001 U.S. Dist. LEXIS 25634 (E.D. Mich. Dec. 28, 2001) ................................... 17

*Lamb v. Bangart*,
  525 P.2d 602 (Utah 1974) ...................................................................................... 21

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) .................................................................................. 21

*Local Joint Exec. Bd. Of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ................................................................................ 16

*Lucas v. Breg, Inc.*,
  212 F. Supp. 3d 950 (S.D. Cal. 2016) .................................................................... 20

*Martin v. Monsanto Co.*,
  2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017) ................................... 11

*McKenzie v. Fed. Express Corp.*,
  275 F.R.D. 290 (C.D. Cal. 2011) ........................................................................... 24

*Mceldowney, v. AIR Prods. & Chems.*,
  2007 LEXIS 1452 (Mich. Ct. App. May 31, 2007)

-vi-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

*McManus v. Fleetwood Enters., Inc.*,
   320 F.3d 545 (5th Cir. 2003) ................................................................. 17

*Miller v. Basic Research, LLC*,
   285 F.R.D. 647 (D. Utah 2010) ............................................................. 19

*Motley v. Jaguar Land Rover N. Am., LLC*,
   2012 Conn. Super. LEXIS 2701 (Conn. Super. Ct. Nov. 1, 2012) ........................ 14

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ...................................................... 16, 24

*Plymouth Pointe Condo. Ass'n v. Delcor Homes-Plymouth Pointe*,
   2003 Mich. App. LEXIS 2742 (Mich. Ct. App. Oct. 28, 2003) ...................... 21, 23

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
   880 F. Supp. 2d 801 (S.D. Ohio 2012) .................................................... 18

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ............................................................... 21

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) .......................................................... 12

*Rosen v. J.M. Auto Inc.*,
   270 F.R.D. 675 (S.D. Fla. 2009) .......................................................... 17

*Schechner v. Whirlpool Corp.*,
   2019 WL 978934 (E.D. Mich. Feb. 28, 2019) ............................................ 22

*SecurAmerica Bus. Credit v. Schledwitz*,
   2014 Tenn. App. LEXIS 178 (Tenn. Ct. App. Mar. 28, 2014) ............................ 19

*Shepard v. Lowe's HIW, Inc.*,
   2013 WL 4488802 (N.D. Cal. Aug. 19, 2013) ............................................ 10

*In re Sohaei*,
   2013 Bankr. LEXIS 241 (Bankr. N.D. Cal. Jan. 17, 2013) ............................... 23

*Spence v. Moody*,
   1987 Tenn. App. LEXIS 3078 (Tenn. Ct. App. Nov. 18, 1987) ........................... 21

*Starinki v. Pace*,
  535 N.E.2d 328 (Ohio Ct. App. 1987) ...................................................................... 21

*State v. Rose Chevrolet, Inc.*,
  1993 Ohio App. LEXIS 3281 (Ohio Ct. App. June 28, 1993) ............................... 21

*Tait v. BSH Home Appliances*,
  289 F.R.D. 466 (C.D. Cal. 2012) ................................................................... 12, 17

*Trujillo v. Unitedhealth Grp., Inc.*,
  2019 U.S. Dist. LEXIS 21927 (C.D. Cal. Feb. 4, 2019) ....................................... 14

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .............................................................................. 12, 15, 16

*In re U.S. FoodServ. Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) .............................................................................. 25

*Van Dinter v. Orr*,
  138 P.3d 608 (Wash. 2006) ........................................................................... 18, 19

*Vernon v. Qwest Commc'ns. Int'l, Inc.*,
  643 F. Supp. 2d 1256 (W.D. Wash. 2009) ........................................................... 20

*In re Visa Check/Master Money Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) .............................................................................. 25

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
  249 S.W.3d 301 (Tenn. 2008) ........................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................ 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ......................................................... 12, 13, 16, 24

*Word of God Church v. Stanley*,
  2011 Ohio App. LEXIS 1770 (Ohio Ct. App. Apr. 29, 2011) ............................... 20

*Zakaria v. Gerber Prods. Co.*,
  2016 U.S. Dist. LEXIS 184861 (C.D. Cal. Mar. 23, 2016) ................................... 22

*Zandstra v. Stewart*,
    203 N.W.2d 748 (Mich. 1972) ................................................................ 21

### STATUTES

15 U.S.C. § 2301, *et seq.* ...................................................................... 12

720 Ill. Comp. Stat. 295/1a ................................................................. 13

815 Ill. Comp. Stat. 505/1, *et seq.* ..................................................... 13, 18

815 Ill. Comp. Stat. 505/2.................................................................... 19

Cal. Bus. & Prof. Code § 1750, *et seq.*................................................ 13

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................ 13

Cal. Bus. & Prof. Code § 17500, *et seq.* ............................................ 13

Cal. Civ. Code § 1780............................................................................ 19, 21

Cal. Civ. Code § 1791.1 ........................................................................ 12, 17

Cal. Civ. Code § 1793.2(d)(1) .............................................................. 18

Cal. Civ. Code § 1794............................................................................ 18, 23

Cal. Com. Code § 2314 .......................................................................... 12, 17

Cal. Com. Code § 2714 .......................................................................... 18

Fla. Stat. § 501.201, *et seq.* ................................................................. 13

Fla. Stat. § 501.204, *et seq.* ................................................................. 19

Fla. Stat. § 672.314, *et seq.* ................................................................. 12, 17

Mich. Comp. Laws § 445.903 .............................................................. 13, 18, 19

Mich. Comp. Laws § 440.2314 ............................................................ 12, 17

Mich. Comp. Laws § 440.2714 ............................................................ 18

Mich. Comp. Laws § 445.903(s) .......................................................... 13

Ohio Rev. Code § 1345.01, *et seq* ...................................................... 13

-ix-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS
BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

Ohio Rev. Code § 1345.02 (A) ...................................................................... 19

Tenn. Code Ann. § 47-18-104 (b)(5) ............................................................. 18

Tenn. Code § 47-18-101, *et seq.* ................................................................... 13

Tex. Bus. & Com. Code § 17.41, *et seq.* ....................................................... 13

Tex. Bus. & Com. Code § 17.46 .................................................................... 18

Tex. Bus. & Com. Code § 17.50 (a)(1) ......................................................... 19

Tex. Bus. & Com. Code § 2.314 ............................................................. 12, 17

Tex. Bus. & Com. Code § 2.714 .................................................................... 18

Utah Code Ann. § 13-11-1, *et seq.* ............................................................... 13

Utah Code Ann. § 13-11-3(6) ....................................................................... 19

Utah Code Ann. § 13-11-4(2)(a) ................................................................... 18

Utah Code Ann. § 13-11-19(2) ..................................................................... 21

Utah Code Ann. § 70A-2-314 ............................................................. 12, 17, 18

Wash. Rev. Code § 19.86.010, *et seq.* .......................................................... 13

Wash. Rev. Code § 19.86.020 ....................................................................... 19

Wash. Rev. Code § 19.86.090 ....................................................................... 21

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .............................................................................. *passim*

45 Fla. Jur. Sales and Exchanges of Goods § 245 ....................................... 18

# I.   STATEMENT OF ISSUES

(1)   Using evidence common to the Class, Plaintiffs will show that Defendant BMW of North America (BMW) marketed and sold the model years 2014-16 BMW i3 REx (Class Cars) with a common design defect that substantially impairs driving safety and performance.  Class Cars are electric cars outfitted with an optional, gas-powered engine that generates electricity when the batteries are nearly depleted.  BMW deceptively marketed the added range of Class Cars over pure electric cars without disclosing the dangerous propensity to reduce power and decelerate suddenly when the gas engine is used for any extended time at highway speeds or on inclines.  Given the commonality of the defect and omissions at the point of sale, should this action be certified as a class action pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3) where the requirements of numerosity, commonality, typicality, and adequacy of representation are satisfied; common issues of law and fact predominate; and a class action is superior for the fair adjudication of the controversy?

