# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1
2

Steve W. Berman (*pro hac vice*)
  *steve@hbsslaw.com*
Barbara A. Mahoney (*pro hac vice*)
  *barbaram@hbsslaw.com*

3

HAGENS BERMAN SOBOL SHAPIRO LLP

4

1301 Second Avenue, Suite 2000
Seattle, WA 98101

5

Telephone: (206) 623-7292
Facsimile: (206) 623-0594

6

Christopher Pitoun (SBN 290235)
  *christopherp@hbsslaw.com*

7

HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920

8

Pasadena, CA 91101
Telephone: (213) 330-7150

9

Facsimile: (213) 330-7152

10

*Interim Lead Counsel for Plaintiffs and
the Proposed Class*

11
12

*[Additional Counsel on Signature Page]*

13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15

WESTERN DIVISION

16

BARRY BRAVERMAN, *et al.*,

No. 8:16-cv-00966-TJH-SS

17

Plaintiffs,

**PLAINTIFFS' REPLY IN
SUPPORT OF MOTION FOR
CLASS CERTIFICATION**

18

vs.

19

BMW OF NORTH AMERICA, LLC,
*et al.*,

[Filed concurrently with Declaration
of Steve W. Berman In Support of
Plaintiffs' Reply In Support of Mtn
for Class Certification]

20
21

Defendants.

22
23
24

Hearing Date: TBD
Time: TBD
Judge: Hon. Terry J. Hatter, Jr.
Courtroom: 9B

25
26
27
28

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  ARGUMENT ............................................................................................ 2

A.   Plaintiffs' strategic decision to seek certification of only those claims and those damages suitable for class treatment supports Plaintiffs' adequacy. ............................................... 2

B.   Common issues of fact and law predominate for Plaintiffs' consumer protection and fraud by concealment claims. .......................... 3

1.   California law does not require proof of individual exposure and reliance for absent class members in material omissions cases. ................................................... 4

a.   All class members were exposed to the same source of information (dealers), through whom BMW could have disclosed the defect to the Class. ..................................................... 5

b.   The class-wide presumption of reliance does not depend on a complete absence of any public information about the defect. ................................ 6

c.   Materiality is an objective standard that can be decided on Plaintiffs' common proof. ........................... 12

d.   BMW's deeply flawed survey of purported class member knowledge does not preclude an inference of reliance. ............................................. 14

e.   BMW's remaining arguments against materiality fail. ................................................. 16

2.   The other consumer protection acts do not require proof of individual exposure and reliance for absent class members in material omissions cases. ................................ 17

C.   Common issues predominate class members' implied warranty claims. ................................................... 18

D.   Plaintiffs propose a reliable class damages model consistent with their theories of liability. ....................................... 21

1.   Class members' injury arising from BMW's fraud can be decided based on common evidence. .................................... 21

2.   Minimal public knowledge of the defect does not compromise Mr. Gaskin's survey. .................................... 22

-i-

3.   Plaintiffs provide the damages model best suited for
class adjudication. ........................................................... 23

4.   Plaintiffs' conjoint method of calculating damages
appropriately incorporates supply-side factors. ........................... 23

5.   BMW's remaining objections to Mr. Gaskin and Mr.
Weir's proposed methods also fail. ............................................ 27

E.   For the reasons set forth in the predominance analysis,
BMW's commonality objections fail. ................................................... 28

F.   The Class is ascertainable. ...................................................... 29

III.   CONCLUSION ............................................................................... 30

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

010616-11/1185635 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
  2017 WL 2559615 (C.D. Cal. June 7, 2017) ............................................................... 14

*Algarin v. Maybelline, LLC*,
  300 F.R.D. 444 (S.D. Cal. 2014) ................................................................................ 30

*Allen v. ConAgra Foods, Inc.*,
  2019 U.S. Dist. LEXIS 122807 (N.D. Cal. July 22, 2019) ...................................... 24

*Andren v. Alere, Inc.*,
  2017 U.S. Dist. LEXIS 209405 (S.D. Cal. Dec. 20, 2017) ...................................... 18

*Apple, Inc. v. Samsung Elecs. Co.*,
  2014 WL 976898 (N.D. Cal. Mar. 6, 2014) .............................................................. 26

*Arch v. Am. Tobacco Co.*,
  175 F.R.D. 469 (E.D. Pa. 1997) .................................................................................. 3

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ......................................................................... 24, 26

*Badella v. Deniro Mktg. LLC*,
  2011 U.S. Dist. LEXIS 128145 (N.D. Cal. Nov. 4, 2011) ...................................... 13

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017) ..................................................................... 7

*Brickman v. Fitbit, Inc.*,
  2017 U.S. Dist. LEXIS 191788 (N.D. Cal. Nov. 20, 2017) ...................................... 4

*Broomfield v. Craft Brew All., Inc.*,
  2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) .................................... 24

*Butler v. Porsche Cars N. Am., Inc.*,
  2017 U.S. Dist. LEXIS 59952 (N.D. Cal. Apr. 19, 2017) ........................................ 6

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) .................................................................................. 29

-iii-

*Chamberlan v. Ford Motor Co.*,
   223 F.R.D. 524 (N.D. Cal. 2004) ............................................................ 29

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ............................................................... 29

*Clark v. Bumbo Int'l Tr.*,
   2017 U.S. Dist. LEXIS 137607 (N.D. Ill. Aug. 28, 2017) ..................... 14

*Cohen v. Implant Innovations, Inc.*,
   259 F.R.D. 617 (S.D. Fla. 2008) ........................................................ 20

*Cole v. GMC*,
   484 F.3d 717 (5th Cir. 2007) ............................................................. 19

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ................................................................... 25, 27

*In re Conagra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ........................................................ 14

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) .......................................................... 5, 6

*Davidson v. Apple, Inc.*,
   2018 U.S. Dist. LEXIS 137707 (N.D. Cal. May 7, 2018) ..................... 24

*Deburro v. Apple, Inc.*,
   2013 U.S. Dist. LEXIS 156565 (W.D. Tex. Oct. 30, 2013) .................. 20

*Dickey v. Advanced Micro Devices, Inc.*,
   2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) .................. 13, 14

*Edwards v. Ford Motor Co.*,
   603 F. App'x 538 (9th Cir. 2015) ......................................................... 5

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   256 F.R.D. 82 (D. Conn. 2009) ......................................................... 28

*Falk v. GMC*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007).................................................. 5

*Faulk v. Sears Roebuck & Co.*,
   2013 U.S. Dist. LEXIS 57430 (N.D. Cal. Apr. 19, 2013)....................... 12

-iv-

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   382 F. Supp. 3d 687 (E.D. Mich. 2019) .................................................. 23

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018) ........................................................... 24

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
   2017 U.S. Dist. LEXIS 48792 (N.D. Ill. Mar. 31, 2017) ....................... 21

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   2012 U.S. Dist. LEXIS 13887 ........................................................ 11, 22

*Galvan v. KDI Distrib.*,
   2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ......................................... 4

*Gertz v. Toyota Motor Corp.*,
   2011 U.S. Dist. LEXIS 94183 (C.D. Cal. Aug. 22, 2011) ..................... 19

*In re GM LLC Ignition Switch Litig.*,
   2019 U.S. Dist. LEXIS 132052 (S.D.N.Y. Aug. 6, 2019) ................. 26, 27

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012) ................................................................ 3

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ................................................................ 3

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................ 24, 26

*Hill v. LLR, Inc.*,
   2019 U.S. Dist. LEXIS 115621 (D. Mont. July 11, 2019) ..................... 18

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2019 U.S. Dist. LEXIS 114859 (S.D. Cal. July 10, 2019) ..................... 24

*Hughes v. Ester C Co.*,
   330 F. Supp. 3d 862 (E.D.N.Y. 2018) ................................................. 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................ 3

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
   2008 U.S. Dist. LEXIS 118344 (S.D. Cal. July 8, 2008) ..................... 15

-v-

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
   285 F.R.D. 573 (E.D. Cal. 2012) ............................................................................. 13

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ............................................................................. 29

*In re Lenovo Adware Litig.*,
   2016 U.S. Dist. LEXIS 149958 (N.D. Cal. Oct. 27, 2016) ................................... 24

*In re Lithium Ion Batteries Antitrust Litig.*,
   2017 U.S. Dist. LEXIS 57340 (N.D. Cal. Apr. 12, 2017) ..................................... 28

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) .................................................................................... 22

*Martinelli v. Johnson & Johnson*,
   2019 U.S. Dist. LEXIS 54601 (E.D. Cal. Mar. 28, 2019) ..................................... 24

*Matanky v. GM LLC*,
   370 F. Supp. 3d 772 (E.D. Mich. 2019) ................................................................. 17

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ..................................................................................... 6

*McArdle v. AT&T Mobility LLC*,
   2018 U.S. Dist. LEXIS 218070 (N.D. Cal. Aug. 13, 2018) ..................... 4, 5, 12, 17

*McVicar v. Goodman Global, Inc.*,
   2015 U.S. Dist. LEXIS 110432 (C.D. Cal. Aug. 20, 2015) ................................... 13

*Miller v. Fuhu Inc.*,
   2015 U.S. Dist. LEXIS 162564 (C.D. Cal. Dec. 1, 2015) .................................. 5, 25

