Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
Sean R. Matt (*pro hac vice*)
*sean@hbsslaw.com*
Barbara A. Mahoney (*pro hac vice*)
*barbaram@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Interim Lead Counsel for Plaintiffs and
the Proposed Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| BARRY BRAVERMAN, *et al.*,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>BMW OF NORTH AMERICA, LLC, *et al.*,<br><br>                    Defendants. | No. 8:16-cv-00966-TJH-PJW<br><br>**CALIFORNIA PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PARTIAL RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Hearing Date: December 21, 2020<br>Time: UNDER SUBMISSION<br>Judge: Hon. Terry J. Hatter, Jr.<br>Courtroom: 9B<br><br>[Filed with Declaration of Steve W. Berman and Revised Proposed Order] |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................. 1

II.  ARGUMENT ....................................................................................... 3

    A.   California Plaintiffs withdraw their request to certify their
        derivative Magnuson-Moss Act claims. .................................... 3

    B.   The Court already ruled that California Plaintiffs established
        Rule 23(a) requirements with respect to their Song-Beverly
        claims. ...................................................................................... 4

    C.   BMW does not provide any grounds to dispute the
        predominance of common issues under their Song-Beverly
        Act claims concerning the existence of the defect and the
        safety risk it presents. ............................................................... 7

        1.   California Plaintiffs satisfied their burden of
            identifying evidence by which a jury could determine
            that all Class Cars suffer from the same design defect. ............... 7

        2.   California Plaintiffs have made the necessary showing
            that whether the defect is substantially certain to
            manifest within Class Cars' useful life is a common
            question that does not require individualized inquiries. ............... 9

        3.   California Plaintiffs satisfied their burden of
            identifying common evidence that BMW breached its
            warranty of merchantability by providing a Range
            Extender that causes uncontrollable deceleration. ...................... 11

        4.   California Plaintiffs do not seek to prove that BMW
            breached its warranty of merchantability through a
            demonstration of impaired use. .................................................. 12

        5.   Because the Song-Beverly Act does not permit BMW
            to limit its warranty of merchantability through
            advertising, this defense does not create predominance
            concerns. .................................................................................. 13

    D.   Whether California Plaintiffs can prove causation under their
        Song-Beverly Act claims is a merits issue, not a question of
        predominance. ........................................................................... 14

E.     Whether BMW's software update eliminated the risk of uncontrollable deceleration is a common factual issue and does not require individual inquiries into Class members' receipt of software updates. ...................................................... 17

F.     California Plaintiffs' damages model accurately reflects the damages available under the Song-Beverly Act and suitable for Class determination. ................................................. 19

III.    CONCLUSION ................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Am. Honda Motor Co., Inc. v. Superior Court,
  199 Cal. App. 4th 1367 (2011) ............................................................................ 9

Anderson v. Samsung Telecomms. Am., LLC,
  2014 U.S. Dist. LEXIS 186455 (C.D. Cal. Oct. 20 2014) .................................. 12

Banh v. Am. Honda Motor Co.,
  2020 U.S. Dist. LEXIS 139274 (C.D. Cal. July 28, 2020) ................................. 10

Banks v. Nissan N. Am., Inc.,
  301 F.R.D. 327 (N.D. Cal. 2013) .......................................................................... 5

Birdsong v. Apple, Inc.,
  590 F.3d 955 (9th Cir. 2009) .............................................................................. 12

Brislane v. Brown,
  2017 U.S. Dist. LEXIS 186572 (C.D. Cal. Apr. 11, 2017) ................................... 4

Burdt v. Whirlpool Corp.,
  2015 U.S. Dist. LEXIS 102761 (N.D. Cal. Aug. 5, 2015) .................................. 13

Comcast Corp. v. Behrend,
  569 U.S. 27 (2013) ......................................................................................... 3, 19

Dawson v. Hertz Transporting, Inc.,
  2018 U.S. Dist. LEXIS 223806 (C.D. Cal. Nov. 5, 2018) .................................... 7

Elfaridi v. Mercedes-Benz USA, LLC,
  2018 U.S. Dist. LEXIS 145196 (E.D. Mo. Aug. 27, 2018 .................................. 13

Falco v. Nissan N. Am., Inc.,
  2016 U.S. Dist. LEXIS 46115 (C.D. Cal. Apr. 5, 2016) ................................. 5, 10

Floyd v. Am. Honda Motor Co.,
  2020 U.S. App. LEXIS 23743 (9th Cir. July 28, 2020) ................................... 1, 3

In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,
  2012 U.S. Dist. LEXIS 13887 (D.N.J. Feb. 6, 2012) ......................................... 15

Godo Kaisha Ip Bridge v. Broadcom Ltd.,
  2017 U.S. Dist. LEXIS 164103 (E.D. Tex. May 18, 2017) ................................ 20

-iii-

*Grodzitsky v. Am. Honda Motor Co.*,
   957 F.3d 979 (9th Cir. 2020) ........................................................ 1, 5, 6

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ............................................................... 15

*Matanky v. GM LLC*,
   370 F. Supp. 3d 772 (E.D. Mich. 2019) ............................................ 14

*Mega RV Corp. v. HWH Corp.*,
   225 Cal. App. 4th 1318 (2014) .......................................................... 14

*In re MyFord Touch Consumer Litig.*,
   2016 U.S. Dist. LEXIS 1794876 (N.D. Cal. Sept. 14, 2016) ....... 16, 17

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ............................................................... 8

*In re OnStar Contract Litig.*,
   278 F.R.D. 352 (E.D. Mich. 2011) .................................................... 15

*Philips v. Ford Motor Co.*,
   2016 U.S. Dist. LEXIS 177672 (N.D. Cal. Dec. 22, 2016), *aff'd*, 726
   F. App'x 608 (9th Cir. 2018) .............................................................. 10