(2)   Should the Court appoint Plaintiffs Barry Braverman, Hakop Demirchyan, Joel Green, Dr. Glynda Roberson, Edo Tsoar, Peter Weinstein, Lawrence Curcio, Adeel Siddiqui, Charles Olsen, Robert Desatnik, Eric Wonderley, John Lingsweiler, Steve Ridges, and Brandon Cosinteno (née Redmond) as Class Representatives where their claims are typical of those of the Class, and where the Class Representatives are committed to vigorously prosecuting this litigation?

(3)   Interim lead class counsel, Hagens Berman Sobol Shapiro LLP, has represented the proposed class and Plaintiffs since May 2016, briefed and argued Plaintiffs' oppositions to two motions to dismiss, and expended significant time and resources on behalf of the claims of Class members.  Should Hagens Berman Sobol Shapiro LLP be appointed class counsel?

1

## II.    INTRODUCTION

2

Plaintiffs seek Rule 23(a) and (b)(3) certification of the following class:

3

> All persons or entities who purchased or leased a new model
> year 2014-2016 BMW i3 with Range Extender (Class Cars)
> from an authorized BMW dealer before May 17, 2016, in
> California, Florida, Illinois, Michigan, Ohio, Tennessee,
> Texas, Utah, or Washington.

4

5

6

For roughly $4,000 more than the pure electric i3, BMW offered Class members a "Range Extender" that provided a purported total range of approximately 150 miles, which exceeded the range of most electric cars for much of the Class Period. But BMW's promise was deceptive. By design, the Range Extender does not offer anywhere near the same performance as the i3's battery-only drive. The Range Extender does not come on until the batteries are nearly depleted, and when it does, the generator cannot keep pace with the demands of ordinary driving situations— causing Class Cars to experience a sudden and dangerous loss of power and speed (limp mode).  BMW knew about this defect before it sold the Class Cars.  But instead of disclosing this highly material fact, BMW kept it secret.

7

8

9

10

11

12

13

14

15

16

Because thousands of Class members and Plaintiffs alike were economically harmed by BMW's deceptive marketing in the same manner, and their interests are aligned, Plaintiffs meet the numerosity, typicality, and adequacy requirements under Rule 23(a)(1), (3) and (4).  Whether Class Cars have a common, material defect and whether BMW's omissions were objectively deceptive are core issues that can be answered once for all Class members, and thus, Rule 23(a)(2) is satisfied.   The requirements of Rule 23(b)(3) are also met, as common issues will predominate over individual ones because evidence common to all Class members will be used to prove liability and damages.  Further, class certification is a superior form of adjudicating these claims because it would be grossly inefficient and uneconomical for Class members to proceed individually, and the case is manageable.

17

18

19

20

21

22

23

24

25

26

27

28

-2-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

### III.   PROFFER OF EVIDENCE COMMON TO THE CLASS

**A.    BMW knew that the REx design was uniformly defective and adversely impacted driver safety by causing Class Cars to decelerate suddenly on highways and hills.**

Class Cars are powered by a set of 60 a-h batteries, offering an EPA-estimated 80-mile range on a single charge.  The cars also have gas-powered generator, known as the "Range Extender," which kicks in only when the batteries drop to a 6.5% state of charge.  The added range provided by the Range Extender (purportedly double) was a significant enticement to prospective purchasers.  BMW estimated that it sold or leased about four times as many Class Cars as models without the Range Extender, even though BMW's suggested retail price for Class Cars with the Range Extender was $3,850 more.[1]

"Limp mode" occurs because the Range Extender is both underpowered and does not engage until the batteries are nearly depleted.  Unlike the more familiar plug-in hybrids on the market during the May 2014 through May 2016 Class Period, which transition from electric to gas-powered with virtually no interruption in power, Class Cars have only a 34 horsepower generator capable of producing only 23.5 kW to support its 170-horsepower motor.[2]

The small output of the Range Extender does not in itself cause limp mode.  Unlike European BMW models, which avoid limp mode because drivers can set the Range Extender to turn on while their batteries still have 75% state of charge,[3] the Class Cars are designed so that the Range Extender does not activate until the batteries are nearly depleted and then shuts off automatically whenever the state of charge rises

---

[1]  Ex. 1 at BMWNA-ESI-003687; Ex. 2 at Responses 1-3.  Unless otherwise indicated, all exhibits referenced herein are attached to the Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification ("Berman Decl.").

[2]  Ex. 3 at 3933.

[3]  Ex. 12 at 30033.

-3-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

above 6.5% (*e.g.*, through regenerative braking).[4]   Because of the Range Extender's delayed activation and its limited output, BMW admitted internally that ██████ ███████████████████████████████████████████████ and thus Class Cars' are unable "████████████████████████████████"   BMW was responsible for all advertising in the United States for the U.S. version of the BMW i3 REx[7] and "for all information and guidance provided to BMW dealers in the United States regarding the operation of the range extender in" Class Cars—guidance "based in part on technical or other information BMW NA receives in the ordinary course of business from BMW AG."[8] Before Class Cars were placed into the market, BMW knew that the Range Extender was designed to have an underpowered generator with a delayed start.[9] BMW also knew that limp mode was a concern and typically occurs when the Range Extender's state of charge drops below 2% state of charge and is guaranteed to occur if it drops to 0.5%.[10]   BMW also knew that its parent company had engaged in extensive pre-sale testing of the Class Cars.[11]

Early in the Class Period, BMW admitted in confidential internal communications that to ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████  ██████████████████████████████████████

---

[4] Ex. 4 at 1251; *see also id.* at 1266; Ex. 5 at 152:3-12.

[5] Ex. 4 at 1267.

[6] Ex. 6.

[7] Ex. 30 at 4.

[8] *Id.* at 4.

[9] *Id.* at 4; *see also* Ex. 7 at 5; Ex. 8 at 3999; Ex. 5 at 55:23-56:7.

[10] *See* Ex. 7 at 5; Ex. 8 at 3936; Ex. 5 at 55:23-56:7.

[11] Ex. 5 at 45:12-46:12.

[12] Ex. 4 at 1267.

-4-

1

2

3

4

5

6

7 [REDACTED]"[16] BMW did not disclose any of these

8 specific driving limitations or safety concerns to the public or to dealers.

9       The Range Extender's performance also [REDACTED]

10 [REDACTED]

11 [REDACTED]"[17] In one confidential test performed by BMW's parent company, the

12 [REDACTED]

13 [REDACTED][18] BMW

14 later acknowledged that "[REDACTED]

15 [REDACTED]

16       Indeed, each proposed Class Representative has experienced limp mode in a

17 Class Car under harrowing conditions, typically an abrupt deceleration from about 70

18 mph to 40 mph or less on the highway—with no brake lights to warn drivers behind

19 them of their deceleration.[20]   BMW's own documents demonstrate that from 2014

20

21    [13] Ex. 4 at 1267.

22    [14] *Id.* at 1252.

23    [15] Ex. 9 at 1093.

   [16] Ex. 9 at 1091.

24    [17] Ex. 10 at 502; Ex. 11 at 147:17-150:16.

25    [18] Ex. 10 at 502.

26    [19] Ex. 12 at 30033.

27    [20] *See* Declarations of Barry Braverman, Hakop Demirchyan, Joel Green, Dr. Glynda Roberson, Edo Tsoar, Peter Weinstein, Lawrence Curcio, Adeel Siddiqui, Charles Olsen, Robert Desatnik, Eric Wonderley, John Lingsweiler, Steve Ridges, and

28

-5-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

through 2016, it received numerous consumer complaints about the limp-mode defect, and it was aware of scores of other complaints from public sources and surveys.[21]  As a typical example, one customer reported, "traveling on an uphill toll road . . . exceeding 70 mph" and "within seconds the car slowed down causing a near-miss accident in the fast lane."[22]  Another reportedly "had been passing someone at 68 mph and drastically dropped to 40 MPH."[23]  One customer described the scene: "With my foot fully depressed on the accelerator, I had no ability to reverse the decline in speed."[24]  Another reported that he was limited to 55 mph on the highway, and even after he pulled off the highway, the highest available speed was only 30 mph.[25]  Another customer told BMW that when "he was going up a hill it would not go faster than 39 mph and wanted to know if that was normal.[26]  Others told BMW "when using REx, the power to get up steep hill is so slow and is dangerous"[27] and "veh is unsafe, no power while on REx to go uphill."[28]

Consumers also filed complaints with NHTSA, detailing limp-mode incidents in Class Cars.[29]  A *Consumer Reports'* reviewer was endangered when experiencing limp mode while the reviewer was trying to pass another car.[30]  Drivers often had no prior

---

Brandon Cosinteno (née Redmond); *see also* Ex. 5 at 295:21-22 ("deceleration is not indicated by the brake lights").