*Morales v. Kraft Foods Grp., Inc.*,
   2017 U.S. Dist. LEXIS 97433 (C.D. Cal. June 9, 2017) ....................................... 13

*Motley v. Jaguar Land Rover N. Am., LLC*,
   2012 Conn. Super. LEXIS 2701 (Conn. Super. Ct. Nov. 1, 2012) ........................ 29

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ....................................................... 19, 24, 26

*In re MyFord Touch Consumer Litig.*,
   2016 U.S. Dist. LEXIS 179487 (N.D. Cal. Sept. 14, 2016) ........................... *passim*

-vi-

*Negrete v. Allianz Life Ins. Co.*,
    2013 U.S. Dist. LEXIS 176313 (C.D. Cal. Dec. 9, 2013)...................................... 15

*Nguyen v. Nissan N. Am., Inc.*,
    2019 U.S. App. LEXIS 22296 (9th Cir. July 26, 2019) ........................ 16, 20, 21, 27

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015)............................................................. 26, 27

*In re OnStar Contract Litig.*,
    278 F.R.D. 352 (E.D. Mich. 2011) ........................................................................ 22

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) .................................................................................. 22

*Philips v. Ford Motor Co.*,
    2016 U.S. Dist. LEXIS 177672 (N.D. Cal. Dec. 22, 2016) ................................... 11

*Phillips v. Ford Motor Co.*,
    2003 Ill. Cir. LEXIS 20 (Ill. Cir. Ct. Sept. 15, 2003)............................................ 18

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) .................................................................................. 26

*Reniger v. Hyundai Motor Am.*,
    122 F. Supp. 3d 888 (N.D. Cal. 2015)................................................................... 17

*Rodriguez v. Taco Bell Corp.*,
    2013 U.S. Dist. LEXIS 156588 (E.D. Cal. Oct. 30, 2013) ...................................... 3

*Rosenbaum v. Toyota Motor Sales, U.S., Inc.*,
    2016 U.S. Dist. LEXIS 193377 (E.D. Mich. Nov. 28, 2016) ................................ 20

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ................................................................................ 22

*Saavedra v. Eli Lilly & Co.*,
    2014 U.S. Dist. LEXIS 179088 (C.D. Cal. Dec. 18, 2014)............................... 25, 26

*Salas v. Toyota Motor Sales, U.S., Inc.*,
    2019 U.S. Dist. LEXIS 77847 (C.D. Cal. Mar. 27, 2019) ................................... 6, 7

*Sanchez v. Wal-Mart Stores, Inc.*,
    2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009)...................................... 14

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Sanchez-Knutson v. Ford Motor Co.*,
    310 F.R.D. 529 (S.D. Fla. 2015) .......................................................... 7, 18

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520 (N.D. Cal. 2018) ............................................................ 24

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................................................................. 18

*Spacone v. Sanford, L.P.*,
    2018 U.S. Dist. LEXIS 153916 (C.D. Cal. Aug. 9, 2018) ...................... 30

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ................................................................. 14

*Tershakovec v. Ford Motor Co.*,
    2018 U.S. Dist. LEXIS 116130 (S.D. Fla. July 12, 2018) ...................... 18

*Todd v. Tempur-Sealy Int'l, Inc.*,
    2016 U.S. Dist. LEXIS 136135 (N.D. Cal. Sept. 30, 2016)...................... 3

*Torres v. Nissan N. Am., Inc.*,
    2015 U.S. Dist. LEXIS 120381 (C.D. Cal. Sept. 1, 2015) ...................... 19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
    *Practices, & Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010).................................................. 17

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019) ................................................................... 26

*Unibase Sys. v. Prof'l Key Punch*,
    1987 U.S. Dist. LEXIS 16741 (D. Utah July 14, 1987).......................... 20

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011)............................................................ 12

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ................................................................... 7

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ......................................................... 28, 29

-viii-

## OTHER AUTHORITIES

1 Florida Standard Jury Instructions in Civil Cases 403.5 ........................................... 20

1 Florida Standard Jury Instructions in Civil Cases 403.6 ........................................... 20

18A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 4455 (2d ed. 1996) ....................................................... 3

18 MOORE'S FEDERAL PRACTICE § 131.40[3][e][iii] (2018) ......................................... 3

Judicial Council of California Civil Jury Instructions 1231 ......................................... 20

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# I.   INTRODUCTION

Class certification is proper here under Rule 23(b)(3) because Plaintiffs' case will succeed or fail on common proof.  It is undisputed that *all* proposed class members purchased cars with the same allegedly defective "range extender" that causes unanticipated and precipitous loss of speed.  Plaintiffs allege that BMW did not disclose the defect to class members, and that the existence of that defect would be material to a reasonable consumer who would not have paid "full-price" for the defective car.  If Plaintiffs prove objective materiality, the *entire Class* is entitled to damages.  In opposing certification, BMW ignores these overwhelming commonalities, and primarily argues that alleged "individual issues" defeat Plaintiffs' showing of predominance.  At bottom, however, BMW has no convincing response to the many cases certifying claims similar to Plaintiffs' on the grounds that common questions concerning the existence of a defect and whether that defect caused economic harm predominate over whatever alleged "individual issues" the car maker might posit.  The result should be no different here. *See infra* at Section II.B & C.

BMW attacks Plaintiffs' showing of predominance in their consumer protection and fraud-by-concealment claims on the ground that Plaintiffs must prove individualized reliance.  Under *all* the relevant states' laws, however, because Plaintiffs' claims are premised on BMW's nondisclosure of the range extender defect, Plaintiffs may recover upon proof that the omitted information would be material to a reasonable consumer *without* individualized proof of reliance.  Similarly, Plaintiffs need not show common exposure to an advertising campaign to prevail on their material omission claim; to the contrary, Plaintiffs need only show that they would have learned of the defect in the ordinary course had BMW disclosed it through its authorized dealers.  Next, BMW mistakenly argues that it can defeat predominance by showing that it was theoretically possible for a consumer to learn of the defect because (as always) complaints about the defect existed.  Once again, the law is not on BMW's side here, as

1    the focus in this case is on whether *BMW* omitted to disclose the range extender defect.
2    *See infra* at Section II.B.  And BMW cannot defeat predominance with its deeply flawed
3    survey purporting to show that many consumers don't care about the defect.   Once
4    again, materiality is *not* evaluated on an individual basis, and (if the Class is certified)
5    the trier of fact's finding on materiality will bind the Class.

6        Common questions also predominate Plaintiffs' implied warranty claims where
7    the case again will rise or fall on common issues—here, based on whether the defective
8    range extender rendered the Class Cars unmerchantable.  While BMW falsely claims
9    that Plaintiffs have not analyzed warranty law under the laws of the relevant states,
10   Plaintiffs *have* set forth the elements in each state, *and* BMW fails to point to any *actual*
11   differences that would create individual issues.  And the alleged potential knowledge of
12   some class members is completely irrelevant in the implied warranty context.  *See infra*
13   at Section II.C.

14       Finally, Plaintiffs present a class-wide means of measuring their damages—
15   namely, the decrease in the market value of the Class Cars at the point of purchase
16   attributable to defect.  Courts in similar cases routinely permit damages to be assessed
17   based either on a conjoint analysis or repair-cost methodology, and Plaintiffs properly
18   present both options here.  Plaintiffs' conjoint analysis uses well-accepted methodology
19   of the sort commonly relied on by courts in this Circuit certifying similar claims.  *See*
20   *infra* at Section II.D.

21       Accordingly, the Court should grant Plaintiffs' motion and certify the proposed
22   Class.

## II.    ARGUMENT

### A.    Plaintiffs' strategic decision to seek certification of only those claims and those damages suitable for class treatment supports Plaintiffs' adequacy.

25       BMW's sole challenge to adequacy is contained in a *footnote* in which BMW
26   incorrectly argues that, by not seeking to certify certain claims, Plaintiffs have "waived"
27   them on behalf of class members.  Dkt. Nos. 151 (sealed) & 150-3 (public) ("BMW

-2-

Br."), at 9 n.9.  But "[a] strategic decision to pursue those claims a plaintiff believes to be most viable does not render her inadequate as a class representative."  *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 U.S. Dist. LEXIS 136135, at *16 (N.D. Cal. Sept. 30, 2016).  To the contrary, Rule 23 mandates that Plaintiffs press a theory of liability that affords them the best chance of certification and of success on behalf of the class.  *Id.*  BMW's outdated authority relies on a mistaken premise that a decision not to seek certification of certain claims or damages creates a "conflict" that jeopardizes absent class members' rights under the claim splitting prohibition of *res judicata*.  *See, e.g.*, *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469 (E.D. Pa. 1997).  But courts now agree that plaintiffs cannot "waive" absent class members' right to pursue claims not certified because "the claim splitting doctrine does not extinguish a subsequent claim when the plaintiff is unable to present the claim" in a class action setting.  *Rodriguez v. Taco Bell Corp.*, 2013 U.S. Dist. LEXIS 156588, at *9 (E.D. Cal. Oct. 30, 2013); *see also Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 429 n.16 (6th Cir. 2012); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003), *cert. denied after subsequent appeal*, 542 U.S. 915 (2004); 18A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 4455 (2d ed. 1996); 18 Moore's Federal Practice § 131.40[3][e][iii] (2018).  Thus, BMW's adequacy challenge fails.