*Salas v. Toyota Motor Sales, United States, Inc.*,
   2019 U.S. Dist. LEXIS 77847 (C.D. Cal. Mar. 27, 2019) ................. 10

*Sanchez v. Wal-Mart Stores, Inc.*,
   2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009) .................. 15

*Sheris v. Nissan N. Am., Inc.*,
   2008 U.S. Dist. LEXIS 43664 (D.N.J. June 2, 2008) ........................ 13

*Sloan v. GM LLC*,
   2020 U.S. Dist. LEXIS 71982 (N.D. Cal. Apr. 23, 2020) ........... 11, 12

*Tershakovec v. Ford Motor Co.*,
   2018 U.S. Dist. LEXIS 116130 (S.D. Fla. July 12, 2018) ................. 14

*Tietsworth v. Sears, Roebuck & Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................ 13

*Torres v. Nissan N. Am., Inc.*,
   2015 U.S. Dist. LEXIS 120381 (C.D. Cal. Sept. 1, 2015) ................ 10

-iv-

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods.*
 *Liab. Litig.*,
 288 F.R.D. 445 (C.D. Cal. 2013).........................................................................17

*Troup v. Toyota Motor Corp.*,
 545 F. App'x 668 (9th Cir. 2013).......................................................................13

*Victorino v. FCA US LLC*,
 326 F.R.D. 282 (S.D. Cal. 2018) ........................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................................8

*Waller v. Hewlett-Packard Co.*,
 295 F.R.D. 472 (S.D. Cal. 2013)........................................................................17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
 617 F.3d 1168 (9th Cir. 2010).............................................................................8

*Zambrano v. Carmax Auto Superstores, LLC*,
 2014 U.S. Dist. LEXIS 7300 (S.D. Cal. Jan. 21, 2014) .....................................12

## STATUTES

Cal. Civ. Code § 1792.4.............................................................................................14

Cal. Civ. Code § 1793................................................................................................14

Cal. Civ. Code § 1795.4.............................................................................................14

## I.    INTRODUCTION

In its May 19, 2020 class certification order, the Court admitted Plaintiffs' expert reports; found that the Rule 23(a) requirements were satisfied for breach of the implied warranty of merchantability claims under the Song-Beverly Act and derivative claims under the Magnuson-Moss Act, as to Class Cars acquired in California; and invited California Plaintiffs to renew their motion for those claims. In renewing their motion on those grounds, counsel inadvertently omitted California Plaintiff Peter Weinstein, and have since corrected this omission by stipulation with BMW.[1] After filing their motion, the Ninth Circuit decided *Floyd v. American Honda Motor Co.*[2] In light of *Floyd's* clarification of the jurisdictional requirements to assert Magnuson Moss class claims, California Plaintiffs withdraw their request to certify their derivative claims and submit a corrected proposed order.

With respect to California Plaintiffs' Song-Beverly claims, BMW does not dispute counsel's fitness to serve as Class Counsel, nor does it challenge the superiority requirement of Rule 23(b). It argues baselessly that California Plaintiffs must re-litigate Rule 23(a). BMW is wrong because the Court decided those requirements specifically as they relate to California Plaintiffs' Song-Beverly claims.

With respect to Rule 23(a), BMW only challenges the Court's commonality finding. It argues that the Court failed to apply an evidentiary requirement, purportedly introduced by the Ninth Circuit in *Grodzitsky v. American Honda Motor Co.*, that to satisfy commonality plaintiffs must submit an expert report on the ultimate issue of whether the product is defective.[3] BMW argues that under *Grodzitsky*, the Court cannot consider any of the common evidence California Plaintiffs have submitted,

---

[1] Order Granting Stip. Re: Modif. of the Summ. J. Br. Schedule & BMW NA's Sur-Reply to Cal. Pls.' Partial Renewed Mot. for Class Cert., Dkt. No. 200 (Aug. 20, 2020).

[2] 2020 U.S. App. LEXIS 23743 (9th Cir. July 28, 2020) (jurisdictional requirements under the Class Action Fairness Act may not serve as a substitute for the 100-plaintiff requirement to assert jurisdiction over class actions under the Magnuson-Moss Act).

[3] 957 F.3d 979 (9th Cir. 2020).

-1-

1  demonstrating that a jury can decide class-wide the existence of the defect and its effect

2  on driver safety. BMW is wrong. Courts in the Ninth Circuit have never required this

3  showing before, and neither did the *Grodzitsky* court. This is not a basis to disturb the

4  Court's commonality finding or reject California Plaintiffs' predominance showing on

5  the existence of a common defect and its safety implications.

6      BMW also argues that California Plaintiffs cannot prove a breach of its warranty

7  of merchantability on a class-wide basis if they intend to show that the Range Extender

8  defect impaired individual Class members' use of their cars. But California Plaintiffs

9  have never argued that they would prove breach on that basis. BMW concedes that

10  California Plaintiffs could prove this element class-wide if they can show that

11  uncontrollable deceleration is a safety concern. But it argues that evaluating that breach

12  would still require the jury to determine where each Class member drives because BMW

13  claims to have limited its warranty of merchantability to in-city driving by advertising

14  Class Cars as ideal for a "megacity." Because the Song-Beverly Act does not permit

15  BMW to limit its implied warranty, its defense fails and with it its objection to

16  predominance on the merchantability issue.