[21] Ex. 23; Ex. 4 at 1244-49; Ex. 13 at 003677; Ex. 14 at 004057); Ex. 15 at 008056; Ex. 16 at 029821; Ex. 17 at 003697; Ex. 18 at 006805.

[22] Ex. 19 at 2981.

[23] Ex. 20 at 3038.

[24] Ex. 21 at 2887.

[25] Ex. 22 at 2943.

[26] Ex. 22 at 2941.

[27] Ex. 23 at 2867.

[28] Ex. 24 at 2869.

[29] Ex. 25 at ID No. 10817494; Ex. 26 at ID No. 10861225; and Ex. 27 at ID No. 10676147.

[30] Ex. 4 at 1249.  Even if some class members had read the *Consumer Reports* article before making their purchase, they would also have read BMW's false promise

-6-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

notice that limp mode was about to occur, or the signal appeared only *after* a sudden drop in power—leaving no time to safely leave the road.[31]

Plaintiffs' electrical engineering expert, Patrick Donahue, confirms that the "battery, powertrain, and range extender" are essentially the same for all Class Cars, that Class Cars "are designed to perform this way for the US market," and that the defect is common to all Class Cars.[32]  He tested one of the Class Cars and verified that it is unable to maintain highway speeds during "long uphill drives on steep inclines with the Rex activated."  He also opines that the charge can drop below 1.9%, which is unsafe because drivers cannot maintain minimum highway speeds, and that his test results are "consistent" with BMW's documents.[33]

**B.    BMW omitted material information about Class Cars that would have revealed the defect.**

Given the likelihood of consumer confusion with the safer and more powerful plug-in hybrid cars,[34] and the potential safety hazards to unsuspecting drivers, BMW's omissions were material.  BMW admitted that it marketed Class Cars as just a variant of the basic i3 model but with nearly double the total range.[35]  BMW acknowledges that its i3 marketing materials and ads did not disclose to consumers the specific performance limitations of the Range Extender.[36]  Although BMW says that it relied

---

of a software fix.  *See, e.g.*, Ex. 5 at 248:7-249:9; *id.* at 247:22-23 ("that software was never developed").

[31] Ex. 28 at 00001 FIN (Adding the warning: is "[n]ecessary, short-term must-have adjustments on the basis of estimation product liability."); Ex. 29 (BMWNA-ESI-003919 at 920); Ex. 5 at 247:12-25 (indication came with March 2015 software update); *see also* Ex. 49  at 60:9-61:17 (ineffectual warning).

[32] Ex. 7 at 12.

[33] Ex. 7 at 11.

[34] Ex. 31 at 003705.

[35] Ex. 32 at 50:8-10; *id.* at 70:25-71:9 (BMW commonly advertised the REx in terms of total range, *e.g.*, "150-mile total range").

[36] *Id.* at 88:5-89:7.

-7-

on its dealers to "properly describe" the i3,[37] none of BMW's training materials advise dealers that using REx mode on highways or hills presents a limp-mode hazard (let alone revealing the speeds, grades, weather and temperature conditions likely to cause it).  BMW also did not discourage sales to customers in geographic areas where the climate and terrain made it likely for limp-mode experiences to occur, and it did not recommend offering test drives in REx mode.[38]  Not only did BMW not discourage dealers from selling Class Cars to consumers likely to encounter limp mode because they required the Range Extender to complete their commute, BMW told dealers that it was a "misconception" that the Range Extender "reduces the vehicle's speed" and that Class Cars presented a viable option for "[d]rivers who have a longer commute than average" and need "additional range" because the "charging infrastructure is not readily available."[39]

## C.     BMW's omissions were objectively deceptive.

Each Plaintiff testified that he or she was not informed of the risks and limitations of their vehicles in REx mode and would not have leased or bought their Class Cars had they known that it was unsafe to drive in REx mode on highways, hills, or in heat.[40]  Absent class members also claimed that they had been deceived by BMW's failure to disclose the limitations of the Range Extender.  After being nearly "rear ended 2x" as a result of sudden deceleration, one customer felt "defrauded by BMW because in none of our literature, manuals, or during the sales process was this

---

[37] *Id*. at 88:16-90:3; Ex. 5 at 229: 1-18.

[38] Ex. 5 at 188:23-189:3; 219:2-19; *cf*. Ex. 33 at 003910 (a warning considered but never adopted: "it's possible to deplete the high voltage battery beyond the range extender's maximum output capability on hilly terrain. Please adjust your driving speed to maintain a high voltage state of charge greater than 2%.").

[39] Ex. 34 at 3998.

[40] Braverman Decl., ¶ 8; Demirchyan Decl., ¶ 9; Green Decl., ¶ 8; Roberson Decl., ¶ 8; Tsoar Decl., ¶ 8; Weinstein Decl., ¶ 8; Curcio Decl., ¶ 7; Siddiqui Decl., ¶ 8; Olsen Decl., ¶ 9; Desatnik Decl., ¶ 8; Wonderley Decl., ¶ 8; Lingsweiler Decl., ¶ 9; Ridges Decl., ¶ 11; and Cosinteno (née Redmond) Decl., ¶ 8.

-8-

mentioned."[41]  One customer reported: "This car was misrepresented to me--I was not intending to buy a toy car that I can not even drive back and forth to work safely.  I was told that I would get a range of 157 miles in this car which is why I selected it over other electric cars."[42]   Similarly, another customer took issue with BMW's representation on its website that the Range Extender

> "approximately doubles your electric driving range so you can breathe a little easier". . . .  Considering the main use case for the range extender is for highway road trips within the 120? 130 mile range, I would expect this car to be able to handle most freeway conditions with ease.  This car cannot handle . . . the major highways at posted speed limits up the coast or central valley of California, . . .  If I knew the range extender was designed as an emergency source of power, I would have elected for the standard model without this upgrade.[43]

After experiencing a "dangerous[]" experience after the speed dropped "as low as 35 miles per hour -all of sudden- on a freeway," another customer reported, "now I know that that's an issue with all the i3[s], but nobody explained that at the moment I bought the car . . . and if I knew I would have never bought it."[44]   After a similar experience, another customer said, "going on [range] gas extender on freeway is a 'death trap,'" and he did "not remember any body warning us of that prior to purchase of this vehicle."[45]   Another objected:  "When I purchased the vehicle I was not told that the Range extender is not a 'reliable' source of power to the vehicle."[46]   One customer complained that "I really feel as though BMW DECEIVED me by not telling about the power loss that the i3's experience when the range extender is called upon. .

---

[41] Ex. 35 at 2946-47.
[42] Ex. 36 at 3067, 3080.
[43] Ex. 18 at 006805.
[44] Ex. 37 at 3009-10.
[45] Ex. 38 at 2876.
[46] Ex. 39 at 2991.