**B.    Common issues of fact and law predominate for Plaintiffs' consumer protection and fraud by concealment claims.**

The Court's predominance inquiry examines the specific claims asserted to determine whether common questions can be resolved class-wide without individual questions overwhelming questions common to the class.  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019).  Although BMW focuses on purported differences in individual class member's knowledge of the defect at point of sale, knowledge plays no role for the vast majority of claims asserted.  In its efforts to defeat Plaintiffs' showing of predominance, BMW mischaracterizes Plaintiffs' uniform material omission claims as misrepresentation or "mixed" misrepresentation/omission

-3-

claims and also mischaracterizes the law as requiring proof of individualized reliance. BMW Br. at 10-18.  Plaintiffs bring only class *omission* claims, and the law in the relevant states allows Plaintiffs to recover on their omissions claims by proving that the omitted information is material *without* individualized proof of reliance.  The common questions as to whether BMW failed to disclose the defect and whether that information would be material to a reasonable consumer powerfully support Rule 23(b)(3) predominance.  That is why courts often find that common issues predominate in auto defect class actions involving a uniform defect, and why BMW cannot distinguish the ample authority supporting class certification here.  *See* Dkt. Nos. 124 (sealed) & 123-3 (public) ("Class Cert. Br."), at 16 & n.76.

      **1.**    **California law does not require proof of individual exposure and reliance for absent class members in material omissions cases.**

BMW misstates the law regarding reliance for Plaintiffs' California Consumer Legal Remedies Act, CAL. CIV. CODE § 1750 (CLRA), Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 (UCL), and fraudulent concealment claims.[1]  Plaintiffs may establish reliance on a class-wide basis by proving that the concealed safety defects were material to a reasonable consumer in an objective test that will yield the same result for each class member.  *Brickman v. Fitbit, Inc.*, 2017 U.S. Dist. LEXIS 191788, at *18 (N.D. Cal. Nov. 20, 2017) (CLRA claim permits a class-wide presumption of reliance if plaintiffs prove that the failure to disclose information about the defect would have been material to any reasonable person); *McArdle v. AT&T Mobility LLC*, 2018 U.S. Dist. LEXIS 218070, at *28 (N.D. Cal. Aug. 13, 2018) (UCL and FAL claims provide restitution "without individualized proof of deception, reliance and injury").  The same

---

[1] For their UCL claim, Plaintiffs need *not* show reliance at all.  *See, e.g.*, *Galvan v. KDI Distrib.*, 2011 WL 5116585, at *9 (C.D. Cal. Oct. 25, 2011) ("A UCL violation that is not based on a 'fraud theory involving false advertising and misrepresentations to consumers' does not require a showing of reliance or causation.") (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009)).

-4-

analysis applies to the fraudulent concealment claims.  *Id.* at \*18; *Falk v. GMC*, 496 F.
Supp. 2d 1088, 1099 (N.D. Cal. 2007).

Because materiality "is judged from the perspective of a reasonable consumer,"
*Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015), the "inquiry … is the
same for every class member, [and] a finding that the defendant has failed to disclose
information that would have been material to a reasonable person who purchased the
defendant's product gives rise to a rebuttable inference of reliance as to the class."
*Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015) (reversing denial of
certification of UCL and CLRA claims involving failure to disclose a known defect);
*Miller v. Fuhu Inc.*, 2015 U.S. Dist. LEXIS 162564, at \*47 (C.D. Cal. Dec. 1, 2015)
("Since materiality, like the reasonable consumer test, concerns objective features of
allegedly fraudulent representations and omissions, not subjective questions of how
those representations and omissions were perceived by each individual consumer,
materiality presents common questions of fact suitable for class litigation.").   And
"defects that create 'unreasonable safety risks' are considered material."  *Daniel*, 806
F.3d at 1225 (collecting cases).

For *all* of the consumer omission claims then, "reliance" and "causation" issues
will be resolved under an objective "reasonable customer" standard, rendering the
claims ideal for class treatment.

> **a.   All class members were exposed to the same source of
> information (dealers), through whom BMW could have
> disclosed the defect to the Class.**

BMW incorrectly argues that an extensive advertising campaign is a necessary
predicate to presuming reliance.  BMW Br. at 10-11.  This is not true.  Plaintiffs need
only show a common source from which all class members could have been informed
had BMW disclosed the defect, and that common source is the authorized BMW dealer

-5-

from which every class member purchased or leased his or her i3.[2]  The Ninth Circuit
has specifically "found this to be sufficient to show that a class member would have
been aware of a disclosure had it been made by the defendant's authorized dealer."
*Salas v. Toyota Motor Sales, U.S., Inc.*, 2019 U.S. Dist. LEXIS 77847, at *27 (C.D. Cal.
Mar. 27, 2019) (citing *Daniel*, 806 F.3d at 1226).[3]  Thus, *Daniel* and *Salas* reject
BMW's contention that Plaintiffs cannot provide common evidence of exposure
because different class members obtain information from various sources, such as
*Consumer Reports*, websites, and dealer representatives (BMW Br. at 11-12), because
claims of nondisclosure focus on *BMW's conduct*.  *Butler v. Porsche Cars North
America, Inc.*, upon which BMW relies, acknowledges that interactions with authorized
dealers generally satisfy the common exposure requirement.  2017 U.S. Dist. LEXIS
59952, at *34-35 (N.D. Cal. Apr. 19, 2017).  BMW also cites *In re MyFord Touch
Consumer Litigation*, 2016 U.S. Dist. LEXIS 179487, at *65-66 (N.D. Cal. Sept. 14,
2016), and *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012),
but those cases are inapposite and merely hold that a presumption of exposure to
*advertising* requires evidence of a pervasive advertising campaign.  They do not control
the outcome here, where every class member interacted with the very agents BMW
delegated to inform class members about the i3.

> **b.**  **The class-wide presumption of reliance does not depend on a
> complete absence of any public information about the defect.**

BMW contends that class reliance cannot be presumed because class members
*might* have been informed of the defect prior to purchase through various means.  BMW
Br. at 11-14.  Of course, there is *no* evidence that BMW systematically disclosed the

---

[2] BMW testified that it barely advertised the i3s, did not specifically advertise the
range extender, and relied instead on its dealers to provide product information.  Class
Cert. Br. at 7-8 & n.35-n.37.

[3] Plaintiffs also provide common evidence that BMW trained its dealers on i3 product
information and relied on its dealers to advise customers about the car.  Class Cert. Br.
at 8 n.1.

-6-

1   defect.  But even assuming that some class members could have learned of the defect

2   before purchase or lease, the mere existence of limited information relating to the defect

3   during the Class Period will not in itself defeat class certification.  *See, e.g.*, *Salas*, 2019

4   U.S. Dist. LEXIS 77847, at *26 ("[W]hether Toyota made a sufficient disclosure in the

5   owner's manual for the Toyota Camry XV 50 vehicle is a common question that can be

6   answered on a classwide basis.").  Just as brief, intermittent, and narrowly distributed

7   advertising will not support a presumption of class-wide exposure to a defendant's

8   advertisements, neither will a trickle of information defeat the inference of reliance on

9   a material omission.[4]  For example, in *MyFord Touch*, which BMW cites, the court

10  certified CLRA and implied warranty claims notwithstanding the "wide[] availab[ility]"

11  of "negative information about" the car's entertainment system "before most Named

12  Plaintiffs even purchased their vehicles," including "multiple statements by [the

13  defendant] and in news articles."  2016 U.S. Dist. LEXIS 179487, at *67.  The court in

14  *Salas* likewise rejected the argument that "extensive individualized inquiries" would be

15  required "to know which class members had the opportunity to read" portions of the

16  owner's manuals partially describing the defect "before purchasing their vehicles,"

17  because the defendant had not established that it was likely that consumers would review

18  such materials before purchasing or leasing their cars.  2019 U.S. Dist. LEXIS 77847,

19  at *24; *see also Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 537-38 (S.D. Fla.

20  2015) (certifying FUDTPA and warranty claims despite "internet messaging boards[,]

21  … articles and a local news broadcast" discussing the defect).

22         There is no record evidence that BMW disclosed the defect to Plaintiffs and the

23  Class prior to their i3 purchases or leases.  The earliest dealer training document BMW

24  produced is dated October 2014, five months into the Class Period.  *See* Dkt. Nos. 151-

25

26         [4] *Cf. Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027 n.8 (9th Cir. 2017) (small
    number of complaints posted in forums unrelated to the defendant insufficient to
27  establish the defendant's knowledge of the defect); *Beck v. FCA US LLC*, 273 F. Supp.
    3d 735, 752 (E.D. Mich. 2017) (defendant car manufacturer's knowledge of the alleged
28  defect cannot be inferred from the existence of 43 NHTSA posts).