17      BMW next poses several merits arguments in the guise of predominance

18  objections. *First*, BMW erroneously argues that California Plaintiffs must submit the

19  evidence by which they intend to prove that the defect is substantially certain to manifest

20  within the car's useful product life. At class certification, California Plaintiffs need only

21  prove that they have common evidence that Class Cars are functionally identical

22  products with respect to the alleged defect, which BMW does not dispute. Whether

23  functionally identical products are substantially certain to fail is a common question that

24  does not require individualized inquiries. BMW's contention that few Class members

25  would ever encounter this danger is a merits argument, not a proper consideration at

26  class certification. *Second*, with respect to causation, a jury would not need to engage

27  in individual inquiries into what Class members knew, if anything, about the defect

28

before acquiring their cars. California Plaintiffs rely on their experts, Mr. Gaskin and Mr. Weir, whose analysis demonstrates that minimal public knowledge of the defect substantially contributed to the cars' inflated market price and caused Class members to overpay. Under this analysis, the defect injured all Class members, even those who may have known about the defect when they acquired their cars, because they lacked the bargaining power to negotiate the value of a little-known defect. Because California Plaintiffs' proof of causation does not depend on individual Class members' knowledge, a jury can decide causation without individualized inquiries. BMW's objection goes to the merits, not the viability of a class proceeding. *Third*, whether BMW's 2015 software updates repaired the defect for functionally equivalent products is a common disputed question; a jury can resolve this dispute without making individualized inquiries.

Finally, BMW's objections to California Plaintiffs' damages model fail. As a rule, damages models assume liability; this is not a failing. Similarly, in a class action, plaintiffs must select the remedies best suited for class adjudication of their Song-Beverly claims, which their experts' damages model properly reflect. This is precisely what *Comcast Corp. v. Behrend* requires.[4]

## II.   ARGUMENT

### A.   California Plaintiffs withdraw their request to certify their derivative Magnuson-Moss Act claims.

To establish the Court's jurisdiction over their Magnuson-Moss Act derivative class claims, California Plaintiffs had relied on the jurisdictional requirements of the Class Action Fairness Act (CAFA). After the Court issued its class certification order, the Ninth Circuit decided *Floyd v. American Honda Motor Co.*, which clarified that CAFA jurisdictional requirements may not serve as a substitute for the requirement of naming 100 plaintiffs as a condition to assert jurisdiction over class actions under the

---

[4] 569 U.S. 27, 34-35 (2013).

Magnuson-Moss Act.[5] California Plaintiffs' therefore withdraw their request to certify their derivative claims.

**B.    The Court already ruled that California Plaintiffs established Rule 23(a) requirements with respect to their Song-Beverly claims.**

BMW erroneously argues that because of the difference in scope between the current class they seek to certify and the previous proposed class, California Plaintiffs must reargue satisfaction of Rule 23(a) requirements. But this confuses the Court's observation that Plaintiffs might choose not to pursue a smaller class with the Court's express finding that "Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation of *are satisfied*" for the proposed class adjudication of "[b]reach of the implied warranty of merchantability, under Song-Beverly, for Class Cars acquired in California."[6] Because the Court has already reached findings for all Rule 23(a) requirements on behalf of all California Plaintiffs, it makes no sense to reargue them. The cases BMW relies on therefore are distinguishable because the Court has already conducted a "rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied."[7]

BMW challenges only the Court's Rule 23(a)(2) commonality finding. Citing an inapposite decision, BMW claims that California Plaintiffs do not satisfy this requirement because their engineering expert, Mr. Donahue, does not opine on the ultimate jury question: whether cars that decelerate uncontrollably on hills and at highway speeds are defective.[8] Notably, BMW ignores Mr. Donahue's conclusions that Class Cars will decelerate uncontrollably on hills at highway speeds and that BMW designed all Class Cars to decelerate uncontrollably under like conditions, conclusions

---

[5] 2020 U.S. App. LEXIS 23743 (9th Cir. July 28, 2020).

[6] Order at 6 (emphasis added) (Dkt. No. 185).

[7] *Brislane v. Brown*, 2017 U.S. Dist. LEXIS 186572, at *5 (C.D. Cal. Apr. 11, 2017) (brackets, citation omitted).

[8] BMW Opp'n at Sec. III.B.1.a.

-4-

that BMW does not refute.[9] Expert opinions on ultimate issues are the exception, not the norm, under Rule 704 of the Federal Rules of Evidence. The Court may certify a defect class even without any technical experts. For example, the court in *Falco v. Nissan North America, Inc.* certified an implied warranty and consumer fraud class where the plaintiffs did not submit any expert opinion on the defective nature of the cars' timing chain system but instead relied on the defendant's own testing documents, technical service bulletins, and consumer complaints filed with the National Highway Traffic Safety Administration (NHTSA) as evidence of a common defect.[10] The court in *Banks v. Nissan North America, Inc.* similarly certified a consumer fraud class where the plaintiffs' evidence of a common brake sensor defect consisted solely of the defendant's internal documents, technical service bulletins, and NTHSA complaints.[11] BMW claims that the Ninth Circuit introduced a purported new evidentiary requirement in *Grodzitsky v. American Honda Motor Co.* to require an expert to opine on the ultimate issue of whether the defendant designed the product defectively.[12] But the alleged holding is not only absent from the decision but inconsistent with the court's actual analysis of the evidence in the record.

The issue in *Grodzitsky* was a narrow question specific to the record before the court. The plaintiffs there sought to certify a class involving allegedly defective rear windows of certain model cars.[13] Although they claimed the cars had uniformly flawed window regulators that broke down when exposed to the car vibrations, their only evidence of the presence and cause of the alleged common defect was an expert opinion. After excluding the plaintiffs' expert, the lower court denied class certification because the remaining evidence consisted of "a series of window regulators that may or may not

---

[9] Renewed Mot. at Sec. II.A.

[10] 2016 U.S. Dist. LEXIS 46115, at *5-6 (C.D. Cal. Apr. 5, 2016).

[11] 301 F.R.D. 327, 331 (N.D. Cal. 2013).

[12] 957 F.3d 979 (9th Cir. 2020).