-9-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

. . I am very concerned for my safety and the safety of others when I drive the i3 and the range extender kicks in."[47]

**D.     A powerful admission: BMW fixed the defect in later models.**

By 2015, BMW had developed a "Hill Climb Assist" software update, which would have enabled the Range Extender to initiate at a higher state of charge and ameliorate the conditions that cause limp mode, but it withheld the software when ████████████████████████████████████████████████████████ ████████████████████████████[48]   Beginning with model year 2017, BMW upgraded the BMW i3 batteries to 94 a-h, which represented a 50% increase on the charge capacity. This larger battery capacity increases the available electric power when the Range Extender kicks in and improves REx performance on hills and highways.[49]   BMW received no limp mode complaints for the 2017 model year i3.[50]   BMW's parent company offered a battery upgrade to European customers for 7,000 Euros (approximately $7,900),[51] but BMW did not offer this fix to Plaintiffs or the Class members to cure the existing defect.[52]

## IV.     ARGUMENT

**A.     The Class is ascertainable.**

The Class is readily ascertainable, that is "sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member."[53]   Three conditions exist for class membership:  (i) purchase or lease of one

---

[47] Ex. 40 at 2977.

[48] Ex. 41 at 001108_FIN.

[49] Ex. 11 at 237:24-238:1; Ex. 5 at 54:7-56:7.

[50] Ex. 5 at 55:23-56:7.

[51] Ex. 42 at 7949.

[52] Ex. 43 at 005652; *see also* Ex. 5 at 61:6-19; 67:10-72:22 (retrofitting Class Cars with 94 a-h battery is technically feasible).

[53] *Shepard v. Lowe's HIW, Inc.*, 2013 WL 4488802, at *2 (N.D. Cal. Aug. 19, 2013).

-10-

of the Class Cars; (ii) before May 17, 2016, in (iii) one of the nine states.  These are precise and objective inquiries that demonstrate ascertainabilty.  *Id.*

**B.      Plaintiffs satisfy all Rule 23(a) requirements.**

Although the Court engages in a rigorous analysis of whether the Rule 23 requirements are satisfied,[54] the Court's role is "not to adjudicate the case.[55]  Concerns that "the plaintiff class cannot prove" a required element of the case *does not* "make use of the class-action device inefficient or unfair."[56]  The Court should certify the proposed Class  because each Class member, if they were to proceed to trial against BMW individually, would present the *same* plenary evidence that the Class Cars have a common design defect that affects driving safety and performance, that BMW failed to disclose this defect, and that BMW's omission was material to a reasonable person.

**1.      The Class members are so numerous that joinder would be impracticable.**

As few as 40 class members satisfies numerosity,[57] which is readily satisfied here because BMW leased or sold approximately 11,000 Class Cars in the nine relevant states, ranging from 87 cars in Tennessee to 8,729 in California.[58]

**2.      Numerous common questions of law and fact exist because the focus is on BMW's common course of conduct.**

To satisfy commonality, Plaintiffs must identify a "common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[59]  This is satisfied when "the same evidence will suffice for each member to

---

[54] *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

[55] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).

[56] *Id.* at 470.

[57] *Martin v. Monsanto Co.*, 2017 U.S. Dist. LEXIS 135351, at *8 (C.D. Cal. Mar. 24, 2017).

[58] Ex. 44 at 003242 (relevant sales data by state); Ex. 45 (relevant BMW interrogatory responses).

[59] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

-11-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

make a prima facie showing [or] the issue is susceptible to generalized, classwide proof."[60]  In automobile defect cases, commonality is often "easily satisf[ied]" where claims "involve," among other things, "the same alleged defect" found "in vehicles of the same make and model."[61]  Importantly, "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality."[62]

On behalf of Class members in California, Florida, Michigan, Texas, and Utah, Plaintiffs assert breach of implied warranty in violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq*.) and under the Song-Beverly Act in California.    Implied warranties were breached because the Range Extender is defectively designed and causes serious performance and safety concerns, including sudden deceleration and reduced power at highway speeds.  Class members' "implied warranty claim" is "susceptible of common proof" because it "requires an objective standard,"[63] which is identical under the laws of each relevant state.[64]

---

[60] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, pp. 196-197 (5th ed. 2012) (internal quotation omitted)).

[61] *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010); *see also, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012) (finding commonality relating to uniform rear suspension defect); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (finding commonality when Ford knew but concealed the risk that intake manifolds would prematurely crack); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016) (commonality satisfied where GM inaccurately communicated vehicle safety ratings "allow[ing] it to command a price premium").

[62] *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

[63] *Tait v. BSH Home Appliances*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) (certifying California, New York, and Magnuson-Moss Warranty Act claims).

[64] **CA**–Cal. Com. Code § 2314; Cal. Civ. Code § 1791.1; **FL**–Fla. Stat. § 672.314; **MI**–Mich. Comp. Laws § 440.2314; **TX**–Tex. Bus. & Com. Code § 2.314; **UT**–Utah Code Ann. § 70A-2-314.

-12-

On behalf of Class members in California, Florida, Illinois, Michigan, Ohio, Tennessee, Texas, Utah, and Washington, Plaintiffs also assert consumer protection act violations.[65] And for the same reason, Plaintiffs bring claims for fraud by concealment on behalf of Class members in California, Michigan, Ohio, Texas, Tennessee, Utah, and Washington, because BMW's failure to disclose the Range Extender defect was likely to deceive a reasonable consumer at point of sale. Common questions exist for the consumer protection and fraud by concealment claims in each of the relevant states.

The claims of all members involve the *same* common defect. Additional common issues include:  whether BMW was aware of and concealed the defect; whether BMW's omissions were material; whether BMW's law violations harmed Plaintiffs and the members of the Class; and what relief, if any, are Plaintiffs and the Class entitled to.  Proof of BMW's knowledge of the defect, for example, will focus solely on BMW's conduct and will necessarily be common—indeed, identical—for each Class member.  These issues, which can be resolved on a class-wide basis, are central to the validity of the claims in this litigation, and the commonality requirement is thus met.[66]

---

[65] Plaintiffs assert the following consumer claims: **CA**–UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*; FAL, Cal. Bus. & Prof. Code § 17500, *et seq.*; CLRA, Cal. Bus. & Prof. Code § 1750, *et seq.*; **FL**–Florida UDPTA, Fla. Stat. § 501.201, *et seq.*; **IL**–Illinois CFA, 815 Ill. Comp. Stat. 505/1, *et seq.* & 720 Ill. Comp. Stat. 295/1a; **MI**–Michigan CPA, Mich. Comp. Laws § 445.903, *et seq.*; **OH**–Ohio CSPA, Ohio Rev. Code § 1345.01, *et seq*; **TN**–Tennessee CPA, Tenn. Code § 47-18-101, *et seq.*; **TX**–Texas DTPA, Tex. Bus. & Com. Code § 17.41, *et seq.*; **UT**–Utah CSPA, Utah Code Ann. § 13-11-1, *et seq.*; and **WA**–Washington CPA, Wash. Rev. Code § 19.86.010, *et seq.*

[66] *See Wolin*, 617 F.3d at 1172 (commonality threshold "easily satisfied" based on several core, common issues, including: "1) whether the [vehicles'] alignment geometry was defective; 2) whether Land Rover was aware of this defect; 3) whether Land Rover concealed the nature of the defect; 4) whether Land Rover's conduct violated the Michigan Consumer Protection Act or the Florida Deceptive and Unfair Trade Practices Act; and 5) whether Land Rover was obligated to pay for or repair the alleged defect pursuant to the express or implied terms of its warranties."); *Chamberlan*, 402 F.3d at 962 (examples of common issues included "(1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of

-13-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

**3.     Plaintiffs' claims are typical of Class members' claims because the claims arise from BMW's common course of conduct.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Typicality is satisfied when "the action is based on conduct which is not unique to the named plaintiffs" and which caused "the same or similar injury" to Plaintiffs and absent class members alike, and the named Plaintiffs are not subject to "unique defenses which threaten to become the focus of the litigation."[67]  Plaintiffs assert the same economic injuries, individually and on behalf of the Class, arising from the BMW's common conduct, and there are no individual defenses that threaten to overshadow the case.  Thus, Plaintiffs' claims are typical.  Typicality is readily satisfied in cases like this one, where all class members are alleged to have suffered injury as a result of the same conduct by BMW.