-7-

1 (sealed) & 152 (public) ("Zarafian Decl."), Ex. 13. The Technical Training document, which BMW represents having provided to dealerships before the Class Period (BMW Br. at 5), has no bearing on consumer knowledge because BMW did *not* use it to train sales staff. Berman Reply Decl., Ex. 1 at 141:8-142:18 and 153:16-154:10 ███████ ████████████████████████████████████████████ And even if it had, the document refers to a possible reduction of power, which suggests the loss of use of peripheral devices, like heating and air conditioning, rather than a loss of speed. *See* Zarafian Decl., Ex. 10 at 182.  Notably, BMW did not advise its dealers to engage the range extender on test drives, and none of its training materials shared any of BMW's extensive testing or the detailed information that BMW possessed internally on the impacts of the i3 REx's undersized engine on specific car speeds, grade of hill, or extreme weather.  Class Cert. Br. at 4-5, n.12-n.16; Berman Reply Decl. (filed concurrently herewith), Ex. 2.[5]  No BMW dealer training materials describe a possible reduction of speed on hills and high speeds as a risk. Instead, BMW described it as a "misconception" that the range extender reduces speed or drive performance, thereby downplaying to dealers the relevance of the problem—dealers who already had no economic incentive to warn customers where BMW had not.  Class Cert. Br. at 8 & n.39.

Nor is this a case where a major public disclosure creates individual issues of fact that would necessitate thousands of mini-trials on reliance.  The Class Period saw no investigations into the defect by government, consumer groups, or major media. Berman Reply Decl., Ex. 3 ("Gaskin Rebuttal"), ¶¶ 50-55 & Ex. C.  The isolated complaints that appeared in blog posts, the NHTSA website, minor internet publications, and a few reviews would have garnered little consumer notice. *Id.*  The two one-page *Consumer Report* articles that BMW cites (Zarifian Decl., Exs. 16-17)

---

[5] Berman Reply Decl., Ex. 2 consists of the pages inadvertently omitted from Ex. 4 to Berman Decl. in Supp. of Mot. for Class Certification.

describe only a loss of acceleration, not a reduction of speed; both articles simultaneously convey BMW's false promise of a quick software fix; and BMW has not demonstrated widespread availability of the articles, which appeared in a subscription-only publication.  And BMW misleads when it claims to have identified "18 other articles" discussing the defect.  *Id.* at Exs. 18-21, 43-56.  Thirteen of the "articles" appeared in obscure online publications too small to even merit a Wikipedia entry (BMWi3 Blogspot, GreenCar Reports, InsideEVs, Transportation Evolved, CleanTechnica, and The Newswheel).  BMW also cites a pre-launch article speculating about what the potential engine and design of the range extender *could be* (*id.* at Ex. 49), a puff piece that describes no limitations of the range extender (*id.* at Ex. 50), and it separately counts articles that merely restate a prior article (*id.* at Exs. 16, 43; Exs. 19, 52; Exs. 21, 55).  None of the foregoing can reasonably be interpreted to rebut the class-wide presumption of reliance.

   None of the plaintiffs were aware, when they first purchased or leased their BMW i3, that the range extender would cause their cars to drastically reduce speeds on highways.  Plaintiffs' dealers did not tell them pre-lease or pre-sale that the range extender cannot keep up with the power demands of driving on highways, hills, or in very hot or very cold weather, or that it is likely to reduce speed, often drastically in these situations.  *See* Plaintiffs' declarations, Dkt. Nos. 127-139.  Only a single plaintiff, Adeel Siddiqui, encountered any complaints about the range extender's performance before purchase or lease.  But complaints about the i3's performance on hills had little relevance to where he lives (Chicago), and he was more concerned about whether Chicago's cold temperatures "could reduce the power significantly without warning and slow the car down to a point where it could be unsafe."  Berman Reply Decl., Ex. 4 at 54:23-56:20.  BMW cites Plaintiff Brandon Cosinteno (née Redmond)'s testimony, but he explained that it was not until *after* he signed his lease that the dealership told him that "[t]here would be some challenges" driving over mountain passes, and even then

"never once were [he and his husband] advised that it would go into power reduction mode, limp mode, and speeds would be cut to 40 miles per hour." Berman Reply Decl., Ex. 5 at 146:23-147:16.

Plaintiff Eric Wonderley also did not learn of the defect until after he leased his car, on the drive home from the dealership. Berman Reply Decl., Ex. 6 at 50:2-15, 52:17-54:1. He returned the car and only agreed to lease another based on BMW's false promise that a software update "would fix this problem." *Id.* at 83:4-10; *see also* Zarifian Decl., Ex. 16 (BMW spokesperson announces an immanent fix). Plaintiff Steven Ridges first learned of the defect after signing the lease when he drove home from the dealership and his car dropped from 70 mph to 35 mph, Berman Reply Decl., Ex. 7 at 38:1-7, and only agreed to another lease when his dealership turned a blind eye to the aftermarket software he used to re-code the range extender and make it safer to drive by allowing the range extender to start at a 75% state of charge. *Id.* at 93:1-96:24. That Mr. Ridges was able to find someone to take over his lease notwithstanding his own disclosure of the defect does not alter the materiality analysis both because the subsequent lessee is not a class member and because the subsequent lessee received a car altered to make the range extender safer. *Id.*, Ex. 7 at 99:14-100:3. At the time of his lease, Plaintiff Charles Olsen also had not heard anything about a "very dramatic drop in ability to maintain highway speed." *Id.*, Ex. 8 at 69:19-21. *See also id.* at 65:4-69:11 (discussing lack of information from the dealership and his post-lease email to the dealership complaining of "several dangerous incidences on the highway" related to his use of the range extender).

In response to the foregoing testimony, BMW seeks to portray some of the plaintiffs unfairly as dishonest or unaffected by BMW's non-disclosure. BMW Br. at 11-12, 15-16. For example, BMW argues that Mr. Siddiqui falsely claimed not to have known about the loss of power on hills. This is incorrect. Mr. Siddiqui testified both at his deposition and in his declaration that no one at the dealership told him anything

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

about the defect and that he did not know from any source that the range extender would fail in cold weather.   Siddiqui Decl., Dkt. No. 137.   BMW's suggestion that the Wonderley and Ridges declarations misrepresented their knowledge by mistakenly referring to multiple leases ignores the full context of the declarations, where both plaintiffs explain—consistent with their depositions—that they learned of the defect immediately *after* leasing their first cars.   *See* Wonderley Decl., Dkt. No. 134; Ridges Decl., Dkt. No. 130.   BMW improperly suggests that Mr. Olsen's declaration is misleading because he purchased a second i3 REx, but Mr. Olsen purchased a 2018 model with the higher capacity batteries that avoids the defect.   Berman Reply Decl., Ex. 8 at 25:24-26:7. BMW does not call into question the remaining plaintiffs, who also did not learn of the defect until after their purchase or lease and whose lease or purchase was materially impacted by BMW's non-disclosure.   *See generally* Plaintiff Declarations.

This case is a far cry from BMW's authorities. In *In re Ford Motor Co. E-350 Van Products Liability Litigation*, Ford issued a safety advisory, NHTSA issued a report, and the mass media covered the defect (including CBS's 60 Minutes).   2012 U.S. Dist. LEXIS 13887, at *7-8 (D.N.J. Feb. 6, 2012).   *None* of that happened here.   *Philips v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 177672 (N.D. Cal. Dec. 22, 2016), is also distinguishable.   The court concluded that a presumption of reliance was unwarranted because the owner's manuals expressly warned "that the [power steering] may fail unexpectedly" and the plaintiffs had not shown "whether consumers read the manuals before purchase or whether Ford dealerships discuss the contents of owner's manuals in a sufficiently uniform way that the Court can determine on a classwide basis whether class members knew about the warnings in the owner's manuals."   *Id.* at *55.   Here, BMW's own evidence demonstrates that fewer than 5% of consumers reviewed owner's manuals for any purpose before purchasing or leasing their cars.   Dkt. No. 152-22 ("Isaacson Report"), ¶ 68, Table J.   But had class members read the manuals prior to

purchase/lease here, they would have found no warning that the range extender decreases vehicle speed.  *See* Zarafian Decl., Exs. 14, 15; Berman Reply Decl., Ex. 12 at BMWNA-002215-16.

Although negative product information was a factor in the *MyFord Touch* court's decision not to certify the plaintiffs' *misrepresentation* claims, that decision's primary ground was the lack of evidence "that all or nearly all class members would have been exposed to a consistent sales script containing [the] alleged misrepresentations."  2016 U.S. Dist. LEXIS 179487, at *66.  Of course, Plaintiffs' claims here are based on uniform omissions but, in any event, all class members were commonly exposed to BMW's dealers.  *Id.*; *see also* Section II.B(1)(a), *supra*. BMW's other authority outside of the car context has even less applicability.[6]

Upon certification, a jury can evaluate all of the information BMW possessed, the information it provided to its dealers, and the information otherwise available through third-parties and determine class-wide whether BMW adequately disclosed the defect and whether its omission was material—all without requiring an inquiry into individual class members' knowledge.  *McArdle*, 2018 U.S. Dist. LEXIS 218070, at *29.  Common issues thus predominate.