[13] *Id.* at 982.

have broken before they were supposed to, and these breakages may or may not have
been caused by a common defect which may or may not exist."[14] The Ninth Circuit
affirmed. Had the *Grodzitsky* panel intended, as BMW argues, to introduce a new
evidentiary burden to satisfy the commonality requirement, then the panel would almost
certainly have stated that holding expressly or called into question prior decisions that
certified defective product classes without meeting that burden. Not only did that not
happen, but the panel also looked beyond the expert report to evaluate whether "the
remaining [non-expert] evidence" established commonality.[15] The commonality
analysis conducted by the *Grodzitsky* court is therefore consistent with, and not a
departure from, prior decisions certifying class actions without requiring expert
testimony on the ultimate issues of fact.

BMW also incorrectly argues that counsel made any concession in separate
litigation that supports BMW's invalid interpretation of *Grodzitsky*.[16] In *Banh v.
American Honda*, the plaintiffs distinguished their expert from the one excluded in
*Grodzitsky* because their expert grounded "his opinions on a detailed examination of
Honda's own documents specifying the underlying architecture of the Infotainment
System and showing the existence of the defects."[17] This is no different here. To support
his conclusion that the Range Extender's design will cause Class Cars to decelerate
uncontrollably under like circumstances, Mr. Donahue replicated Plaintiffs' complaints
of unintended deceleration under test conditions and carefully examined both BMW's
own documents specifying the underlying architecture of Range Extender and its

---

[14] *Id.* at 984.

[15] *Id.* at 987.

[16] BMW Opp'n at 15.

[17] *Banh v. American Honda Motor Co.*, No. 2:19-cv-05984-RGK-AS (C.D. Cal.),
Dkt. No. 109, at 19:20-22.

internal tests that likewise demonstrated the propensity of Class Cars to decelerate uncontrollably.[18]

**C.      BMW does not provide any grounds to dispute the predominance of common issues under their Song-Beverly Act claims concerning the existence of the defect and the safety risk it presents.**

Relying primarily on its erroneous interpretation of the *Grodzitsky* case, BMW argues that California Plaintiffs' fail to provide common evidence of the existence of a defect and its safety risk. Although it characterizes its objection as a challenge to the Court's Rule 23(a) commonality determination, the ability to prove elements of a claim based on evidence common to the class more properly relates to Rule 23(b) predominance concerns.[19]

**1.      California Plaintiffs satisfied their burden of identifying evidence by which a jury could determine that all Class Cars suffer from the same design defect.**

BMW's comparison to the *Grodzitsky* case fails. Unlike the defendant there, who denied any systemic problem with its cars, BMW acknowledges *both the existence of the alleged defect and its cause*.[20] BMW admits that even when the Range Extender still has gas in the tank, it cannot recharge Class Cars' batteries above 1.9% when driven for more than short periods on hills or at highways speeds.[21] And it admits that the Range Extender causes Class Cars to decelerate uncontrollably when the car batteries fall below 1.9% state of charge.[22] BMW's internal documents also demonstrate the Range Extender's inability to maintain a safe state of charge when the outside temperature is extremely hot or cold and the consequent deceleration that occurs under those conditions.[23] BMW does not refute Mr. Donahue's opinion that BMW designed the

---

[18] Renewed Mot. at Sec. II.A.

[19] *See Dawson v. Hertz Transporting, Inc.*, 2018 U.S. Dist. LEXIS 223806, at *10-12 (C.D. Cal. Nov. 5, 2018).

[20] Renewed Mot. at Sec. II.A; BMW Opp'n at 4, 6.

[21] *Id.*

[22] Renewed Mot. at Sec. II.A; BMW Opp'n at 6.

[23] *Id.*

-7-

Range Extender to function the same way in all Class Cars and to cause unintended deceleration in like circumstances.[24]

Although BMW singles out California Plaintiff Peter Weinstein as an outlier whose experience with the defect purportedly disproves the Court's commonality finding, BMW acknowledges that Mr. Weinstein experienced a terrifying drop in speed when the Range Extender failed to generate enough power and his car slowed to a dead stop on the highway.[25] BMW argues that the *degree* of deceleration that Mr. Weinstein experienced—slowing to a stop as opposed to a lower speed—represents a different complaint and allegedly defeats the Court's commonality finding. The Supreme Court rejected this very argument in *Wal-Mart Stores, Inc. v. Dukes* when it held that dissimilarities among class members do not defeat commonality, so long as there exists "even a single common question."[26] The Ninth Circuit in *Wolin* likewise holds that "different factual circumstances surrounding the manifestation of the defect" does not defeat class certification.[27] BMW fails to show how variances in the extent of deceleration would prevent a jury from deciding whether unintended deceleration exists class-wide or any of the other questions that California Plaintiffs have identified as common to the Class.

---

[24] *Id.*

[25] BMW Opp'n at 15.

[26] 564 U.S. 338, 359 (2011).

[27] *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *see also Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019) (plaintiff's theory of liability for his Song-Beverly claim is not "centered on performance issues," but on "the defect . . . inherent in each of the Class Vehicles at the time of purchase, regardless of when and if the defect manifested").

-8-

**2.**   **California Plaintiffs have made the necessary showing that whether the defect is substantially certain to manifest within Class Cars' useful life is a common question that does not require individualized inquiries.**

BMW falsely argues that Mr. Donahue allegedly "conceded" that a jury cannot decide whether Class Cars are substantially certain to exhibit the defect on a class-wide basis.[28] On the contrary, when asked whether the "extreme reduced power situation" that he experienced was "substantially certain to happen to every driver of a BMW i3," Mr. Donahue responded: "It is dependent on whether they've depleted the battery"— i.e., whether the Range Extender was operating—"and where they are driving and how fast they are driving."[29] He further clarified that it will occur when "the drive motor is drawing more energy than the REx can produce for a long enough time to get the battery to the situation where . . . the control system decides to go into this mode."[30] This is consistent with BMW's own documents.[31]

Importantly, the test of substantial certainty is not, as BMW frames the question, whether Class members will *personally experience* uncontrolled deceleration but whether the *cars themselves* will manifest this defect during their useful lifetimes.[32] BMW admitted internally ███████████████████████████████ ████████████████████████████████████████ █████████████████████████

---

[28] BMW Opp'n at 3, 18-20.