**4.     Plaintiffs and their counsel will adequately represent the Class.**

Rule 23(a)(4) requires the class representatives to "fairly and adequately protect the interests of the class."  The Court considers whether the named Plaintiffs have "any conflicts of interest with other class members" and will "act vigorously on behalf of the class."[68]  Plaintiffs, who share the same interest in proving and recovering the damages caused by BMW's omission and have actively served the Class thus far by, among other things, producing documents and traveling to attend their depositions,

---

alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA"); *Motley v. Jaguar Land Rover N. Am., LLC,* 2012 Conn. Super. LEXIS 2701, at *11 (Conn. Super. Ct. Nov. 1, 2012) ("[T]he claims of the plaintiffs here all have the same 'glue' holding the questions and answers together for the class claims.  All prospective class members own or lease the same vehicle models, allege the same factory defect, allege the same policy by Land Rover, and allege the same warranty at issue.").

[67] *Trujillo v. Unitedhealth Grp., Inc.*, 2019 U.S. Dist. LEXIS 21927, at *19 (C.D. Cal. Feb. 4, 2019) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

[68] *Calvert v. Red Robin Int'l, Inc.*, 2012 WL 1668980, at *2 (N.D. Cal. May 11, 2012) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  Adequacy of counsel is now addressed under Rule 23(g).

-14-

1
2
3

meet the adequacy requirement because "Plaintiffs have no conflict of interest with other class members, and have been and will continue prosecuting the action vigorously on behalf of the class."[69]

4
5
6
7
8
9
10
11
12
13
14
15
16

The Court evaluates counsel based on (i) their work in identifying and investigating Plaintiffs' claims; (ii) their experience in similar cases; (iii) their knowledge of applicable law; and (iv) the resources to commit to prosecuting the action.[70]  Each of these considerations weighs in favor of Interim Class Counsel, who have extensive experience in successfully prosecuting consumer class actions throughout the United States, including in this District.[71]  Interim Class Counsel have demonstrated vigorous and effective prosecution on behalf of the proposed Class, including conducting a comprehensive pre-filing investigation, preparing and filing detailed complaints, responding to BMW's multiple motions to dismiss, reviewing thousands of documents, employing German-language translators, traveling to Europe for a deposition, purchasing a Class Car for testing, and hiring multiple highly qualified experts to determine liability, causation, and damages theories.  Proposed class counsel are adequate and satisfy the Rule 23(g) factors.

17

**C.     The Class satisfies the Rule 23(b)(3) predominance and superiority requirements.**

18
19
20
21
22
23
24

Rule 23(b)(3) allows a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."[72]  A common question "is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized class-wide proof.'"  *Tyson Foods*, *Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §

25
26
27
28

---

[69] *Trujillo*, 2019 U.S. Dist. LEXIS 21927, at *20.

[70] Fed. R. Civ. P. 23(g)(1)(A)(i).

[71] *See* Ex. 48.

[72] Fed. R. Civ. P. 23(b)(3).

-15-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

4:50, at 196-97 (5th ed. 2012) ("NEWBERG")).  In contrast, an individual question "is one where 'members of a proposed class will need to present evidence that varies from member to member.'"  *Id.*  Predominance of common issues does not require that common questions completely dispose of the litigation.[73]  Instead, when common questions present a significant aspect of the case such that "the plaintiffs' claims will prevail or fail in unison," handling the dispute on a class basis is justified.[74]  Plaintiffs are not required to demonstrate that they win on every issue at this stage; only that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[75]

Common issues will predominate the trial of Plaintiffs' claims.  The key evidence necessary to establish Plaintiffs' claims is common to all members of the Class, who must prove, among other things, that the Class Cars have a common defect and that BMW's conduct was uniformly wrongful.  The evidence changes little if there are 100 Class members or thousands: either way, Plaintiffs would, for instance, present the *same* evidence that BMW was aware of the defect and concealed it, and that BMW caused economic loss to Plaintiffs and the Class.  Courts often find that such issues predominate in auto defect class actions,[76] as the following count-by-count analysis highlights.

---

[73] *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

[74] *Abdullah v. U.S. Sec. Assocs. Inc.*, 731 F.3d 952, 967 (9th Cir. 2013) (quoting *Amgen Inc.*, 568 U.S. at 460).

[75] *Amgen*, 568 U.S. at 459.

[76] *See, e.g.*, *Wolin*, 617 F.3d at 1173 (common issues predominate such as whether Land Rover was aware of and had a duty to disclose the defect and violated consumer protection laws); *Keegan*, 284 F.R.D. at 532-34 (predominance found under UCL and CLRA based on common evidence of the defect, it's impact on vehicle safety, Honda's knowledge, and what Honda disclosed to consumers); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (predominating common issues under the CLRA and UCL include defendant's knowledge of the defect, whether it had a duty to disclose and did so, whether the failure to disclose was material to a reasonable consumer, and violated the CLRA and UCL); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. at 526-27 (common questions predominate such as "whether the design of the plastic intake manifold was defective, whether Ford was aware of the

-16-

1

### 1.    Common questions of fact and law related to implied warranty will predominate over individual inquiries.

Courts routinely certify implied warranty claims under the relevant state laws.[77] Breach of implied warranty is defined by each state as failing to provide a product that "pass[es] without objection in the trade" or is "fit for the ordinary purposes for which such goods are used."[78]  Each state requires proof that the product is defective at the time of sale and that the defect is the proximate cause of class members' injury.[79] Each state permits economic losses as a result of a sale of goods, measured by the

---

alleged design defects, whether Ford had a duty to disclose its knowledge, whether it failed to do so, whether the facts that Ford allegedly failed to disclose were material, and whether the alleged failure to disclose violated the CLRA"), *petition denied*, 402 F.3d 952 (9th Cir. 2005); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681-82 (S.D. Fla. 2009)  (the "critical issue of whether the [airbag system] was defective is common to all putative class members" and "predominates over the individual issues"); *Carriuolo*, 823 F.3d at 989 (predominance satisfied where plaintiffs alleged "consistent" theories of liability and damages for all class members, including whether GM inaccurately communicated vehicle safety ratings "allow[ing] it to command a price premium"); *Gen. Motors Corp. v. Bryant*, 285 S.W.3d 634, 639 (Ark. 2008) (whether defect existed in class vehicles and "whether or not General Motors concealed that defect are predominating questions").

[77] **CA**–*See, e.g.*, *Tait*, 289 F.R.D. at 485 (certifying California, New York, and Magnuson-Moss Warranty Act claims); *Keegan*, 284 F.R.D. at 552 (certifying Song-Beverly Act implied warranty claims); **FL**–*Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675 (S.D. Fla. 2009) (certifying class of Florida vehicle owners and lessees against manufacturer on breach of implied warranties, *inter alia*, for failure to disclose vehicle defect); **MI**–*Lackowski v. Twinlab Corp.*, 2001 U.S. Dist. LEXIS 25634, at *28 (E.D. Mich. Dec. 28, 2001) (certifying implied warranty claim against dietary supplement distributor); **TX**–*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) (approving certified Texas class for implied warranty claim because existence of defect would not vary from plaintiff to plaintiff: because "the inquiry is focused on the time the goods left the manufacturer's or seller's possession") (quotation and citation omitted); **UT**–*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *7 (N.D. Cal. Aug. 25, 2016) (final approval order approving settlement of claims not dismissed with prejudice); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) (declining to dismiss Utah implied warranty claim).

[78] **CA**–Cal. Com. Code § 2314(2); Cal Civ. Code § 1791.1; **FL**–Fla. Stat. § 672.314; **MI**–Mich. Comp. Laws § 440.2314; **TX**–Tex. Bus. & Com. Code § 2.314; **UT**–Utah Code Ann. § 70A-2-314.