### c.   Materiality is an objective standard that can be decided on Plaintiffs' common proof.

BMW argues that a reasonable person standard cannot be used to establish materiality here, BMW Br. at 15-17, but BMW is again mistaken.  As a matter of law,

---

[6] *See Faulk v. Sears Roebuck & Co.*, 2013 U.S. Dist. LEXIS 57430, at *24-34 (N.D. Cal. Apr. 19, 2013) (denying certification of proposed tire purchaser class, where the plaintiff failed to identify the injury or remedy sought for breach of warranty claim predicated on a failure to disclose a warranty limitation, provided no common evidence that the nondisclosure was material to the class for purposes of the CLRA and could not show that the alleged systematic breach of contract was susceptible to common proof for purposes of the UCL); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504 (C.D. Cal. 2011) (defendant already offered a full refund for potentially contaminated baby clothes; class members lacked standing because they did not have an identifiable economic loss injury; and there was a lack of common evidence that the disclosure of the toxin was material to putative class members).

materiality rests on an objective standard, "that the alleged misrepresentation would have been material to reasonable persons," not on the subjective states of any particular individuals. *Morales v. Kraft Foods Grp., Inc.*, 2017 U.S. Dist. LEXIS 97433, at *79 n.4 (C.D. Cal. June 9, 2017).  For example, in *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *2 (N.D. Cal. Jan. 17, 2019), the plaintiffs sought to certify a consumer class against defendant AMD, who purportedly misrepresented the number of core processors in its computer chips. In an attempt, much like BMW's, to demonstrate that the reasonable consumer test could not apply, AMD introduced its own survey, which it argued showed both that there was no common understanding of "core" and that a significant majority of consumers interpreted it in ways consistent with the AMD chip, thereby negating the plaintiffs' personal opinions about how they thought a reasonable consumer would understand the defendant's representation. *Id.* at *8.  The court rejected AMD's argument because the plaintiffs had shown that exposure to the alleged misleading statements was uniform across the class, and "individualized issues of each class member's understanding are not at issue when materiality is assessed on a class-wide basis under a reasonable consumer standard." *Id.* at 16.

BMW's cases are inapposite and do not defeat materiality here. In *McVicar v. Goodman Global, Inc.*, 2015 U.S. Dist. LEXIS 110432, at *37-40 (C.D. Cal. Aug. 20, 2015), the plaintiff admitted that the product failed within an acceptable rate, and in *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 577 (E.D. Cal. 2012), the plaintiff admitted that, even though he knew that the motorcycle seat could overheat and catch fire, he still would buy another Harley-Davidson).  The courts in these cases found the materiality evidence deficient not simply because the defendants provided surveys that tended to show that consumers did not care about the claimed deceptions but, more importantly, because the plaintiffs themselves made concessions that contradicted their claims of materiality.  Similarly, in *Badella v. Deniro Marketing LLC*, 2011 U.S. Dist. LEXIS 128145, at *3-5 (N.D. Cal. Nov. 4, 2011), the court found

-13-

a presumption was not warranted where the plaintiff failed to provide extrinsic evidence showing that the alleged deceptive statements were material to class members' decision to join the adult website (and where the plaintiff renewed his membership after learning of the allegedly fictitious material).  Other cases cited by BMW are also inapposite because the plaintiffs failed to conduct a survey or introduce other evidence showing that the allegedly deceptive conduct had a tendency to influence the decision to purchase the product.  *See Clark v. Bumbo Int'l Tr.*, 2017 U.S. Dist. LEXIS 137607, at *23 (N.D. Ill. Aug. 28, 2017); *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017); *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 550 (C.D. Cal. 2014); *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 871-72 (E.D.N.Y. 2018); *Sanchez v. Wal-Mart Stores, Inc.*, 2009 U.S. Dist. LEXIS 48428, at *6 (E.D. Cal. May 28, 2009) (finding that plaintiff had no valid theory of injury for herself, let alone for the class).  BMW's reliance on *Stearns v. Ticketmaster Corp.* is even more puzzling, given that the court reversed the order denying class certification.  655 F.3d 1013, 1027 (9th Cir. 2011).

BMW's cases stand in stark contrast to the instant case where Plaintiffs uniformly testified that BMW's omission mattered to their purchase and lease decisions, and where Plaintiffs' survey-based conjoint analysis demonstrates that BMW's non-disclosure significantly increased the market price of the i3 with the range extender.

### d.   BMW's deeply flawed survey of purported class member knowledge does not preclude an inference of reliance.

Citing the Hibbard survey on class members' purported prior states of knowledge, BMW argues that no jury can decide materiality based on a reasonable person standard. BMW Br. at 7, 12, 17.  But as discussed immediately *supra*, because "issues of materiality and falsity are not evaluated on an individualized basis," the "results of [BMW's] own survey" purporting to show what "class members understood" about the defect "do not weigh against a finding of predominance."  *Dickey*, 2019 U.S. Dist. LEXIS 8740, at *12-13.

-14-

1   In any event, as set forth in Plaintiffs' *Daubert* Motion to Bar the Testimony of

2   Dr. Jonathan Hibbard, which is incorporated herein by this reference, the Hibbard

3   survey is fundamentally unreliable and should be excluded.  Dr. Hibbard's survey

4   provides no basis to conclude that 60.6% of class members knew about the defect or

5   that 88.1% do not care about it.  Dr. Hibbard posed a five-part compound question

6   (generating 32 possible inferences), from which no reliable conclusion about Class

7   knowledge can be drawn.  This critical, rambling question included false factual

8   premises and buried the critical information about speed reduction in the third of five

9   sentences.  The survey left out Plaintiffs' central allegations that the range extender

10  presents a serious collision danger by causing sudden, unexpected drops in speed

11  without signaling this decrease through the car's brake lights.  Dr. Hibbard did no pre-

12  testing to see whether respondents understood his question or even read it all the way

13  through (and the few open-ended questions he permitted strongly suggest they did not).

14  When respondents who answered that their lack of knowledge about the range extender

15  definitely or probably would not have affected them were asked to explain why, only

16  *30%* of the respondents provided explanations that reflected an understanding that the

17  range extender reduces speed or power.  Further, Dr. Hibbard did not take any steps to

18  prevent creating false memories or suggesting responses.  For example, he did not let

19  respondents freely answer what they remembered knowing about the range extender

20  before buying or leasing their cars.  All of the flaws relating to his estimate of purported

21  knowledge also necessarily pervade his estimate of the purported impact of

22  nondisclosure.

23  The Hibbard survey was manufactured to produce unreliable and biased results

24  and should be excluded even under the relaxed admissibility standard on class

25  certification.  Indeed, the courts in *Negrete v. Allianz Life Ins. Co.*, 2013 U.S. Dist.

26  LEXIS 176313, at *35-36 n.6 (C.D. Cal. Dec. 9, 2013), and *Iorio v. Allianz Life Ins. Co.

27  of N. Am.*, 2008 U.S. Dist. LEXIS 118344 (S.D. Cal. July 8, 2008), excluded a survey

28

-15-

similar to BMW's that purportedly surveyed what consumers' understood about its product, on the grounds that the defendant unduly influenced the responses.  But even if the Court considers and admits the Hibbard survey, the survey does not defeat class certification because BMW offers it as generalized evidence of class knowledge.  A jury can consider it to make a class-wide finding without requiring individual inquiries into class members' knowledge.

### e.  BMW's remaining arguments against materiality fail.

BMW contends that its marketing of the i3 as a "mega-city car" precludes the materiality of the range extender defect because consumers would infer from that slogan that they should not drive cars in any of the situations that cause the i3 to fail.  BMW Br. at 18.  Given that "mega-city" is an undefined term and that BMW admits that it only provided minimal advertising for the i3 and none of it specifically addressed the range extender, a jury could, of course, find otherwise.  Class Cert. Br. at 7 n.35.  Nor does materiality depend on whether class members would in fact experience a sudden loss of speed when they used the range extender, as BMW urges.  BMW Br. at 18-19 (citing Plaintiffs' driving habits and the Isaacson survey as evidence that class members rarely used the range extender and therefore arguably would not care that it is defective).  But BMW "conflates cases where a defect *causes* an injury, and those, like this one, where the defect itself *is* the injury."  *Nguyen v. Nissan N. Am., Inc.*, 2019 U.S. App. LEXIS 22296, at *22 (9th Cir. July 26, 2019). Under Plaintiffs' theory of the case, injury occurred at the point of sale or lease.  Regardless whether class members subsequently used their range extender or experienced a significant loss of speed, each of them suffered economic losses when they paid for a car free from the defect and got a defective one.  None of the evidence BMW points to would preclude a jury from finding that BMW's omission was materially deceptive.

2.     **The other consumer protection acts do not require proof of individual exposure and reliance for absent class members in material omissions cases.**

BMW argues that individual issues of reliance preclude certification under the consumer protection acts of states other than California. BMW Br. at 14-15. BMW is again mistaken. Like in California, a jury may presume reliance on a material omission for fraud by omission claims in Ohio, Tennessee, Utah, and Washington (Class Cert. Br. at 20 n.86) and for consumer protection act claims in Texas, Utah, and Washington (*id.* at 19 n.85). Reliance is not required for the Florida, Illinois, Ohio, and Tennessee consumer protection claims, *id.* at 19 n.85, and Michigan does not require reliance for either its statutory or common law omission claims (*id.* at 20 n.86). Each of these claims depends on an objective standard, whether BMW's omissions would have deceived or misled *reasonable* consumers. Thus, whether BMW's omissions "were likely to deceive the public—taking into account all of the other information that was available about [the defect]—is a question that ties together all members of the [proposed] Class." *McArdle*, 2018 U.S. Dist. LEXIS 218070, at *29. There can be little doubt that a jury could find BMW's omission of a known risk of rapid, involuntary deceleration and the serious risk of a collision, to be material to class members' decision to purchase or lease the i3s at an allegedly inflated price. Compare *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1173 (C.D. Cal. 2010) ("The Court is convinced that a safety consideration as fundamental as whether a car is able to stop when the brakes are applied is material to consumers."); *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 897 (N.D. Cal. 2015) ("[I]llustrating the potential risks of [low speed] stalling, Plaintiffs' complaint recounts several harrowing incidents, including two times when named plaintiff Battaglia narrowly avoided collisions after his vehicle stalled and he lost power steering and brakes."); *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 785 (E.D. Mich. 2019) ("[A] design defect that persistently causes their cars to overheat and go into Limp Mode ….