[29] Ex. 1 (Donahue Dep. at 44:3-15, 45:17-19). BMW counsel posed the question too broadly. California Plaintiffs have never claimed that BMW i3s *without* a Range Extender are defective.

All citations herein to "Ex. _" are to the Decl. of Steve W. Berman in Supp. of Cal. Pls.' Reply Br. in Supp. of Renewed Mot. for Class Cert., unless otherwise indicated.

[30] *Id*. at 59:18-24.

[31] Renewed Mot. at Sec. III.A.1.

[32] *Am. Honda Motor Co., Inc. v. Superior Court*, 199 Cal. App. 4th 1367, 1375 (2011).

[33] Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 22 (BMWAG-001224-52 and BMWAG-001266-67 at 1267).

-9-

████████████████████████████ BMW's own testing demonstrates that drivers can expect Class Cars' batteries to drop below a 1.9% state of charge and decelerate uncontrollably if, for example, ████████████████████ ████████████████████ which are both ordinary occurrences within the product life of a car.[35]

"On class certification, the Ninth Circuit has cautioned that the district court should not determine the merits of any claims," and courts in this Circuit have repeatedly held that whether a product is "substantially [] certain to experience a malfunction from the alleged defect during its useful life is a determination on the merits" and not "proper on class certification."[36] If BMW can show that Class Cars' allegedly defective design is not "substantially certain" to result in uncontrollable deceleration during the useful product life of Class Cars, as Plaintiffs claim it will, then BMW will prevail in this cause of action against the Class. "Since this merits question would be answered either way in a manner common to the class," California Plaintiffs have satisfied the showing necessary to demonstrate predominance; no more is required.[37]

*Philips v. Ford Motor Co.*, which BMW relies on, supports California Plaintiffs in holding that evidence of a common design defect, which similarly affects the cars at issue, satisfies the required showing that substantial certainty will be a common question.[38] *Torres v. Nissan North America, Inc.*, which BMW also relies on, is

[34] Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 25 (BMWNA-ESI-003819-20 at 3819).

[35] Renewed Mot. at Sec. III.A.1.

[36] *Banh v. American Honda Motor Co.*, 2020 U.S. Dist. LEXIS 139274, at *46 (C.D. Cal. July 28, 2020); *accord Victorino v. FCA US LLC*, 326 F.R.D. 282, 299 (S.D. Cal. 2018); *Salas v. Toyota Motor Sales, United States, Inc.*, 2019 U.S. Dist. LEXIS 77847, at *30 (C.D. Cal. Mar. 27, 2019); *Falco*, 2016 U.S. Dist. LEXIS 46115, at *30.

[37] *Falco*, 2016 U.S. Dist. LEXIS 46115, at *30; *Banh*, 2020 U.S. Dist. LEXIS 139274, at *46; *Victorino*, 326 F.R.D. at 299; *Salas*, 2019 U.S. Dist. LEXIS 77847, at *30.

[38] 2016 U.S. Dist. LEXIS 177672, at *60-61 (N.D. Cal. Dec. 22, 2016), *aff'd*, 726 F. App'x 608 (9th Cir. 2018).

distinguishable because the plaintiffs asserted only that the cars had commonly recurring problems, not that a common design feature was their common cause.[39]

### 3. California Plaintiffs satisfied their burden of identifying common evidence that BMW breached its warranty of merchantability by providing a Range Extender that causes uncontrollable deceleration.

California Plaintiffs seek to show that uncontrollable deceleration caused by the defectively designed Range Extender is a "safety defect" that renders Class Cars "not fit for [their] ordinary purpose," in breach of the warranty of merchantability.[40] This proof is ideally suited to a class action because it turns on the common nature of the defect itself and not on Class members' individualized use.[41]

BMW falsely claims that Mr. Donahue admitted that he could not opine on the safety risk Class Cars pose by reason of the defect and that California Plaintiffs have no other evidence on point.[42] On the contrary, Mr. Donahue testified that the unintended deceleration he experienced "was quite significant when [he] drove" the test car, and there are "certain situations where this performance could present some safety problems."[43] His report presents one such scenario: when drivers cannot maintain minimum highway speed.[44] And although Mr. Donahue did not personally experience uncontrollable deceleration on flat roads, he did repeatedly encounter difficulties accelerating on a level highway when the Range Extender was operating.[45] ███

███████████████████████████████████████████████

███████████████████████████████████████

---

[39] 2015 U.S. Dist. LEXIS 120381, at *3-4, 13-14 (C.D. Cal. Sept. 1, 2015).

[40] *Sloan v. GM LLC*, 2020 U.S. Dist. LEXIS 71982, at *141 (N.D. Cal. Apr. 23, 2020).

[41] Renewed Mot. at Sec. III.A.2.

[42] BMW Opp'n at 16.

[43] Ex. 1 (Donahue Dep. at 54:16-17; 55:19-20).

[44] Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 15 (March 25, 2019 Expert Report of Pat Donahue, at 11).

[45] Ex. 1 (Donahue Dep. at 46:20-24).

-11-

█████████ █ ████████████████████████████████████████████████████

████████████████████████████████████████████████████████, a view

shared by California Plaintiffs and numerous other BMW customers who experienced

near-collisions on major highways while the Range Extender was operating.[47] This

satisfies their showing that common issues relating to the breach predominate over

individual issues.[48]

### 4. California Plaintiffs do not seek to prove that BMW breached its warranty of merchantability through a demonstration of impaired use.