[79] **CA**–*Jones v. Credit Auto Ctr. Inc.*, 237 Cal. App. 4th Supp. 1, 10 (2015); **FL**–*Diversified Prods. Corp. v. Faxon*, 514 So. 2d 1161, 1162 (Fla. Dist. Ct. App. 1987); **MI**–*Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 339 (Mich. 1995); **TX**–*Gutierrez v. Komatsu Am. Corp.*, 2003 U.S. Dist. LEXIS 20944, at *8 (N.D. Tex. Nov. 20, 2003); **UT**–*Ernest E. Fadler Co. v. Hesser*, 166 F.2d 904, 907 (10th Cir. 1948) (applying Utah law).

-17-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

difference in value of the product received and the product as warranted.[80] Alternatively, under each of the state's laws, Plaintiffs may establish class-wide damages by estimating the uniform cost to repair or to correct the defect.[81]

### 2. Common questions of fact and law related to fraud claims will predominate over individual inquiries.

Plaintiffs' consumer protection[82] and fraud by concealment claims are also suitable for class treatment. The elements of each state's consumer fraud statutes are substantially similar and capable of class-wide proof. Each state prohibits a failure to disclose material facts in the sale of goods or services.[83] Each statute permits claims

---

[80] **CA**–Cal. Com. Code § 2714; Cal. Civ. Code § 1793.2(d)(1); **FL**–Fla. Stat. § 672.314; **MI**–Mich. Comp. Laws § 440.2714; **TX**–Tex. Bus. & Com. Code § 2.714; **UT**–Utah Code Ann. § 70A-2-314.

[81] **CA**–*Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 187 (1994); Cal. Civ. Code § 1794; **FL**–45 Fla. Jur. Sales and Exchanges of Goods § 245; **MI**–*Chambers v. Gen. Trailer Mfg.*, 2006 U.S. Dist. LEXIS 45199, at *8 (E.D. Mich. July 5, 2006); **TX**–*Cc Carpet v. Loftus*, 1999 Tex. App. LEXIS 5697, at *6 (Tex. App. July 15, 1999); **UT**–Extensive research has not uncovered any decision applying Utah law that calls into question repair costs as the measure of damages for a breach of implied warranty.

[82] *See* footnote 65, *supra*.

[83] **CA**–*Daniel v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 65723, at *11 (E.D. Cal. May 17, 2016) (requiring disclosure of known defect under UCL and CLR); **FL**–*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 840 (S.D. Ohio 2012) (A "FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value.") (quotations, citation omitted); **IL**–*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996) (A defendant's failure to disclose defects that present a known safety risk to consumers is an actionable misrepresentation under Illinois Consumer Fraud Act.); **MI**–Mich. Comp. Laws 445.903(s) (Violations of the Michigan CPA include the failure "to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."); **OH**–*In re Porsche*, 880 F. Supp. 2d at 871 ("Omissions are actionable under the OCSPA if they concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved.") (quotations, citation omitted); **TN**–Tenn. Code Ann. § 47-18-104 (b)(5) (prohibiting representations that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have); **TX**–Tex. Bus. & Com. Code § 17.46 (b) (24) (Deceptive practices include "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[.]"); **UT**–Utah Code Ann. § 13-11-4(2)(a) (including knowing and intentionally indicating that a product has "performance characteristics, accessories, uses, or benefits, if it has not"); **WA**–*Van

-18-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

1  against manufacturers or distant sellers.[84]   None of the state statutes requires an

2  individualized showing of reliance for material omissions claims; rather, courts apply

3  an objective materiality test to determine whether the practice was likely to deceive a

4  consumer acting reasonably.[85]   Likewise, for common law fraudulent concealment, a

5

6  *Dinter v. Orr*, 138 P.3d 608, 610 (Wash. 2006) (A duty to disclose arises "when the facts are peculiarly within the knowledge of one person and could not be readily obtained by the other.").

7  [84] **CA**–Cal. Civ. Code § 1780 ("Any consumer who suffers any damage as a result
8  of the use or employment by any person of a method, act, or practice declared to be
   unlawful by Section 1770 may bring an action against that person…."); **FL**–Fla. Stat.
9  § 501.204 (prohibiting unfair, deceptive or unconscionable conduct "in the conduct of
   any trade or commerce"); **IL**–815 ILCS 505/2 (broadly prohibiting "[u]nfair methods
10 of competition and unfair or deceptive acts or practices, unconscionable, or deceptive
   methods, acts, or practices . . . in the conduct of trade or commerce"); **MI**–Mich.
11 Comp. Laws § 445.903(1) (broadly prohibiting "[u]nfair, unconscionable, or deceptive
   methods, acts, or practices in the conduct of trade or commerce"); **OH**–Ohio Rev.
12 Code § 1345.02 (A) ("No supplier shall commit an unfair or deceptive act or practice
   in connection with a consumer transaction."); **TN**–Tenn. Code Ann. § 47-18-102(2)
13 (statute protects against "unfair or deceptive acts or practices in the conduct of any
   trade or commerce"); **TX**–Tex. Bus. & Com. Code § 17.50 (a)(1) (permits recovery
14 for "the use or employment by any person of a false, misleading, or deceptive act or
   practice . . ."); **UT**–Utah Code Ann. § 13-11-3(6) ("supplier" includes any "person
15 who regularly solicits, engages in, or enforces consumer transactions, whether or not
   he deals directly with the consumer"); **WA**–Wash. Rev. Code § 19.86.020 (prohibiting
16 unfair or deceptive practices in trade or commerce).

   [85] **CA**–*Bautista v. Valero Mktg. & Supply Co.*, 322 F.R.D. 509, 512, 515 (N.D.
17 Cal. 2017) (certifying CLRA, FAL, and UCL claims; plaintiff "need only show that
   [defendant] produced marketing materials with a material omission that could mislead
18 a significant portion of the general consuming public"); **FL**–*Carriuolo*, 823 F.3d at
   985 ("A party asserting a deceptive trade practice claim need not show actual reliance
19 on the representation or omission at issue."); **IL**–*Cannon v. Nationwide Acceptance
   Corp.*, 1997 U.S. Dist. LEXIS 20019, at *11 (N.D. Ill. Dec. 9, 1997) ("Individual
20 reliance need not be shown for claims brought under . . . the Illinois Consumer Fraud
   Act."); **MI**–*Dix v. Am. Bankers Life Assur. Co. of Fla.*, 415 N.W.2d 206, 209 (Mich.
21 1987) (in a class action, it is sufficient to show that "a reasonable person would have
   relied on the representations"); **OH**–*In re Ford Motor Co. Spark Plug & 3-Valve
22 Engine Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 103944, at *87 (N.D. Ohio July 30,
   2014) (Reliance is not a requirement under the Ohio Consumer Sales Practices Act.);
23 **TN**–*SecurAmerica Bus. Credit v. Schledwitz*, 2014 Tenn. App. LEXIS 178, at *71
   (Tenn. Ct. App. Mar. 28, 2014) ("[I]n TCPA cases involving misrepresentation, a
24 plaintiff is not required to show reliance upon a misrepresentation in order to maintain
   a cause of action[.]") (quotations, citation omitted);**TX**–*Dzielak v. Whirlpool Corp.*,
25 2017 U.S. Dist. LEXIS 209106 (D.N.J. Dec. 20, 2017) (certifying class alleging they
   were overcharged a "price premium" because of defendant's allegedly deceptive
26 "Energy Star label" under multiple state statutes including Texas DTPA); *In re
   ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1018 (C.D. Cal. 2015) ("Plaintiffs' Texas
27 consumer protection claim may be susceptible of classwide proof if plaintiffs can
   show the materiality of ConAgra's representation on a classwide basis."); **UT**–*Miller*

28

-19-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

duty to disclose exists when a representation is misleading by omission, and class-wide proof of reliance is presumed when the omission is material.[86]

### 3. Plaintiffs provide a common methodology of proving class-wide impact and damages.

At class certification, Plaintiffs "must be able to show that their damages

---

*v. Basic Research, LLC*, 285 F.R.D. 647, 660 (D. Utah 2010) (Individual reliance (due to varying exposure to advertisements) relates to damages not liability); **WA**–*Vernon v. Qwest Commc'ns. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1268 (W.D. Wash. 2009) (re CPA, "Washington courts do not require a plaintiff to allege individual reliance on Defendants' conduct, particularly where the non-disclosure of a material fact is alleged.").