-17-

raises serious safety concerns as to its suitability for use on public roads and race tracks."); *Phillips v. Ford Motor Co.*, 2003 Ill. Cir. LEXIS 20, at *15 (Ill. Cir. Ct. Sept. 15, 2003) (defective car paint can be assumed material because "it is <u>not</u> logical to believe that rational consumers acting in their economic self-interest would be indifferent to their new or slightly used car's appearance, especially the paint coating"); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 537-38 (S.D. Fla. 2015) (materiality of omission that car HVAC system  permitted exhaust to enter the passenger area could be decided class-wide).

As to BMW's argument that the Tennessee consumer statute bars class actions, federal, not state, procedural law controls whether the claim may be certified.  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010).  While courts in the Ninth Circuit are split on how to apply the Supreme Court's plurality decision in *Shady Grove*, the better reasoned decisions "look only to the part of Justice Scalia's opinion to which five Justices joined," as opposed to the narrower test set forth in Justice Steven's concurrence, to which no other justice joined. *Hill v. LLR, Inc.*, 2019 U.S. Dist. LEXIS 115621, at *5 (D. Mont. July 11, 2019).  Courts adopting the Scalia approach hold that class actions may proceed despite state statutes prohibiting such actions.  *See, e.g.*, *Andren v. Alere, Inc.*, 2017 U.S. Dist. LEXIS 209405, at *65 (S.D. Cal. Dec. 20, 2017) (collecting Ninth Circuit decisions).

**C.**    **Common issues predominate class members' implied warranty claims.**

BMW again argues that a jury must frame class members' implied warranty claims from the intended purpose of a "megacity car," BMW Br. at 19, but as previously stated, BMW provides no evidentiary basis to read that limitation into the warranty.[7]

---

[7] BMW's only authority for the proposition that advertising can limit its liability is the inapposite decision in *Tershakovec v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 116130 (S.D. Fla. July 12, 2018), where the court rejected the defendant's effort to limit merchantability to ordinary highway use because the defendant advertised the cars for racing and therefore would also need to satisfy the requirement of merchantability in that context.  *Id.* at *29-30.

-18-

BMW's reliance on *Torres v. Nissan North America, Inc.*, 2015 U.S. Dist. LEXIS 120381, at *3-4 (C.D. Cal. Sept. 1, 2015), for the proposition that Plaintiffs must demonstrate a higher percentage of complaints to satisfy their merchantability claim is also misplaced.  The *Torres* court's concern was predicated on whether the product was substantially certain to fail within the lifetime of the vehicle. *Id.* at 13-14.  In contrast here, evidence of the substantial certainty that the i3 with range extender will malfunction rests on Plaintiffs' expert and BMW's own documents demonstrating that any Class Car subjected to the ordinary driving conditions that will drain the state of charge below 2% *will* experience the failure mode they allege (*i.e.*, the drastic loss of speed).  Class Cert. Br. at 7; Dkt. No. 125-3 ("Donahue Report") at 4-5, 12; Zarifian Decl., Exs. 10-12. That Plaintiffs and class members continued to drive Class Cars does not alter the analysis of merchantability; Plaintiffs' claim that the range extender is defective, they do not need to prove that the cars are worthless or unsafe to drive in the pure electric mode. *See In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 946-47 (N.D. Cal. 2018) ("[V]ehicles may be unmerchantable even if they can be used to provide basic transportation when a defect presents symptoms in a persistent manner that can be said to impair safety, reliability, or operability over an extended period of time.").

BMW claims that Plaintiffs have provided no analysis of the elements of state warranty law.  BMW Br. at 20-21.  This is not true.  Plaintiffs cited the common elements under relevant state warranty law in their brief at pages 17-18—authorities that BMW fails to refute.  Thus, *Cole v. GMC*, 484 F.3d 717, 730 (5th Cir. 2007), where the plaintiffs failed to provide a 50-state survey to support their proposed national implied warranty class, is inapposite.  Nor does BMW point to any differences in state warranty laws that would create individual issues, other than its erroneous contention that Florida requires reliance.  The implied warranty of merchantability in all of the relevant states, including Florida, does not require reliance.  *See Gertz v. Toyota Motor Corp.*, 2011

U.S. Dist. LEXIS 94183, at *12 (C.D. Cal. Aug. 22, 2011); Judicial Council of California Civil Jury Instructions 1231 (no reliance); 1 Florida Standard Jury Instructions in Civil Cases 403.5 (no reliance);[8] *Rosenbaum v. Toyota Motor Sales, U.S., Inc.*, 2016 U.S. Dist. LEXIS 193377, at *5 (E.D. Mich. Nov. 28, 2016) ("[I]t is axiomatic that the existence of the implied warranty of merchantability is not dependent on any sort of reliance on the part of the buyer[.]") (quotation omitted); *Deburro v. Apple, Inc.*, 2013 U.S. Dist. LEXIS 156565, at *16 n.6 (W.D. Tex. Oct. 30, 2013) ("[Texas] DTPA causes of action which do not require reliance" include "breach of an express or implied warranty."); *Unibase Sys. v. Prof'l Key Punch*, 1987 U.S. Dist. LEXIS 16741, at *25 n.15 (D. Utah July 14, 1987) ("Reliance, however, is not an issue with regard to the implied warranty of merchantability which exists at all levels of sale by merchants who sell that particular type of good.").

Class member knowledge plays no role because "the circumstances of the transaction do not matter for the implied warranty claim." *Rosenbaum*, 2016 U.S. Dist. LEXIS 193377, at *5 (relying on 26 Am. Jur. Proof of Facts 2d *Sales: Implied Warranty of Merchantability* § 17). BMW does not dispute that the range extender functions the same way for all Class Cars. "If each [Class Car] is similarly flawed, it follows that each would breach (or not) the [implied warranty of merchantability] in materially the same way," making it a perfect candidate for class adjudication. *MyFord Touch*, 2016 U.S. Dist. LEXIS 179487, at *72. Plaintiffs can prove class-wide causation and injury by showing that BMW sold and leased Class Cars with an alleged defect that was not reflected in the market price for Class Cars. *Nguyen*, 2019 U.S. App. LEXIS 22296, at

---

[8] *Compare id.* 403.6 (requiring reliance for implied warranty of fitness for a particular purpose). BMW's only Florida authority, *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617 (S.D. Fla. 2008), states *in dicta* (because the plaintiff did not challenge the ruling on implied warranty), that "reliance is a necessary element of a breach of implied warranties claim," but it relied on an inapposite decision supporting reliance for a breach of warranty of fitness *for a particular purpose. Id.* at 624 (relying on *Light v. Weldarc Co.*, 569 So. 2d 1302, 1305 (Fla. Ct. App. 1990)).

-20-

*22.  Because all Class implied warranties have the same elements and do not require proof of reliance, they can be tried based on common evidence without the need for individual inquiries.  Common issues predominate for Plaintiffs' implied warranty claims.[9]

### D.  Plaintiffs propose a reliable class damages model consistent with their theories of liability.

Plaintiffs' proposed model of calculating "the difference between the market price of the product as represented and as delivered is neither novel nor problematic from a class certification perspective."  *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 48792, at *168 (N.D. Ill. Mar. 31, 2017) (citations, quotations omitted). BMW does not refute Plaintiffs' authorities demonstrating that each class claim permits recovery of the difference in market value attributable to the alleged defect at point of sale.  Class Cert. Br. at 21-22 & n.89-n.90. Nor does BMW dispute Plaintiffs' authorities demonstrating that courts routinely permit damages to be assessed based on a conjoint analysis or repair-cost methodology, as Plaintiffs propose.  *Id.* at 18 & n.81, 21-22 & n.91-n.93, 23 & n.99; *see also Nguyen*, 2019 U.S. App. LEXIS 22296, at *21-22 (reversing order denying class certification where the plaintiff "demonstrated the nexus between his legal theory—that Nissan violated California law by selling vehicles with a defective [part] that was not reflected in the sale price—and his damages model—the average cost of repair").  Instead, BMW argues that injury is an individual issue and that, in any event, Plaintiffs' damage model is flawed.  BMW Br. at 21-27.  BMW's arguments fail.

### 1.  Class members' injury arising from BMW's fraud can be decided based on common evidence.

In arguing that injury is an individual issue, BMW recycles its materiality argument and contends that injury depends on each class member's knowledge.  But as

---

[9] Because the Magnuson-Moss Act claims depends on the underlying state implied warranty laws, common issues also predominate for Plaintiffs' Magnuson-Moss claims.

-21-

demonstrated above in Section II.B(1)(b), the materiality analysis does not require Plaintiffs to prove a blank slate. "[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016). A jury can take any evidence of class knowledge into account when deciding whether the omission is material, including plaintiffs' evidence that even if some class members knew about the defect, they still suffered injury because—by paying a *market* price—they overpaid for the cars. *See* Berman Reply Decl., Ex. 10 at 52:2-54:6; *id.*, Ex. 11 ("Weir Reply Decl."), ¶ 31.