Claimants can prove that the manufacturer of a defective product breached its

implied warranty of merchantability by demonstrating that the product defect impairs

their use of the product. But California Plaintiffs have never argued that they intend to

prove Class claims by this means; thus, BMW's contention that impaired use cannot be

proven without individual inquires is irrelevant.[49]

None of the cases BMW relies on are applicable. In *Anderson v. Samsung Telecomms. Am., LLC*, the court denied class certification because the alleged defect

was not "grounded in a defective design common to all."[50] In *Birdsong v. Apple, Inc.*,

the Ninth Circuit affirmed dismissal of the implied warranty claims where the plaintiffs

made "no allegations of any history of malfunction, but merely suggest[ed] possible

changes to the iPod which they believe would make the product safer."[51] The plaintiff

in *Zambrano v. Carmax Auto Superstores, LLC* did not experience any problems with

---

[46] Renewed Mot. at Sec. III.A.1.

[47] *Id.*

[48] *Compare Sloan*, 2020 U.S. Dist. LEXIS 71982, at *20-30 (evidence of the named plaintiffs that excess oil consumption caused their cars to slow, stall, make a tapping noise, or shake violently and expert testimony that inadequate oil can cause engine failure, which may elevate the risk of injury).

[49] BMW Opp'n at Sec. III.C.3.

[50] 2014 U.S. Dist. LEXIS 186455, at *16-18 (C.D. Cal. Oct. 20, 2014).

[51] 590 F.3d 955, 958 (9th Cir. 2009).

her car until months after the implied warranty expired.[52] BMW relies on *Sheris v. Nissan North America, Inc.* for the proposition that "plaintiffs may not recover for breach of the implied warranty of merchantability . . . [if] plaintiffs have driven their cars without problems for years."[53] But *Sheris* does not rely on California law, and *Burdt v. Whirlpool Corp.*, which BMW also relies on, refutes that proposition, holding: "[T]he fact that a person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of the implied warranty of merchantability."[54]

### 5. Because the Song-Beverly Act does not permit BMW to limit its warranty of merchantability through advertising, this defense does not create predominance concerns.

BMW next argues that even if the jury evaluates merchantability from the perspective of vehicle safety, it still would need to conduct individualized inquiries to determine where each Class member drives.[55] BMW argues this is so because it allegedly limited its warranty of merchantability to driving within large cities when it advertised Class Cars as ideal for use in a "megacity."[56] BMW's only authority for its novel argument are two out-of-state cases; neither hold that the U.C.C. permits manufacturers to limit implied warranties through advertising, nor do they address the

---

[52] 2014 U.S. Dist. LEXIS 7300, at *20 (S.D. Cal. Jan. 21, 2014).

[53] 2008 U.S. Dist. LEXIS 43664 (D.N.J. June 2, 2008).

[54] 2015 U.S. Dist. LEXIS 102761, at *18 (N.D. Cal. Aug. 5, 2015) (citation omitted). *See also Elfaridi v. Mercedes-Benz USA, LLC*, 2018 U.S. Dist. LEXIS 145196 (E.D. Mo. Aug. 27, 2018) (applies Missouri implied warranty law); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010) (striking class allegations after dismissing implied warranty claims because no plaintiff alleged facts that satisfied both the privity requirement and a violation within the warranty period); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 669 (9th Cir. 2013) (affirming dismissal of implied warranty claim, where the "alleged defect did not compromise the vehicle's safety").

[55] BMW Opp'n at Sec. III.C.1.

[56] Dkt. No. 157 at 4 ("REx advertising in the U.S. was 'negligible.'"); BMW Opp'n at 17-18.

-13-

Song-Beverly Act's restrictions on manufacturers' limitation of implied warranties.[57] Because BMW provided Class members express warranties, the Beverly-Song Act expressly prohibits BMW from limiting its implied warranty.[58] The Act also prohibits disclaimers of implied warranty unless explicit and conspicuous statements of disclaimer are physically attached to the product itself, which BMW's "megacity" advertising also does not satisfy.[59] BMW's purported contractual limitation is also inconsistent with its conduct. While claiming that it communicated its limitation of warranty through advertising, it admits that it conducted only "negligible" advertising.[60] And although it claimed to have limited its warranty to large cities, ███████ █████████████████,[61] and it presented them to its dealers as a viable option for "[d]rivers who have a *longer commute* than average" and need "additional range" because the "charging infrastructure is not readily available."[62]

### D.   Whether California Plaintiffs can prove causation under their Song-Beverly Act claims is a merits issue, not a question of predominance.

BMW argues that a jury would be required to examine each Class member's pre-purchase knowledge of the defect to determine whether it caused them injury.[63] That is

---

[57] *Tershakovec v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 116130, at *30 (S.D. Fla. July 12, 2018) (car advertised for road and racetrack use must be merchantable for both purposes); *accord Matanky v. GM LLC*, 370 F. Supp. 3d 772, 785 (E.D. Mich. 2019).

[58] Cal. Civ. Code § 1793 ("a manufacturer . . . in transacting a sale in which express warranties are given, may not limit, modify, or disclaim the implied warranties guaranteed by this chapter to the sale of consumer goods"); *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1331 (2014) ("By requiring an implied warranty of merchantability to accompany any express warranties, the Act ensures that retail buyers in receipt of an express warranty have a minimum level of substantive protection."); Cal. Civ. Code § 1795.4 (providing lessees that same rights under the Act as purchasers).

[59] Cal. Civ. Code § 1792.4.

[60] Dkt. No. 157 at 4 ("REx advertising in the U.S. was 'negligible.'").

[61] Ex. 2 (Olczak Dep. at 188:24-189:3).

[62] Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 59 (BMWNA-ESI-003997 at 3998) (emphasis added).

[63] BMW Opp'n at Sec. III.C.4.a.