[86] **CA**–*Boeken v. Philip Morris, Inc.*, 127 Cal. App. 4th 1640, 1660 (2005) (The duty to disclose information arises upon the utterances of the half-truths.); *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 969 (S.D. Cal. 2016) (Under California law, reliance may be inferred on a class-wide basis when the same material misrepresentations or omissions have been actually communicated to each member of a class.); **MI**–*Elliott v. Therrien*, 2010 Mich. App. LEXIS 166, at *15-16 (Mich. Ct. App. Jan. 26, 2010) (duty to disclose arises when "the defendant makes incomplete replies that are truthful in themselves but omit material information"); *Gasperoni v. Metabolife*, 2000 U.S. Dist. LEXIS 20879, at *19-20 (E.D. Mich. Sept. 27, 2000) (Under Michigan law, a "claim for fraudulent omission does not require any proof of actual reliance. . . . As such, it is amenable to class treatment."); **OH**–*Word of God Church v. Stanley*, 2011 Ohio App. LEXIS 1770, at *19 (Ohio Ct. App. Apr. 29, 2011) (Duty to disclose "arises when full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts.") (quotations, citation omitted); *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 629 (Ohio Ct. App. 1982) (in case certifying both common law fraud and consumer fraud claims, "reliance may be inferred from circumstances which sometimes provide strong[] evidence of inducement[.]"); **TN**–*Bridgestone Am.'s, Inc. v. IBM*, 172 F. Supp. 3d 1007, 1018 (M.D. Tenn. 2016) ("a seller must disclose enough information to prevent its statements from being misleading"); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 312 (Tenn. 2008) (common law fraud claims may be certified as a class action if the "misrepresentations were uniform"); **UT**–*First Sec. Bank N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330 (Utah 1990) (a party to a transaction has a duty to disclose "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading"); *See Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 543 (Utah 1983) ("Where representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that representations were relied upon.") (quotations, citations omitted); **WA**–*Gilliland v. Mt. Vernon Hotel Co.*, 321 P.2d 558, 561 (Wash. 1958) ("When one is asked for information, he may decline, but if answer is undertaken, he must tell the whole truth."); *See Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 886, 391 P.3d 582, 588 (Wash. Ct. App. 2017) ("[R]eliance is 'virtually impossible to prove' in cases involving nondisclosure of material facts" and "Washington courts have adopted a rebuttable presumption of reliance for omissions of material fact in franchise fraud and securities fraud cases[.]") (footnotes and citations omitted).

-20-

1  stemmed from the defendant's actions that created the legal liability," and are capable

2  of measurement on a class-wide basis.[87]   The existence of individualized damage

3  issues does not defeat predominance when damages can be modeled based on a

4  measure of common proof.[88]   Plaintiffs satisfy this requirement through the expert

5  reports of Mr. Steven Gaskin and Colin Weir, which provide a common method of

6  proving economic injury and a common method of calculating Class members'

7  economic losses.

8         The California Plaintiffs' common law fraud, Unfair Competition Law and

9  False Advertising Law claims permit recovery of "the excess of what the plaintiff gave

10  the defendant over the value of what the plaintiff received."[89]   Under their remaining

11  claims, Plaintiffs are entitled to the difference in value between what they bargained

12  for and what they received.[90]   A choice-based survey known as a conjoint analysis is

13

14

15

16         [87] *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

         [88] *Id.*

17         [89] *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015)
18  (UCL, FAL); *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995) (remedy
   for fraud in the inducement in California is "the difference in actual value at the time
   of the transaction between what the plaintiff gave and what he received").

19         [90] Plaintiffs are entitled to the benefit of the bargain under their implied warranty
20  claims (*supra* note 80). Outside of California, it is also the recognized measure of
   damages for fraud in the inducement (**MI**–*Zandstra v. Stewart*, 203 N.W.2d 748, 749
21  (Mich. 1972); **OH**–*Starinki v. Pace*, 535 N.E.2d 328, 330 (Ohio Ct. App. 1987); **TN**–
   *Johnson v. Welch*, 2004 Tenn. App. LEXIS 86, at *63 (Tenn. Ct. App. Feb. 9, 2004);
22  **TX**–*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs., Inc.*, 960 S.W.2d 41,
   49 (Tex. 1998); **UT**–*Lamb v. Bangart*, 525 P.2d 602, 609 (Utah 1974); **WA**–*Enger v.*
23  *Richards*, 2006 Wash. App. LEXIS 2079, at *11 (Wash. Ct. App. Sept. 18, 2006). It
   is a recognized measure of damages for the following consumer fraud claims: **CA**–
24  Cal. Civ. Code § 1780(a) (CLR); **FL**–*Carriuolo*, 823 F.3d at 986 (FDUTPA); **MI**–
   *Plymouth Pointe Condo. Ass'n v. Delcor Homes-Plymouth Pointe*, 2003 Mich. App.
25  LEXIS 2742, at *26 (Mich. Ct. App. Oct. 28, 2003) (MCPA); *State v. Rose Chevrolet,*
   *Inc.*, 1993 Ohio App. LEXIS 3281, at *3-4 (Ohio Ct. App. June 28, 1993) (OCSA);
26  **TN**–*Spence v. Moody*, 1987 Tenn. App. LEXIS 3078, at *8 (Tenn. Ct. App. Nov. 18,
   1987) (TCPA); **TX**–*Everett v. TK-Taito, LLC*, 178 S.W.2d 844, 858 (Tex. Ct. App.
27  2005) (TDTPA); **UT**–Utah Code Ann. § 13-11-19(2) (UCSPA); **WA**–Wash. Rev.
   Code § 19.86.090 (WCPA).

28                                          -21-

1    an accepted method of measuring overcharges under both remedies.[91]

2           Conjoint analysis is a commonly used quantitative market value measurement,

3    and consists of a series of questions that ask survey respondents to select a most

4    preferred product among several available options with different attributes and

5    prices.[92]  Mr. Gaskin's conjoint analysis has been accepted and relied on by federal

6    courts in other cases involving consumer litigation.[93]  Here, he designed and

7    implemented a conjoint survey to measure the difference in the market value of a

8    BMW i3 with the Range Extender defect, compared to the value of an otherwise

9    identical BMW i3 without the Range Extender defect at the point of first purchase.[94]

10   He then conducted a Hierarchical Bayes regression to calculate the relative influence

11   each attribute has on the respondents' purchase decisions.[95]  The results confirm that

12   BMW's omissions were material and permitted it to systematically overcharge Class

13   members a 12.9% premium for Class Cars.[96]

14          The economic analysis of Plaintiffs' expert economist, Colin Weir, has been

15   accepted and relied upon by federal courts in other cases involving consumer

16

17

18

19        [91] *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal.
     2018) ("[C]onjoint analysis is widely-accepted as a reliable economic tool for isolating
20   price premia" (certifying UCL and breach of express and implied warranty claims);
     *Clay v. Cytosport, Inc.*, 2018 U.S. Dist. LEXIS 153124, at *36 (S.D. Cal. Sept. 7,
21   2018) (conjoint analysis accepted as common method of damages and certifying
     FDUTPA and MCPA claims); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1026
22   (conjoint analysis accepted as common method of damages and certifying implied
     warranty claims, UCL, CLRA, and FAL; FDUTPA; OCSPA, TDTPA claims);
23   *Zakaria v. Gerber Prods. Co.*, 2016 U.S. Dist. LEXIS 184861, at *45 (C.D. Cal. Mar.
     23, 2016) (conjoint analysis accepted as common method of calculating damages and
24   certifying breach of warranty, UCL, FAL, and CLRA claims).

     [92] Ex. 46, ¶¶ 12-13.
25        [93] *See, e.g.*, *Hadley*, 324 F. Supp. 3d 1084.