BMW's authorities are all inapposite. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 13887, at *35-36, 54-57 (defendant issued a safety advisory, and the defect was the subject of government investigations and mass media coverage, including television, and plaintiffs conceded knowledge of defect); *In re OnStar Contract Litig.*, 278 F.R.D. 352, 378 (E.D. Mich. 2011) (class included used purchasers who would not have been exposed to defendant's misrepresentations or omissions); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (class membership depended on subjective states of putative members—*e.g.*, whether they knew the product contained saccharin, cared about it, or preferred it); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) (turns on New Jersey consumer fraud law, which class members do not assert here).

### 2. Minimal public knowledge of the defect does not compromise Mr. Gaskin's survey.

BMW argues that Mr. Gaskin's model is compromised because it does not consider prior knowledge of the defect. As demonstrated above, the record reflects very little public knowledge of the defect—which BMW did not disclose. *See supra* Section II.B(1)(b). But even if the Court took another view of the record, "criticisms directed at the propriety of the assumptions made by [Mr. Gaskin] when postulating [his] survey design merely impeach the factual basis of the opinion and not the reliability of [his]

-22-

methods." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 382 F. Supp. 3d 687, 698-99 (E.D. Mich. 2019).  And even if the Court were to conclude that class members are not entitled to a presumption of reliance, Mr. Gaskin's survey analysis would still be relevant for the several claims that do not depend on class members' individual knowledge.  *See supra* Sections II.B(2) and C.

### 3. Plaintiffs provide the damages model best suited for class adjudication.

BMW objects that Plaintiffs have not provided a method of calculating every type of damages claimed in their complaint.  But they do not need to; Plaintiffs are only obligated to select those claims, damages, and equitable relief best suited to class-wide adjudication.  *See supra* Section II.A.  And they have:  Plaintiffs submit a single theory of damages (difference in market value) measured either by Mr. Gaskin's conjoint analysis or Plaintiffs' estimated cost of repair as a proxy for the difference in market value.  BMW does not contest that each class claim permits recovery of the difference in market value attributable to the alleged defect at point of sale, nor can it.  *See* Class Cert. Br. at 21-22 and n.89-n.90.  Contrary to BMW's contention, the court in *MyFord Touch* did not deny class certification for failure to provide a model of certain claimed damages; rather, in certifying certain claims, the court clarified that its certification was limited to damages theories that were acceptable to the court. 2016 U.S. Dist. LEXIS 179487, at *50-51.

### 4. Plaintiffs' conjoint method of calculating damages appropriately incorporates supply-side factors.

BMW next argues that Plaintiffs' proposed conjoint analysis measures only "willingness to pay" and fails to measure the difference in market value of its defective product because Mr. Gaskin and Mr. Weir allegedly only consider consumer demand without taking into account supply-side factors.  BMW Br. at 24-27.  An overwhelming number of courts in this Circuit have expressly rejected BMW's narrow approach to supply side factors, finding "that conjoint analyses can adequately account for supply-

-23-

side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018) (relying on *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326 (D.N.H. 2017)); *see also Allen v. ConAgra Foods, Inc.*, 2019 U.S. Dist. LEXIS 122807, at *62 (N.D. Cal. July 22, 2019); *Martinelli v. Johnson & Johnson*, 2019 U.S. Dist. LEXIS 54601, at *7-11 (E.D. Cal. Mar. 28, 2019); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 372-73 (N.D. Cal. 2018); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 541 (N.D. Cal. 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 605-06 (N.D. Cal. 2018); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 U.S. Dist. LEXIS 114859, at *14-21 (S.D. Cal. July 10, 2019); *Davidson v. Apple, Inc.*, 2018 U.S. Dist. LEXIS 137707, at *62-64 (N.D. Cal. May 7, 2018); *In re MyFord Touch*, 291 F. Supp. 3d at 936; *Broomfield v. Craft Brew Alliance, Inc.*, 2018 U.S. Dist. LEXIS 177812, at *55-63 (N.D. Cal. Sept. 25, 2018); *In re Lenovo Adware Litig.*, 2016 U.S. Dist. LEXIS 149958, at *73-75 (N.D. Cal. Oct. 27, 2016).

Consistent with these authorities, Plaintiffs' conjoint analysis is indisputably tethered to the actual historical quantities of BMW i3 RExs sold during the Class Period and to price points based on actual market prices during the Class Period, and these price points reflect BMW's manufacturing, marketing, and related costs. Dkt. No. 125-32 ("Gaskin Report"), ¶ 21; Dkt. No. 125-33 ("Weir Decl."), ¶ 35; Weir Reply Decl. ¶¶ 42-55; Gaskin Rebuttal, ¶¶ 10-13. Courts have endorsed this approach because "the actual real-world pricing of the products reflects the actual number of units sold, the costs of manufacturing, the costs for distribution, advertising, and market, and margin, among other supply-side factors." *Martinelli*, 2019 U.S. Dist. LEXIS 54601, at *12 (quotations

-24-

1   omitted).   Failing to use *actual* supply and instead trying to calculate damages by

2   considering how many defective products a defendant would have been willing to sell

3   if the defendant had disclosed the defect prior to marketing its products—as BMW

4   demands—would be contrary to fundamental principles of economics and violates

5   *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), which requires the damages model to

6   be tethered to Plaintiffs' theory of liability—*i.e.*, that BMW failed to disclose the defect.

7          BMW's three authorities are inapposite.   *Saavedra v. Eli Lilly & Co.*, 2014 U.S.

8   Dist. LEXIS 179088 (C.D. Cal. Dec. 18, 2014), involved alleged economic injury from

9   certain prescription drugs.   The *Saavedra* court placed great emphasis on the unique

10  nature of the market for prescription drugs, and the fact that prescription drug prices are

11  *not* always set based on the intersection of consumer willingness to pay and supply

12  (unlike for cars).   *See id.* (observing that "numerous complicating factors … sever the

13  relationship between price" and consumer demand).   For this reason, a survey of what

14  consumers might be willing to pay for prescription drugs cannot always help an

15  economist, court, or jury determine the price of those drugs.

16         To be sure, the *Saavedra* court also faulted the plaintiffs' expert for "ignoring

17  supply" in the proposed model.   *Id.* at *6.   But this comment is unclear and misplaced,

18  because *Saavedra* recognized that there was no reason to find that price had any

19  relationship at all to consumer willingness to pay and supply.   *See id.*[10]   And,

20  importantly, *Saavedra* did not cite *any* consumer case suggesting a need to consider

21  supply.   Instead, it referred to Judge Lucy Koh's opinion in a patent dispute between

22

23         [10] Other aspects of *Saavedra* are simply incorrect.   For example, the court stated that
24  the proposed conjoint survey was *also* invalid because it measured demand in the
    present, whereas all of the drug sales had occurred in the past.   *Id.* at *6. This conclusion
25  would effectively bar the use of conjoint in litigation because all litigation surveys are
    conducted to approximate past demand, and is contrary to the almost overwhelming
26  weight of authority approving the use of conjoint analysis to measure benefit-of-the-
    bargain damages.   *See supra*; *see also, e.g.*, *Miller*, 2015 WL 7776794, at *21
27  ("[N]umerous courts … have accepted" conjoint analyses "as reliable methodologies
28  for calculating price premiums on a classwide basis in consumer class actions.").

-25-

Apple and Samsung.  *See id.* (citing *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at \*11 (N.D. Cal. Mar. 6, 2014)).  But damages in patent cases are measured based on a defendant's wrongful profits from infringing and are unrelated to whether the end consumer received the benefit of the bargain.  *See, e.g.*, *Apple*, 2014 WL 976898, at \*11.[11]  Indeed, Judge Koh issued two opinions last year *approving* the use of actual real-world supply when measuring damages in *consumer* litigation.  *See Hadley*, 324 F. Supp. 3d at 1104-06; *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. at 372-73.

In BMW's second case, *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050 (C.D. Cal. 2015), the court faulted the plaintiffs' expert for failing to take into account real market features such as brand, *id.* at 1119, but the court reached no conclusion about whether it would be appropriate to calculate damages based on actual, historical supply provided that the conjoint survey included other real-world considerations.  Notably, in *MyFord Touch*, 291 F. Supp. 3d at 970 n.25, the court distinguished *Saavedra* and *NJOY* and accepted a conjoint analysis similar to what Plaintiffs propose here.

BMW cites a third and final case, *In re GM LLC Ignition Switch Litig.*, 2019 U.S. Dist. LEXIS 132052 (S.D.N.Y. Aug. 6, 2019), which it submitted as supplemental authority (*see* Dkt. No. 160).  *GM Ignition Switch* is a wrongly decided aberration and the Court should not follow it.  In finding that a belated recall remedies the fact of harm that occurred at the time of sale, the court declined to follow Ninth Circuit precedent applying California law even though the Second Circuit requires the Court to "defer conclusively" to that precedent.  *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).  Under controlling Ninth Circuit precedent, benefit-of-the-bargain damages are "based on what a purchaser would have paid at the time of purchase had the purchaser received all the information" (*Pulaski & Middleman, LLC*

---

[11] For this reason, BMW's expert's reliance on academic articles discussing the use of conjoint analysis in patent cases is misplaced.  *See* Gaskin Rebuttal, ¶ 14 (discussing articles BMW relies on).