-14-

incorrect, and the cases BMW cites in support of this proposition are inapposite as none involves California implied warranty claims.[64]

The Song-Beverly Act does not require proof of reliance. California Plaintiffs need only prove that the defective Range Extender was a substantial factor in causing the Class to overpay for their cars. Even a minor contributing factor satisfies this element.[65]

California Plaintiffs' expert, Mr. Gaskin, concludes that the defect caused the Class to overpay for their cars by about 13%.[66] Their economics expert, Mr. Weir, opines that Class Cars' inflated market price reflects consumers' lack of access to information about the defect.[67] This is consistent with each of the California Plaintiffs' experience (and Plaintiffs from other states), who first learned of the defect after they acquired their cars.[68] Contrary to BMW's representation, the Court never found that BMW had disclosed the defect; indeed, a contemporary blogger lamented the widespread failure of BMW and its dealers to convey the limitations of the Range Extender to their customers accurately.[69] The lack of public awareness is also consistent with Mr. Gaskin's analysis of the third-party sources of public information that BMW identifies. He refutes BMW's claim of 20 "major publications," noting that most of these sources are too small even to warrant an entry on Wikipedia and are unlikely to

---

[64] *Sanchez v. Wal-Mart Stores, Inc.*, 2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009) (misrepresentation class); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) (applying New Jersey law); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 13887, at *116 (D.N.J. Feb. 6, 2012) (unjust enrichment was the only California claim submitted for class certification); *In re OnStar Contract Litig.*, 278 F.R.D. 352, 385 (E.D. Mich. 2011) (plaintiffs only sought to certify consumer fraud and express warranty claims under California law).

[65] Renewed Mot. at Sec. III.A.3.

[66] *Id.*

[67] *Id.*

[68] *Id.* at Sec. II.C.

[69] BMW Opp'n at 6; Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 60 (Gaskin Rebuttal, ¶ 52).

-15-

have influenced Class members.[70] Word-of-mouth effects, too, would have been negligible.[71] In California, where BMW sold only 8,700 Class Cars, they account for less than 0.07% of approximately 13 million California households.

Pre-purchase knowledge does not defeat causation. Having satisfied itself that the plaintiffs' experts could demonstrate Class overpayment, the court in *In re MyFord Touch Consumer Litigation* certified California breach of implied warranty claims despite the "wide[] availab[ility]" of "negative information about" the car's entertainment system, including "multiple statements by [the defendant] and in news articles," and one plaintiff's awareness before purchasing his car that its entertainment system had "mixed reviews."[72] California Plaintiffs have identified at least two ways that the defect could be a substantial factor in causing Class members to overpay for their cars even if they had advanced notice that the Range Extender was defective. First, Mr. Weir opines that individual Class members lacked the bargaining power to negotiate the value of a little-known defect when "there are numerous other willing buyers and lessees" who "were totally unaware of the [d]efect and willing to pay the then extant market price."[73] Second, BMW's own expert, Dr. Wilcox, admitted that the promise of a forthcoming software fix could influence consumer purchase decisions.[74] If Class members learned of the defect from *Consumer Reports* or other sources, which simultaneously reported BMW's false promise of a fix, then they, too, would have overpaid for an unremedied defect.[75] For example, Plaintiff Eric Wonderley, who experienced uncontrollable deceleration with his first car, reluctantly accepted a lease

---

[70] BMW Opp'n at 6; Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 60 (Gaskin Rebuttal, ¶ 55).

[71] Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 60 (Gaskin Rebuttal, ¶ 19).

[72] 2016 U.S. Dist. LEXIS 1794876, at *67 (N.D. Cal. Sept. 14, 2016); *id.* at 46-51.

[73] Renewed Mot. at Sec. III.A.3.

[74] Ex. 3 (Wilcox Dep. at 102:20-103:3); Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 60 (Gaskin Rebuttal, ¶ 17).

[75] Renewed Mot. at Sec. II.C.

-16-

for a replacement vehicle based on BMW's false promise that a software update "would fix this problem."[76]

Because California Plaintiffs' proof of causation does not depend on individual Class members' knowledge, a jury can decide this question without individualized inquiries. BMW's objection goes to the merits, not the viability of a class proceeding.

**E.  Whether BMW's software update eliminated the risk of uncontrollable deceleration is a common factual issue and does not require individual inquiries into Class members' receipt of software updates.**

BMW next argues that individual issues of injury predominate because a jury would need to consider which Class members received its 2015 software updates. But it fails to explain why receiving them precludes injury, given that the updates did nothing to address the design features that California Plaintiffs challenge and their evidence shows that Class Cars continue to experience uncontrollable deceleration after BMW's software updates. That distinguishes this case from the cases BMW relies on. In *In re Toyota Motor Corporation Hybrid Brake Marketing*, the defendant provided substantial and *unrefuted* evidence that its updated software fixed "any actual or perceived problems" with the alleged defective braking system.[77] *Waller v. Hewlett-Packard Co.* is likewise distinguishable because the plaintiff conceded that the defendant's software update *fully addressed* "his grievance."[78] The more applicable case is *In re MyFord Touch Consumer Litigation*, where court certified an implied warranty class because the plaintiffs provided evidence that the core problem with the cars persisted despite 11 software updates.[79]

---

[76] *Id.*
[77] 288 F.R.D. 445, 449 (C.D. Cal. 2013).
[78] 295 F.R.D. 472, 487 (S.D. Cal. 2013).
[79] 2016 U.S. Dist. LEXIS 179487, at *42, 57, 82.