26        [94] Ex. 46, ¶ 21.

27        [95] *Id.*, ¶¶ 16-19, 46-49.

     [96] *Id.*, ¶¶ 50-57.
28                                          -22-

litigation.[97]   Applying similar methods here, Mr. Weir used BMW sales volume data, BMW dealer and named Plaintiff pricing data, and the 12.9% price premium to estimate total, class-wide overpayment damages of approximately $37 million ($29,293,495.33 for leases and $8,082,204.68 for purchases).[98] As an alternative method of estimating the amount that Class members overpaid for a defective product, Plaintiffs rely on the estimated cost to repair Class Cars by upgrading their batteries. Repair costs are a recognized measure of the damages for implied warranty and fraud claims.[99]   Purchasing a complete set of 94 a-h batteries at retail could cost as much as $18,000.[100]   As a more conservative estimate, Plaintiffs propose relying on the 7,000 Euros (about $7,919), the amount that BMW's parent company charges European customers to swap out the old batteries for the new.[101]   Under this measure, each Plaintiff who purchased a Class Car was overcharged $7,919, and each lessee was overcharged by approximately $3,841.   Under this alternative measure, Mr. Weir estimates class damages at approximately $48 million ($37,654,843.68 for leases and $10,389,137.60 for purchases).[102]

---

[97] *See, e.g.*, *Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 606 (N.D. Cal. 2018); *Schechner v. Whirlpool Corp.*, 2019 WL 978934 (E.D. Mich. Feb. 28, 2019).

[98] Ex. 47, ¶¶ 51-60.

[99] *See supra* note 81 (implied warranty); Cal. Civ. Code § 1794; *In re Sohaei*, 2013 Bankr. LEXIS 241, at *5-7 (Bankr. N.D. Cal. Jan. 17, 2013). "[A] court can consider the need for and the cost of repairs in determining the 'actual value' of property the property received by a defrauded purchaser."); *Plymouth Pointe*, 2003 Mich. App. LEXIS 2742, at *26 (cost of repair an accepted measures of damages for MCPA claims); *Helfrich v. Strickland*, 2009 Ohio App. LEXIS 4055, at *9 (Ohio Ct. App. Sept. 11, 2009) ("[T]he cost of repair or replacement is a fair representation of damages under the benefit of the bargain rule and is a proper method for measuring damages."); *Ortiz*, 761 S.W.2d at 536 (Cost of repair permitted under the TDTPA).

[100] https://parts.bmwnorthwest.com/p/BMW__i3-94Ah/Cell-module--high-voltage-accumulator/68020982/61278647912.html?partner=googlebase_adwords&kwd=&origin=pla&gclid=EAIaIQobChMInbfs0K254AIVD_5kCh1kyg3MEAQYAiABEgIF5fD_BwE (8 modules = 8 x $2,242.91).

[101] Ex. 47, ¶ 50.

[102] *Id.*, ¶ 61.

-23-

**4.      A class action is a superior method of adjudicating this dispute.**

Rule 23(b) is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[103]   Consequently, a class action must be superior to other available methods of fair and efficient adjudication.  Fed. R. Civ. P. 23(b)(3).

The first and third non-exclusive factors consider "the class members' interests in individually controlling the prosecution or defense of separate actions" and "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."   Rule 23(b)(3)(A), (C).  The value of the claims is simply too low here to incentivize many Class members to litigate their claims individually and weighs in favor of concentrating the claims in a single forum.  This is especially true given the high cost of marshalling the evidence necessary to litigate the claims at issue and the disparity in resources between the typical Class member and a well-funded, litigation-savvy defendant like BMW.  As discussed above, Plaintiffs' counsel have already devoted significant resources to this case.  No individual litigant pursuing a purely economic loss case could invest the same resources; already-strapped judicial resources will also be conserved via class certification.[104]

The next factor—the extent and nature of any similar litigation (Rule 23(b)(3)(B))—also favors class certification.  Numerous cases were consolidated in this Court, indicating that having a single case makes sense.  The final superiority factor— "the likely difficulties in managing a class action" (Rule 23(b)(3)(D))—focuses on whether "'the complexities of class action treatment outweigh the benefits of

---

[103] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

[104] *See Wolin*, 617 F.3d at 1176; *Parkinson*, 258 F.R.D. at 597; *Hartless v. Clorox Co.*, 273 F.R.D. 630, 639 (S.D. Cal. 2011).

-24-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

010616-11/1111557 V1

considering common issues in one trial. . . .'"[105]   The question is whether multiple individual lawsuits would be more manageable than a class action, and not whether trying the class claims is easy.[106]   Indeed, this fourth factor "will rarely, if ever, be in itself sufficient to prevent certification."[107]   Given that the salient issues in this case will be resolved by common proof, this case can be tried in an efficient manner, and Plaintiffs do not foresee any serious manageability problems and certainly none that make thousands of individual actions a better alternative.  "Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of 'time, effort and expense, and promote uniformity of decision.'"[108]

## V.    CONCLUSION

Plaintiffs' proposed Class is ascertainable and meets the Rule 23 requirements of numerosity (the proposed classes reach in the thousands), commonality (numerous common questions exist), typicality (Plaintiffs' claims are identical to those of Class members), and adequacy (interests are aligned).   Common questions and evidence predominate. Class treatment is the superior method for adjudicating the case. The Court should certify the proposed Class and appoint Hagens Berman Sobol Shapiro LLP as class counsel.

---

[105] *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 302 (C.D. Cal. 2011) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001)).

[106] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1273 (11th Cir. 2004).

[107] *Id.*; *see also In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).

[108] *In re U.S. FoodServ. Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Rule 23 Advisory Committee's Notes); *see also Keegan*, 284 F.R.D. at 550-51.

1    DATED: March 29, 2019                HAGENS BERMAN SOBOL SHAPIRO LLP

2
                                          By: */s/ Steve W. Berman*
3                                            Steve W. Berman (*pro hac vice*)
                                          Barbara A. Mahoney (*pro hac vice*)
4                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1301 Second Avenue, Suite 2000
5                                         Seattle, WA 98101
                                          Telephone: (206) 623-7292
6                                         Facsimile: (206) 623-0594
                                          Email: steve@hbsslaw.com
7                                         Email: barbaram@hbsslaw.com

8                                         Christopher Pitoun (SBN 290235)
9                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                          301 North Lake Avenue, Suite 920
10                                        Pasadena, CA 91101
                                          Telephone: (213) 330-7150
11                                        Facsimile: (213) 330-7150
                                          Email: christopherp@hbsslaw.com
12
                                          *Interim Lead Counsel for Plaintiffs and the*
13                                        *Proposed Class*

14
                                          Benjamin F. Johns (*pro hac vice*)
15                                        Andrew W. Ferich (*pro hac vice*)
                                          CHIMICLES & TIKELLIS LLP
16                                        361 West Lancaster Avenue
                                          Haverford, PA 19041
17                                        Telephone: (610) 642-8500
                                          Facsimile: (610) 649-3633
18                                        Email: bfj@chimicles.com
                                          Email: awf@chimicles.com
19
20                                        Jonathan A Michaels
21                                        MLG AUTOMOTIVE LAW APLC
                                          2801 West Coast Highway, Suite 370
22                                        Newport, CA 92663
                                          Telephone: (949) 527-6900
23                                        Facsimile: (949) 581-6908
                                          Email: jmichaels@mlgautomotivelaw.com
24

25

26

27

28
                                         -26-

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS
BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hovanes Margarian (SBN 246359)
THE MARGARIAN LAW FIRM
801 N. Brand Blvd., Suite 210
Glendale, CA 91203
Telephone: (818) 553-1000
Email: hovanes@margarianlaw.com

*Other Plaintiffs' Counsel*

PLS' NOTICE OF MTN & MTN FOR CLASS CERT., APPOINTMENT OF CLASS REPS. AND OF HAGENS BERMAN SOBOL SHAPIRO LLP AS CLASS COUNSEL