*v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)), notwithstanding (and *not accounting for*) any benefits received after purchase.  *Nguyen*, 2019 U.S. App. LEXIS 22296, at *19-20.  In any event, unlike *GM Ignition Switch*, BMW has not repaired the cars here.

*GM Ignition Switch* also erred in departing from the overwhelming weight of authority, discussed above, holding that historical supply should be used as an input to a well-accepted damages model.  In doing so, the court misconstrued *Saveeda* and *NJOY*, the other cases BMW cites.  The court also created a mismatch between damages and the liability theory, contrary to *Comcast*.  As here, the plaintiffs' liability theory in *GM Ignition Switch* is that they paid for one thing (defect-free, safe vehicles) but received another (dangerously defective vehicles). Their damages model measured the difference between what the plaintiffs thought they were buying and what they received.  *See Nguyen*, 2019 U.S. App. LEXIS 22296, at *21-22 (explaining that "Plaintiff has demonstrated the nexus between his legal theory … and his damages model").  Such a model should calculate damages for the vehicles actually sold, not the lower number that the manufacturer might have sold (to different people) if it had told the truth prior to sale.  But the *GM Ignition Switch* order requires plaintiffs to offer a damages model that analyzes what other, hypothetical plaintiffs could have bought from a different, hypothetical defendant that never existed.  It also creates economic incentives that are inconsistent with state law because it incentivizes a manufacturer to knowingly sell defective vehicles.  The Court should reject *GM Ignition Switch*.[12]

### 5. BMW's remaining objections to Mr. Gaskin and Mr. Weir's proposed methods also fail.

BMW submits a potpourri of other objections to Plaintiffs' damages model, none of which withstand scrutiny.  BMW's objection that Plaintiffs allegedly do not account for individual price negotiations and do not take into account consumer's personal preference (BMW Br. at 25 n.21) fails because it addresses a non-existent theory of the

---

[12] A motion to reconsider or, in the alternative, certify the *GM Ignition Switch* decision for interlocutory appeal, is currently pending.

case.  Under Plaintiffs' theory, BMW's non-disclosure affected the price regardless of individual negotiations because "negotiated transaction prices would have been lower if the starting point for negotiations had been list prices set in a competitive market."  *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 89 (D. Conn. 2009) (quotation omitted); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2017 U.S. Dist. LEXIS 57340, at *88 (N.D. Cal. Apr. 12, 2017) ("Neither a variety of prices nor negotiated prices is an impediment to class certification if it appears that plaintiffs may be able to prove at trial that, as here, the price range was affected generally.") (quotation omitted).  In other words, because class members paid a *market* price, they were all damaged because they overpaid without regard to individual negotiations.  BMW's objection is further undermined by its own expert, who agrees that regardless of their product preferences, no consumer would willingly accept a defective product at a non-defective price.  Dkt. No. 152-34 ("Wilcox Report"), ¶ 16 (preferences for defective products over non-defective "are inconsistent with market data and consumer behavior in the real world").

Plaintiffs respond to BMW's remaining objections going to the weight of Mr. Gaskin's and Mr. Weir's opinions (*see* BMW Br. at 27) in their opposition briefs to BMW's motions to exclude Messrs. Gaskin and Weir, to which the Court is respectfully referred.  In sum, BMW conjures purported errors by misreading the data and opinions of Plaintiffs' experts.

**E.     For the reasons set forth in the predominance analysis, BMW's commonality objections fail.**

For all the reasons previously argued, a jury can adjudicate all class claims in a single proceeding without need for individual inquiries, and contrary to BMW's representation (BMW Br. at 27-28), Plaintiffs did indeed identify common issues related to class implied warranty claims.  *See* Class Cert. Br. at 12, 17-18.  Commonality is easily satisfied, particularly in auto defect cases like this one, in which the same defect exists in all of the Class vehicles.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

-28-

1168, 1172 (9th Cir. 2010); *see also, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012) (finding commonality relating to uniform rear suspension defect); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (finding commonality when Ford knew but concealed the risk that intake manifolds would prematurely crack); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016) (commonality satisfied where GM inaccurately communicated vehicle safety ratings "allow[ing] it to command a price premium").

　　　None of the purported differences BMW identifies among class members requires an individualized inquiry. BMW Br. at 28. A jury determines materiality based on objective criteria of a reasonable consumer standard. A jury can decide materiality based on common evidence, including Mr. Gaskin's conjoint analysis, demonstrating that the omitted defect inflated Class Cars' market price. Similarly, a jury can decide class-wide injury based on the losses suffered by overpaying for a defective car. And whether BMW was aware of and concealed the defect focuses solely on BMW's conduct, not on individual class members' states of mind; this proof will be common to all class members. *See Wolin*, 617 F.3d at 1172; *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005); *Motley v. Jaguar Land Rover N. Am., LLC*, 2012 Conn. Super. LEXIS 2701, at *11 (Conn. Super. Ct. Nov. 1, 2012) ("[T]he claims of the plaintiffs here all have the same 'glue' holding the questions and answers together for the class claims. All prospective class members own or lease the same vehicle models, allege the same factory defect, allege the same policy by Land Rover, and allege the same warranty at issue.").

**F.     The Class is ascertainable.**

　　　BMW does not dispute that identifying Class Cars makes class membership objective and easily determined. Class Cert. Br. at 10-11. Instead, BMW says that the class is not ascertainable because it may contain class members who did not suffer damage. BMW Br. at 28-29. As discussed above in Section II.B(1)(b), BMW's

-29-

assertion that class members were aware of the defect is demonstrably false.  But, in any event, "[t]hat the proposed class may include purchasers [or lessees] who did not rely on the [omissions] and/or were satisfied with the products does not render the class 'overbroad,'" provided exposure is common.  *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 455 (S.D. Cal. 2014).  *Spacone v. Sanford, L.P.*, upon which BMW relies, is inapposite, because the plaintiff could not explain how the defendant's packaging deceived him into expecting a greater volume of glue, and a survey found that fewer than 5% of consumers expected to find more glue in the package.  2018 U.S. Dist. LEXIS 153916, at *12-13, 22-24 (C.D. Cal. Aug. 9, 2018).  Not so here where class members were unaware of the defect that made the range extender illusory.

BMW also challenges ascertainability by contending that consumer acts only protect consumers and the Class definition is not limited to consumers.  BMW Br. at 29-30.  But BMW's objection is premature and, if needed, can be addressed later, should the Court limit Plaintiffs' proposed California, Michigan, Ohio, and Tennessee state classes to the consumer law claims.  To the extent BMW argues that the "personal use" restriction creates an individualized inquiry that bars class certification, it should be denied.  The court in *MyFord Touch* rejected that very argument, holding that while class members may be required to submit proof of personal use to recover under those claims, the "showing, while individualized, is relatively simple and will not defeat predominance."  *MyFord Touch*, 2016 U.S. Dist. LEXIS 179487, at *71.

### III.   CONCLUSION

For the foregoing reasons, the Court should certify Plaintiffs' proposed multi-state class and nine state subclasses.

-30-

1    DATED: September 16, 2019            HAGENS BERMAN SOBOL SHAPIRO LLP

2
                                         By: /s/ Steve W. Berman
3                                            Steve W. Berman (*pro hac vice*)
                                         Sean R. Matt (*pro hac vice*)
4                                        Barbara A. Mahoney (*pro hac vice*)
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
5                                        1301 Second Avenue, Suite 2000
                                         Seattle, WA 98101
6                                        Telephone: (206) 623-7292
                                         Facsimile:  (206) 623-0594
7                                        Email: steve@hbsslaw.com
                                         Email: barbaram@hbsslaw.com
8
                                         Christopher Pitoun (SBN 290235)
9                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                         301 North Lake Avenue, Suite 920
10                                       Pasadena, CA 91101
                                         Telephone: (213) 330-7150
11                                       Facsimile:  (213) 330-7150
                                         Email: christopherp@hbsslaw.com
12
13                                       *Interim Lead Counsel for Plaintiffs and the*
                                         *Proposed Class*
14
15                                       Benjamin F. Johns (*pro hac vice*)
                                         Andrew W. Ferich (*pro hac vice*)
16                                       CHIMICLES & TIKELLIS LLP
                                         361 West Lancaster Avenue
17                                       Haverford, PA 19041
                                         Telephone: (610) 642-8500
18                                       Facsimile:  (610) 649-3633
                                         Email: bfj@chimicles.com
19                                       Email: awf@chimicles.com
20
                                         Jonathan A Michaels
21                                       MLG AUTOMOTIVE LAW APLC
                                         2801 West Coast Highway, Suite 370
22                                       Newport, CA 92663
                                         Telephone: (949) 527-6900
23                                       Facsimile:  (949) 581-6908
                                         Email: jmichaels@mlgautomotivelaw.com
24
25
26
27
28

                                  -31-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hovanes Margarian (SBN 246359)
THE MARGARIAN LAW FIRM
801 N. Brand Blvd., Suite 210
Glendale, CA 91203
Telephone: (818) 553-1000
Email: hovanes@margarianlaw.com

*Additional Class Counsel*

-32-