-17-

Even with the 2015 software updates, Class Cars continue to decelerate uncontrollably, as confirmed by Mr. Donahue's unrefuted test results[80] and the experiences of BMW customers—*e.g.*, Plaintiffs Barry Braverman and Edo Tsoar, who acquired Class Cars with these software updates in place.[81] BMW's software updates did nothing to address the design features that California Plaintiffs identify as the sources of the problem. They did not increase the power output of the generator, as confirmed by Mr. Donahue's unrefuted conclusion that the power output of the generator has remained the same for all time. Nor did they allow the Range Extender to begin recharging batteries before Class Cars have nearly depleted their batteries' state of charge. BMW's designated witness confirmed that the March 2015 update ███████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ [2] BMW

acknowledges that at best its November 2015 software update only potentially ████

████████████████████████████████████████████████████ [83] BMW's

designated witness confirmed ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████ ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ ███████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

---

[80] *See* Decl. of Steve W. Berman in Supp. of Renewed Mot., Ex. 15 (Donahue Report at 9) (test car manufactured *after* March 2015 and acquired in 2018).

[81] Ex. 4 (Braverman Dep. at 20:8-13); Ex. 5 (Tsoar Dep. at 74:3-7).

[82] Ex. 2 (Olczak Dep. at 247:3-25).

[83] BMW Opp'n at 22; Ex. 6 (Borchers Dep. at 135:24-137:8) ████████████

██████████████████████████████████████████████████████████████████████████

[84] Ex. 2 (Olczak Dep. at 206:20-24) (emphasis added).

[85] *Id.* at 248:24-249:9.

-18-

CAL. PLAINTIFFS' REPLY BR. IN SUPP. OF PARTIAL RENEWED MOT. FOR CLASS CERT.

010616-11/1332865 V1

1
2      ███████████████████████████████████████ ████████████

       ██████████  from June 2015 through September 2016, BMW received 22 separate

3      complaints about unintended deceleration,[87] ███████████████████████████

4      ██████████████████████████████████[8] And this count does not include the many

5      consumer complaints made directly to BMW dealers.[89]

6           But the Court need not delve into the merits. BMW designed its software updates

7      to affect all Class Cars equally. Whether that effect eliminates Class members' injury

8      presents a common question that does not require individualized inquiries. This issue

9      supports class certification.

10     **F.   California Plaintiffs' damages model accurately reflects the damages available under the Song-Beverly Act and suitable for Class determination.**

11          BMW erroneously argues that *Comcast Corp. v. Behrend* requires California

12     Plaintiffs to model all remedies asserted in the complaint without regard to their

13     availability under the Song-Beverly Act or their suitability for class-wide adjudication.[90]

14     On the contrary, *Comcast* expressly prohibits California Plaintiffs from certifying

15     damages that are not available under Song-Beverly Act or incapable of measurement on

16     a class-wide basis.[91] Next, BMW argues that California Plaintiffs' damages model

17     improperly assumes the defect exists and the plaintiffs were "defrauded."[92] As a rule,

18     damages models do assume liability, so this is not a basis for rejecting a damages

19
20
21
22
       _____

23          [86] BMW Opp'n at 4; Ex. 6 (Borchers Dep. at 239:14-22).
            [87] Ex. 7 (complaints to BMW regarding REx).
24          [88] Ex. 6 (Borchers Dep. at 239:14-22).
            [89] *See, e.g.*, Ex. 4 (Braverman Dep. at 64:12-65:1); Ex. 8 (Demirchyan Dep. at 63:3-
25     64:6); Ex. 9 (Green Dep. at 63:12-16); Ex. 10 (Roberson Dep. at 71:1-72:14); Ex. 5
26     (Tsoar Dep. at 134:3-16); Ex. 11 (Weinstein Dep. at 81:19-82:4).
            [90] BMW Opp'n at 24.
27          [91] *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013).
            [92] BMW Opp'n at 25.
28

                                          -19-

model.[93] The Song-Beverly Act does not require proof of fraud, and the Court overruled BMW's prior objections to the purported assumptions of California Plaintiffs' experts.[94]

### III.   CONCLUSION

The Court held that California Plaintiffs satisfied Rule 23(a) requirements for their proposed Song-Beverly implied warranty claims for Class Cars acquired in California. For the reasons stated above and in their opening brief, California Plaintiffs demonstrated that the proposed class likewise satisfies Rule 23(b) requirements. None of BMW's objections warrants denial of class certification. Counsel for California Plaintiffs have also demonstrated their fitness to serve as Class Counsel and BMW provides no objection. California Plaintiffs therefore request that the Court certify the proposed Class, designate them as Class Representatives, and designate their counsel as Class Counsel.

DATED: August 21, 2020                    HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
   Steve W. Berman (*pro hac vice*)
Sean R. Matt (*pro hac vice*)
Barbara A. Mahoney (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: sean@hbsslaw.com
Email: barbaram@hbsslaw.com

---

[93] *See, e.g., Godo Kaisha Ip Bridge v. Broadcom Ltd.*, 2017 U.S. Dist. LEXIS 164103, at *11 (E.D. Tex. May 18, 2017) ("Obviously, Ms. Lawton assumed liability when preparing her induced infringement damages model . . . . The jury does not reach the issue of damages unless it finds infringement.").

[94] Order at 2-3.

Christopher Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7150
Email: christopherp@hbsslaw.com

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
Email: bfj@chimicles.com
Email: awf@chimicles.com

*Plaintiffs' Executive Committee*

Jonathan A Michaels
MLG AUTOMOTIVE LAW APLC
600 Anton Blvd., Suite 1240
Costa Mesa, CA 92626
Telephone: (949) 527-6900
Facsimile: (949) 581-6908
Email: jmichaels@mlgaplc.com

*Plaintiffs' Executive Committee*

Hovanes Margarian (SBN 246359)
THE MARGARIAN LAW FIRM
801 N. Brand Blvd., Suite 210
Glendale, CA 91203
Telephone: (818) 553-1000
Email: hovanes@margarianlaw.com

*Additional Class Counsel*

-21-